**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALLIED ERECTING AND | : | |
| DISMANTLING CO., INC., | : | |
| | : | Civil Action No. 4:12 CV 1390 |
| Plaintiff, | : | |
| | : | Judge Sara Lioi |
| v. | : | Magistrate Judge George J. Limbert |
| | : | |
| UNITED STATES STEEL | : | JURY TRIAL DEMANDED |
| CORPORATION, | : | |
| | : | |
| Defendant. | : | |

## SECOND AMENDED COMPLAINT

Plaintiff, Allied Erecting and Dismantling Co., Inc. ("Allied"), by its attorneys, Eckert Seamans Cherin & Mellott, LLC and Nadler Nadler & Burdman Co., LPA, hereby submits this Second Amended Complaint against Defendant, United States Steel Corporation ("U.S. Steel"), upon causes of action of which the following are statements:

## I. **THE PARTIES**

1.       Allied, an industrial dismantling contractor, is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 2100 Poland Avenue, Youngstown, Ohio 44502.

2.       U.S. Steel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 600 Grant Street, Pittsburgh, Pennsylvania 15219.

## II. JURISDICTION AND VENUE

3.     The jurisdiction of this Court is based on diversity of citizenship and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## III. BACKGROUND

5.     Allied has performed work as an industrial dismantling contractor for U.S. Steel at numerous locations throughout the United States for over thirty years.

### The Prior Litigation

6.     Between 1993 and 2003 Allied and U.S. Steel were the plaintiff and the defendant, respectively, in two lawsuits docketed at Civil Action No. 93-0575 (the "93-0575 Litigation") and Civil Action No. 02-2216 (the "02-2216 Litigation"), which concerned, inter alia, various disputes regarding Allied's right to additional compensation under a long term contract for industrial dismantling work at U.S. Steel's Fairless Works steelmaking facility in Fairless Hills, Pennsylvania (the "Fairless Works") and at various other U.S. Steel locations throughout the United States.

### The 2003 And 2004 Agreements In Principle

7.     On November 17, 2003, Allied and U.S. Steel entered into a settlement agreement in the 93-0575 Litigation, which was styled as the "Agreement in Principle" (the "2003 AIP").[1]

8.     The 2003 AIP established an exclusive, non-cancellable, long-term dismantling agreement under which Allied would be entitled to perform "any further dismantling work" for U.S. Steel at the Fairless Works "regardless of time", and also granted Allied certain rights to

---

[1]  Allied has not attached a copy of the 2003 AIP because it is in both parties' possession and certain of its terms are confidential by agreement of the parties.

2

perform additional dismantling work for U.S. Steel at other locations pursuant to designated terms and conditions.

9.      Less than a year later, on April 5, 2004, Allied and U.S. Steel entered into a settlement agreement in the 02-2216 Litigation, which was also styled as the "Agreement in Principle" (the "2004 AIP").[2]

10.      The 2004 AIP resolved the remaining outstanding issues between Allied and U.S. Steel and, inter alia, extended Allied's rights to perform additional dismantling for U.S. Steel outside of the Fairless Works under designated terms and conditions.  In connection therewith, Allied and U.S. Steel entered into a Blanket Agreement, dated May 1, 1993 (but executed May 13, 1993), that established various general terms and conditions which governed dismantling work outside of the Fairless Works (the "1993 Blanket Agreement").

### The Scope of Allied's Dismantling Work at the Fairless Works

11.      Prior to entering into the 2003 AIP, Allied's previous work at the first phase or "Hot End" of the Fairless Works was performed pursuant to a Construction Contract between Allied and U.S. Steel dated April 24, 1992 and an accompanying Specification eventually dated September 11, 1992, called the "Final Conformed Specification".

12.      The Final Conformed Specification is a comprehensive and detailed specification which governs (and, to the extent not superseded by the 2003 AIP, continues to govern) dismantling, demolition, utility disconnection, utility relocation and all other work related to any further dismantling work at the Fairless Works, regardless of time.

13.      Under Section III of the 2003 AIP, entitled "Further Dismantling Work at Fairless", Allied's basic dismantling work is performed "at no cost to U.S. Steel" and,

---

[2]  Allied has not attached a copy of the 2004 AIP and the 1993 Blanket Agreement for the same reasons that it has not attached a copy of the 2003 AIP.

consequently, Allied is compensated for this work by retaining possession of and title to all ferrous scrap, non-ferrous scrap, and other recyclable materials from the Fairless Works.  In addition, the proceeds of any facility or equipment sales to third parties were to be shared with U.S. Steel on a "50/50 basis".

14.     Consistent with this general compensation framework for Fairless under the 2003 AIP, U.S. Steel provided Allied with two Purchase Orders or Property Transfer Orders evidencing and confirming Allied's ownership of all of the ferrous and non-ferrous scrap materials, as well as equipment, which was associated with Allied's dismantling work at the Sheet and Tin Facility at the Fairless Works.  Copies of these Purchase Orders or Property Transfer Orders are attached hereto as Exhibits "A" and "B".

15.     However, Allied was also entitled to additional payment from U.S. Steel for certain other identified dismantling work at the Fairless Works.  In particular, the 2003 AIP addresses the breakdown between "no cost" dismantling work and extra work which is to be performed "for U.S. Steel's account" (i.e., for which Allied is entitled to additional payment over and above being compensated by retaining the salvage materials).

16.     In that regard, Section III of the 2003 AIP provides, in relevant part, as follows:

> "Any further DISMANTLING WORK at the steelmaking or former steelmaking facilities owned by U.S. Steel's Fairless Works, regardless of time, that is released and authorized in writing for dismantling, will be awarded to and performed by AED [Allied] pursuant to the Fairless Contract which shall contain the same relevant terms and conditions contained in the Contract and Specification for the first phase or "Hot End" of Fairless, specifically excluding Article 14 of the Final Conformed Specification.  **In accordance therewith, (a) such dismantling shall be at no cost to U.S. Steel (other than the Advance Payment); (b) concrete removal will be to top of floor slab[3]: and (c) asbestos abatement, Hazmat removal, utility relocation and/or new construction will**

---

[3]  By contrast, under the Final Conformed Specification, prior to the 2003 AIP, Allied was obligated to remove concrete foundations and backfill foundations at Fairless to "grade" at "no cost" to U.S. Steel.

4

**be for U.S. Steel's account, . . ."**

2003 AIP, ¶ III (emphasis added).

17.    The term "DISMANTLING WORK" is drafted broadly under the 2003 AIP and includes, but is not limited to, the following work performed in connection with a dismantling project: Structure Removal, Asbestos Abatement, Environmental Remediation, Equipment Sales, Property Transfers, Equipment Removal, Concrete Removal, Utility Relocation, New Construction, and Backfilling and Grading.  2003 AIP at ¶ II(B)(6)(a) (emphasis added).

18.    Consistent with the definition of "DISMANTLING WORK," to the extent that concrete removal below "top of floor slab" or backfilling and grading of basements must be performed, this work falls within Allied's scope of work under the 2003 AIP, and therefore Allied is entitled to additional compensation from U.S. Steel to perform this work.

19.    In other words, because the 2003 AIP only obligates Allied to remove concrete on a "no cost" basis to "top of floor slab," Allied's noncompensable (at "no cost") scope of work ends there.  To the extent that concrete (foundation) removal or any backfilling beneath any floor slab must be performed, Allied must be compensated for this extra work, rather than being obligated to perform this work for U.S. Steel on a "no cost" basis.

20.    In order to implement various of the terms of the 2003 AIP, Allied and U.S. Steel subsequently entered into a Dismantling Services Agreement on or about July 15, 2004 (the "2004 DSA"), which provides as follows relating to "Further Dismantling Services at Fairless Works":

> "Any further Dismantling Work, regardless of time, at the steel-making facilities or former steel-making facilities owned by U.S. Steel at its Fairless Works that is released and authorized in writing for dismantling by U.S. Steel, shall be awarded to, and performed by, AED [Allied] pursuant to the same relevant terms contained in the 1992 Fairless Contract and Specification (with the exception of

5

> Articles 29 and 31 of the Contract and Articles 13-15 of the
> Specification).  Such contract and specification shall also provide
> that: (i) such dismantling shall be at no cost to U.S. Steel (other than
> the costs hereinafter provided for in the remainder of this paragraph),
> (ii) concrete removal will be to top of floor slab, (iii) asbestos
> abatement, hazmat removal, utility relocation and/or new
> construction will be for U.S. Steel's account . . . and (iv) will include
> an agreed charging rate schedule for labor and equipment that will
> apply to extra work, which charging rate schedule may be updated
> on a yearly basis."

2004 DSA, ¶ III(A).  (emphasis added)

21.    Consequently, the 2004 DSA provided an "agreed charging rate schedule" that would apply to all extra work, including any floor slab removal work and any other work required beneath the "top of floor slab", including the backfilling of basements.

**The Delayed and Out of Sequence Release of Facilities to Allied at the Fairless Works**

22.    U.S. Steel initially advised Allied on or about January 15, 2004 as to the facilities at the Fairless Works to be dismantled pursuant to a "Preliminary Plan" site map.

23.    Consistent therewith, on March 1, 2004, U.S. Steel provided Allied with a Blanket Purchase Order (No. 381273) for dismantling services at the Fairless Works.

24.    In April 2004, U.S. Steel then advised Allied that all work areas within the Sheet and Tin Facility at the Fairless Works (except the Galvanizing Line and a few other isolated facilities) were to be released to Allied no later than January 2005 and that all necessary predecessor work to be performed by U.S. Steel (environmental, utility relocation, etc.) would be complete by April 8, 2005 in order to allow Allied to proceed with its dismantling work in an uninterrupted fashion.

25.    On July 15, 2004, U.S. Steel sent Allied an email with a color copy of the "Plan – Sheet and Tin" confirming that this dismantling work would be released by U.S. Steel in four (4)

separate "sub-phases" starting in the summer of 2004, with the final phase facilities available for dismantling by Allied by no later than January 1, 2005.

26.     On or about August 7, 2004, as previously noted, U.S. Steel sent Allied PT-85012 (Exhibit A hereto) that assigned ownership of all ferrous scrap, non-ferrous scrap and equipment from the Sheet and Tin Facility to Allied.

27.     However, by January 2005, more than one year after the parties entered into the 2003 AIP, U.S. Steel had failed to release any facilities at the Sheet and Tin Facility to Allied.

28.     Nevertheless, in early March 2005, Allied prepared and provided to U.S. Steel its plan and schedule for the performance of its work at the Sheet and Tin Facility.  This plan was a detailed facility-by-facility plan (broken down by bay), which delineated how Allied intended to accomplish its work.  The overall time required for the completion of all work at the Sheet and Tin Facility was about 36 months, based on a conservative estimate of two days per bay.  However, Allied more realistically estimated a 24 month overall duration based on being able to dismantle each bay in one and a half days.

29.     Under Allied's "one-step" approach to mass demolition, which was fully explained to U.S. Steel in the negotiations leading to the execution of the 2003 and 2004 AIP's, structures are precut at strategic locations and then dropped in whole, or in large sections, to be cost effectively dismantled using Allied's patented shears and other specialized heavy duty dismantling equipment.

30.     Neither Allied nor U.S. Steel contemplated controlled drops, partial strip-outs or other restrictions or limitations on Allied's work at Fairless Works, due to, inter alia, out-of-scope work such as live utilities, asbestos abatement, or Hazmat removal.

7

31.     On April 28, 2005, U.S. Steel provided Allied with a list of all facilities released for dismantling, which was used for the issuance of the Demolition Permit obtained by U.S. Steel on May 31, 2005.

32.     However, it was not until approximately July of 2006 that U.S. Steel finally made the Sheet and Tin Facility available for demolition to Allied, more than two years after the entire facility was first officially contracted to Allied.

33.     However, correspondence one year later in October 2007 confirmed that U.S. Steel was still uncertain as to what buildings were to remain, what corresponding utilities would need to remain, what foundation removal would be required and which entity within U.S. Steel would be financially responsible for this work.

34.     Consequently, in addition to the delayed start of the work, Allied's work at the Fairless Works was also adversely and severely impacted - and further delayed - by numerous actions and inactions attributable to U.S. Steel including, inter alia, constantly changing and out-of-sequence releases, the withholding of various facilities from the originally intended scope of work, unanticipated asbestos remediation, unanticipated environmental remediation, delayed utility relocations, unanticipated underground utilities, and delayed decisions regarding the nature and extent of concrete removal and basement backfill to be performed.

35.     Instead of a cost effective mass demolition project utilizing Allied's "one-step process," the Fairless Works project now became a completely different one:  buildings were released on an individual and piecemeal basis, and certain facilities became interior strip-out projects; the sequence and means of dismantling and building drops were frequently changed due to additional unforeseen measures that now needed to be taken by Allied to protect buildings that were now designated to remain and/or to perform work around live utilities; Allied's work was

8

constantly stopped and/or impacted by U.S. Steel's indecision on the scope of work and by having to work around flooded and/or contaminated basements, unanticipated asbestos, live utilities, and numerous holes, depressions and/or building foundations awaiting U.S. Steel's decisions regarding the nature and extent of the additional concrete removal and/or basement backfill work to be performed.

36.     In fact, as late as 2009, U.S. Steel acknowledged its continued indecision on, <u>inter alia</u>, environmental issues (<u>i.e.</u>, asbestos and Hazmats), basement uncertainties and backfilling issues.

37.     Due to all of these delays and impacts and others, Allied's work at the Fairless Works was extended for more than three years after it should have been completed and the performance of Allied's work was made significantly more inefficient and costly.

38.     Based on U.S. Steel's actions, Allied proposed schedule was completely abandoned and most of the building drops went completely different than originally planned. Allied's work was redirected so many times that it was simply unable to cost effectively perform its work.

39.     Allied's dismantling work at the Fairless Works is still not complete as of this date.

**U.S. Steel's Initial Position Regarding Concrete Removal And Basement Backfill At Fairless**

40.     Since entering into the 2003 AIP and the 2004 DSA, Allied has dismantled multiple structures and facilities at the Fairless Works, and continues to do so.

41.     Throughout the entire course of Allied's work at the Fairless Works U.S. Steel has consistently recognized that: (a) concrete (foundation) removal below "top of floor slab" and any necessary basement backfilling beneath the floor slab is <u>within</u> Allied's scope of work under

9

the 2003 AIP; (b) that Allied <u>must</u> <u>be</u> <u>compensated</u> <u>for</u> <u>this</u> <u>extra</u> <u>work</u> and, therefore; (c) Allied

is <u>not</u> obligated to perform this work on a "no cost" basis.

42.     For example, in a July 31, 2006 email by Mr. Tony Nuzzo of U.S. Steel, a copy of

which was sent to Allied, he stated, in relevant part, as follows:

> Also, I would like to discuss demolition as relates to the foundations.
> **Allied's obligation is to demo down to the top of foundations.**
> This may not meet your needs.   If not, Allied can remove all
> structures to grade level.   If so, **we'll need to discuss with Pgh
> accounting if this cost will fall under the corporate Allied
> account or Realty's.**

<u>See</u> Exhibit C attached hereto (p. 2, email dated 7/31/2006 at 12:21 p.m.) (emphasis added).

43.     In a subsequent email dated August 7, 2006, which was issued as a follow-up to a

meeting with Allied "to discuss demolition plans and future site use at the [Fairless Works']

Sheet and Tin Facility", U.S. Steel stated that it needed to "provide a cost estimate to purchase

and transport fill for the basements at [the Sheet and Tin Facility on a] (per yard basis)" and that

it needed to identify which business group or division within U.S. Steel would have "cost

responsibility" associated with "demolition costs to take S&T [Sheet and Tin] to grade".  In other

words, U.S. Steel still needed to determine the additional costs it would incur to have Allied

perform extra work beneath the "top of floor slab" and which group or division within U.S. Steel

would pay Allied for it.  A copy of this email is attached hereto as Exhibit "C".

44.     There would obviously be no need for U.S. Steel to obtain such an estimate or

determine which division or group within U.S. Steel would bear this cost if, as it now contends,

Allied was contractually obligated to perform this concrete removal and backfill the foundation

and basement areas at "no cost" to U.S. Steel.

45.     U.S. Steel acknowledged this same position yet again over a year later.  In an

email dated October 12, 2007, which was sent to Allied and various U.S. Steel representatives

prior to a meeting regarding demolition of the Fairless Works' Sheet and Tin Facility, U.S. Steel stated in pertinent part:

> The purpose of the meeting is to come to an agreement as to what demolition is to occur.  For example: What buildings are to remain (i.e. floors, equipment, etc), Will the site be demo'd to top of foundations or to grade, what is expected to occur within the basements, what utilities need relocated or remain to accommodate whatever agreement we reach, **Who is financially responsible (Realty, Steel, Legacy).**[4]

See Exhibit D attached hereto (emphasis added).

46.     Similarly, two years later, U.S. Steel's position still remained the same.  By way of example, meeting minutes prepared by U.S. Steel from a February 3, 2009 meeting at the Fairless Works regarding the current status of the dismantling work expressly state that with respect to filling in basements, "Facility Redeployment to handle costs," and that U.S. Steel needed to obtain "backfill materials – estimated at 186,000 cu. yards, plus additional fill in material for volume above grade."  In connection therewith, these meeting minutes confirm that Allied agreed to provide U.S. Steel (and did subsequently provide) cost estimates for this backfill work and U.S. Steel once again acknowledged that it needed to determine which business group or division within U.S. Steel would bear the "financial impact" of this work.  A copy of these meeting minutes is attached hereto as Exhibit E.

47.     In addition to these emails and meeting minutes, on multiple occasions in connection with its work at the Fairless Works U.S. Steel has compensated Allied for performing foundation removal and/or basement backfill work under the 2003 AIP and the 2004 DSA.  Attached hereto as Exhibits F, G, H, and I are four (4) separate Purchase Orders issued by U.S. Steel to Allied for the performance of this compensable extra work.

---

[4] "Realty," "Steel" and "Legacy" all refer to divisions or business groups within U.S. Steel.

48.     All of the foregoing correspondence, meeting minutes and Purchase Orders are fully consistent with the terms of the 2003 AIP and the 2004 DSA, as well as the parties' continuous and well documented course of conduct since the 2003 AIP and the 2004 DSA became effective.

### U.S. Steel's Abrupt Change of Position

49.     Despite the plain and unambiguous language of the 2003 AIP and the 2004 DSA, and despite having consistently recognized Allied's right to additional compensation, for, inter alia, concrete removal below "top of floor slab" and for the backfilling of the foundation/basement areas for approximately eight (8) years, U.S. Steel's position recently changed at the end of 2011, without explanation.

50.     In February 2012, U.S. Steel finally issued a proposed specification/scope of work for, inter alia, the backfilling of certain basement areas of previously demolished structures in an area of the Fairless Works U.S. Steel now calls KIPC (which stands for Keystone Industrial Port Complex).  A copy of this document is attached hereto as Exhibit J.

51.     This proposed scope of work includes, inter alia, demolishing the existing floors that overlie the basements, the backfilling, grading and compacting of the basements, as well as other work beneath the slab on grade, all of which is compensable work which must be performed by Allied.

52.     The proposed scope of work also potentially includes additional compensable work to Allied, namely utility relocation work and Hazmat removal, both of which are clearly "for U.S. Steel's Account" pursuant to Section III of the 2003 AIP.

53.     Dating back several years, Allied had already been advising U.S. Steel that it had a sizeable and growing claim for additional compensation at Fairless relating, inter alia, to

significant delays and disruptions caused to Allied by U.S. Steel at the Fairless Works from the inception of its work.

54.     Consequently, on December 14, 2011 , and at U.S. Steel's request, Allied finally submitted a formal and sizeable claim (in excess of $20 million) to U.S. Steel in connection with the numerous delays and impacts caused by U.S. Steel.

55.     Allied believes that in response to, and in retaliation for, Allied's submission of this claim, U.S. Steel changed its position on a number of issues and now claimed, inter alia, that Allied was required to backfill the basement areas of various facilities at the Fairless Works and perform additional work beneath the slab on grade on a "no cost" basis.

56.     The concrete removal below top of floor slab and excavation and backfilling of the foundations and basements now proposed by U.S. Steel entails a significant amount of extra work which must be performed with specialized heavy duty equipment.

57.     Allied is, and has been, ready, willing and able to perform this work, which is within its scope of work under the 2003 AIP, the 2004 DSA, and the Final Conformed Specification, and has repeatedly so advised U.S. Steel, but U.S. Steel now refuses to recognize that this work is compensable extra work, not work which Allied must perform on a "no cost" basis.

### U.S. Steel's Hiring Of A Separate Contractor, Misappropriation Of Allied's Property And Threat Of Extensive Backcharges

58.     Rather than recognize Allied's contractual right to perform this work and be compensated for performing it, as U.S. Steel had done for more than eight (8) years, at some point in 2012 U.S. Steel hired another dismantling contractor to perform this work, one of Allied's competitors, and advised Allied of its intent to backcharge Allied for this work.

13

59.     Notably, in addition to Allied's right to perform this work and be compensated for it, the foundation and basement areas also contain a significant amount of valuable ferrous scrap, non-ferrous scrap and certain other equipment which Allied owns, as evidenced by, inter alia, Exhibits A and B of this Second Amended Complaint. Allied estimates that this material will be more than several thousand tons, if not greater, and hence, will have significant value.

60.     Upon information and belief, the replacement contractor was paid $795,000 by U.S. Steel to perform the first portion of this basement work, in addition to receiving the value of the ferrous and non-ferrous scrap associated with this work.

61.     By performing the foundation demolition and basement backfilling work through a replacement contractor, U.S. Steel has converted and/or misappropriated Allied's property (i.e., the ferrous and non-ferrous scrap) to its own use.

62.     Therefore, Allied has and will continue to suffer irreparable harm if U.S. Steel continues to perform this foundation demolition and basement backfilling work, which will necessarily entail the removal and misappropriation of Allied's property.

63.     In addition, Allied has and will continue to suffer damages far greater than $75,000.00 in lost profits, including the value of the misappropriated materials, in the event that Allied is not permitted to perform the balance of this work.

64.     Furthermore, if U.S. Steel backcharges Allied for this work, Allied will be placed in the extremely unworkable and inequitable position of performing other dismantling work for U.S. Steel at the Fairless Works and at other locations without any compensation (due to the backcharges by U.S. Steel), while U.S. Steel will be paying another contractor to perform work which Allied was entitled to perform, and be paid for, in the first place.

## Allied's Repeated Attempts To Resolve This Dispute

65.     Allied has repeatedly attempted to resolve the basement dispute through the dispute resolution provisions set forth in the 2003 AIP which, in Section IV, provides that disputes are to be "reviewed by the President of [Allied] and the President of [U.S. Steel]," followed by non-binding private mediation and, if necessary, litigation.

66.     U.S. Steel initially refused to engage in the agreed dispute resolution process set forth in the 2003 AIP relating to the basement work at Fairless.

67.     In particular, U.S. Steel advised Allied in writing that the dispute resolution provisions set forth in the 2003 AIP did not apply to the basement dispute.  In this regard, U.S. Steel improperly and illogically contended that while this work was part of Allied's scope of work for backcharge purposes, it was not part of Allied's scope of work for dispute resolution purposes.

68.     As previously noted, on December 14, 2011 Allied also submitted a formal written claim to U.S. Steel outlining the damages it incurred at the Fairless Works due to the various delays and impacts described in this Second Amended Complaint, as well as the value of the various facilities improperly removed from Allied's scope of work, for which Allied was due additional compensation pursuant to the terms of the Final Conformed Specification.

69.     U.S. Steel did not respond to Allied's Fairless claim until September 21, 2012, at which time it was denied in its entirety.

70.     On October 16, 2012, Allied and U.S. Steel mediated, unsuccessfully, the dispute over the basement work, as well as all of the other pending claims outlined in this Second Amended Complaint, thereby fulfilling the dispute resolution provisions in the contracts between the parties.

71.     As set forth above, Allied has performed all conditions precedent to the filing of this action.

# COUNT I
# DECLARATORY JUDGMENT

## Payment for Concrete Removal and Basement Backfill at the Fairless Works

72.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Allied hereby incorporates by reference the averments contained in the preceding paragraphs as if fully set forth herein.

73.     The federal Declaratory Judgments Act, 28 U.S.C. §§ 2201-02, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §§ 2201.

74.     Allied requests a declaratory judgment that under the 2003 AIP and the 2004 DSA it is not contractually obligated to remove concrete below "top of floor slab" and backfill the foundation/basement areas at the Fairless Works at "no cost" to U.S. Steel.

75.     Allied also requests a declaratory judgment that the backcharges which U.S. Steel now intends to assess are not authorized by the 2003 AIP, the 2004 DSA or otherwise, and would be wrongfully assessed by U.S. Steel.

76.     Finally, Allied requests a declaratory judgment that the concrete removal below "top of floor slab" and backfilling of foundations/basements at the Fairless Works are within Allied's scope of work and its exclusive non-cancellable long-term dismantling contract at Fairless under the 2003 AIP and the 2004 DSA; that U.S. Steel must compensate Allied for this additional work; and that U.S. Steel must cease and desist from performing the balance of this work through another contractor, and in the process misappropriating Allied's property.

16

WHEREFORE, Allied Erecting and Dismantling Co., Inc. requests a declaratory judgment in its favor and against United States Steel Corporation stating that:

(a)     Under the 2003 AIP and the 2004 DSA Allied is not contractually obligated to remove concrete below "top of floor slab" and backfill the foundations/basements at the Fairless Works at "no cost";

(b)     The backcharges which U.S. Steel now intends to assess are not authorized by the 2003 AIP and the 2004 DSA, or otherwise, and would be wrongfully assessed by U.S. Steel;

(c)     The concrete removal below "top of floor slab" and backfilling of the foundations/basements at the Fairless Works are within Allied's scope of work under the 2003 AIP and the 2004 DSA and, consequently, U.S. Steel must compensate Allied for this additional work; and

(d)     U.S. Steel must cease and desist from continuing to perform this work and/or misappropriating Allied's property in connection therewith.

Allied also requests an award of court costs, attorneys' fees, and such other and further relief as this Court deems to be just and proper.

## COUNT II
## BREACH OF CONTRACT

### Payment for Concrete Removal and Basement Backfill at the Fairless Works

77.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Allied hereby incorporates by reference the averments contained in the preceding paragraphs as if fully set forth herein.

78.     U.S. Steel has breached the 2003 AIP and the 2004 DSA in the following respects: (a) by failing and refusing to allow Allied to, inter alia, perform concrete removal below "top of floor slab" and backfill the foundations/basements at the Fairless Works; (b) by failing and refusing to compensate Allied for this extra work; (c) by hiring a replacement contractor to perform the foregoing work; and (d) by threatening to backcharge Allied for the performance of this work.

79.     Allied has suffered, and will continue to suffer, significant damages as a result of U.S. Steel's above-described breaches of the 2003 AIP and the 2004 DSA, including but not limited to (a) lost profits due to U.S. Steel's refusal to compensate Allied for the performance of this work; (b) lost profits due to U.S. Steel's misappropriation of Allied's property (i.e., the ferrous and non-ferrous scrap which Allied owns) and (c) losses due to U.S. Steel's wrongful backcharging of Allied for the performance of this work by another contractor.

WHEREFORE, Allied Erecting and Dismantling Co., Inc. demands judgment in its favor and against United States Steel Corporation in an amount in excess of $75,000.00, plus costs, interest, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT

### Disruption/Delay At The Fairless Works

80.     Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Allied hereby incorporates by reference the averments contained in the preceding paragraphs as fully set forth herein.

81.     Pursuant to the 2003 AIP, the 2004 DSA, and the Final Conformed Specification, the dismantling work at the Fairless Works was to be performed "on a continuous basis" and was to be completed "within three years after USS has authorized AED to begin work."

82.     Section 3.1 of the Fairless Construction Contract, dated April 24, 1992, also provides as follows:

> Should Contractor be delayed in the performance or completion of the work hereunder by owner or by any cause beyond the control of Contractor, Owner will, at Contractor's request, extend by written order to be signed by its Purchasing Agent the work scheduled for a period of time equivalent to any such delay. <u>Owner will pay Contractor any additional cost and any loss of revenue incurred by Contractor as a result of any such delay if such delay is caused by Owner.</u>

(Emphasis Added).

83.     In addition, Section II(A) of the 2004 DSA provides that the Fairless contract will include an agreed Charging Rate Schedule for labor and equipment that will apply to any "extra work."

84.     U.S. Steel had a duty to Allied to, <u>inter alia</u>, provide information and services under its control and responsibility in a timely manner in order to avoid any delay in the orderly progression of the work; to make work areas available to Allied on a timely basis; to take necessary and appropriate action so as to not disrupt, hinder or delay Allied in the performance of its work; and to equitably adjust the amounts due Allied as necessitated by conditions at the Fairless Works which either differed materially from those indicated in the contract documents and/or from those ordinarily encountered and generally recognized as inherent in the work of the character provided in the contract documents, so that Allied could complete its work on time, as estimated and in accordance with the contract and project schedule. By reason thereof, Allied's

continued, orderly and timely performance at the Fairless Works was directly dependent on U.S. Steel's performance of its duties and obligations.

85.     U.S. Steel materially breached its express and implied contractual obligations and duties to Allied by causing extensive delays, hindrances and other impacts to Allied's work in numerous respects, including:

(1)     Delaying the start of work at the Fairless Works and thereafter delaying the releases of individual facilities;

(2)     Constantly changing and/or out-of-sequence releases and/or withholding of various facilities from the scope of work;

(3)     Unanticipated and delayed asbestos remediation;

(4)     Unanticipated and delayed environmental remediation and/or Hazmat removal;

(5)     Unanticipated and delayed utility relocations;

(6)     Unanticipated underground utilities;

(7)     Failing to complete necessary predecessor work, including the relocation of necessary utilities and/or the performance of asbestos removal, hazmat removal and/or environmental work;

(8)     Continuing to occupy or use facilities that were within Allied's scope of work;

(9)     Ordering Allied to start and then stop work in various areas until environmental clean-out issues could be addressed and then completed;

(10)     Modifying and expanding Allied's scope of work;

(11)    Failing to advise Allied of, and/or remove, live utilities from its work areas;

(12)    Delaying its decisions regarding the nature and extent of the foundation removal/backfill work to be performed, thus causing Allied to work near open holes and/or exposed building foundations in areas affected by these decisions, which further restricted Allied's operations and/or required Allied to alter or change its dismantling methods in these areas;

(13)    Releasing various facilities on an individual or piecemeal basis and also causing certain facilities to become more labor intensive interior strip-out projects;

(14)    Causing Allied to work near and around flooded/contaminated basements; and

(15)    Otherwise interfering with and/or hindering Allied's original demolition plan and its "one step" mass demolition approach to the cost effective performance of its work at the Fairless Works.

86.    All of U.S. Steel's various acts and omissions, as set forth above, caused Allied to endure continuous and severe job disruptions which, inter alia, prevented the sensible and orderly progression of Allied's work, necessitated the resequencing and rescheduling of the work and caused additional demobilization and remobilization, loss of efficiency and productivity and/or the need for accelerated measures, all of which greatly increased Allied's cost of performance of the work and caused a significant delay in the completion of its work.

87.    The aforementioned job disruptions and delays were not originally contemplated by the parties, were not reasonably foreseeable by Allied, were unreasonable in duration and

were caused by the direct and active interference and breaches of U.S. Steel's contractual obligations to Allied.

88.     Nevertheless, despite all of these extensive and severe job disruptions and delays, Allied has substantially completed the work which has been released to it in conformity with the applicable specifications and has otherwise performed its work in accordance with the terms and conditions of the parties' contract documents.

89.     Despite U.S. Steel's knowledge of all of the foregoing, as well as repeated notification by Allied, U.S. Steel has refused to acknowledge its liability to Allied and has neglected, failed and refused to pay Allied the amounts due it as a direct result of the various breaches of contract by U.S. Steel.

90.     In addition to its failure to compensate Allied for these losses, U.S. Steel's failure to compensate Allied the amount due for the delays, impacts and inefficiencies at the Fairless Works has otherwise significantly impaired Allied's ability to do business, its ability to complete its manufacturing facility, and has caused Allied additional financial damages, including, inter alia, the losses associated with the forced sales of non-ferrous scrap, as well as additional financing/interest costs.

91.     Allied has performed all conditions precedent to bringing this lawsuit.

92.     Pursuant to the Pennsylvania Contractor and Subcontractor Act, 73 P.S. § 501 et seq., Allied is also entitled to interest, penalty interest and attorneys' fees on these amounts from the date payment was due.

93.     By reason of the foregoing, Allied has been damaged in a currently undetermined amount in excess of $75,000.00.

WHEREFORE, Allied Erecting and Dismantling Co., Inc., demands judgment in its favor and against United States Steel Corporation, in amount in excess of $75,000.00, plus costs, interest, penalty interest, attorneys' fees and such other and further relief as this Court deems just and proper.

**COUNT IV**
**BREACH OF CONTRACT**

**Value of Facilities Removed From Allied's Scope of Work at the Fairless Works**

94.　　Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Allied hereby incorporates by reference the averments contained in the preceding paragraphs as fully set forth herein.

95.　　The scope of Allied's work at Fairless on the Sheet and Tin Facility originally included the demolition of substantially all of the buildings, structures and facilities with the exception of the Galvanizing Line and some other isolated equipment, tanks and structures, which were not included in the original scope of the work that Allied was to perform.

96.　　Section 8.1 of the Final Conformed Specification provides that Allied shall make a lump sum payment to U.S. Steel in the amount of $1.00, which "shall be payment in full for all equipment, material and structures".

97.　　In addition, pursuant to Section 5.2 of the Final Conformed Specification, once the asbestos removal at each facility has been completed, U.S. Steel was contractually obligated to assign the ownership of each facility (including all ferrous and non-ferrous scrap, all spare parts and equipment and all railroad track located within each dismantling area) to Allied.

98.　　The asbestos removal work was completed at all facilities in the Sheet and Tin Facility.  Consequently, U.S. Steel formally assigned ownership of all ferrous and non-ferrous

scrap and equipment associated with the work at Fairless to Allied, via PT Order No. 85012, dated August 7, 2004, for $1.00.

99.    Further, under Section 10.2 of the Final Conformed Specification, upon the "commencement" of Allied's work at any facility, U.S. Steel no longer had the right to remove any "complete facility" from Allied's scope of work.

100.    Work is broadly defined under Section 1 of the Final Conformed Specification to include all aspects of dismantling work including, inter alia, removal of machinery, equipment, structures and/or debris from facilities, as well as any dismantling, demolition, or utility disconnection which is necessary to complete the work.

101.    Allied performed, commenced and/or completed some or all of this work for U.S. Steel at all released facilities at the Sheet and Tin Facility including, for example, contaminated woodblock flooring removal, the removal of salvageable equipment and material, the marketing of salvageable equipment and miscellaneous environmental work (collection of drums, etc.) and, hence, U.S. Steel no longer had the right to remove any "complete facility" from Allied's scope of work.

102.    Even assuming U.S. Steel had the right to remove or indefinitely withhold any complete facility from Allied's scope of work, under Section 10.3 of the Fairless Specification, U.S. Steel then owes Allied the agreed value of any removed facility.  Section 10.3 provides as follows:

> Should USS require a building be removed from this demolition package, USS shall pay as compensation to AED 50% of the "Scrap Value", i.e., No. 1 Heavy Melt price per gross ton for the amount of gross tons removed as listed in second issue of IRON AGE, Pittsburgh, Pennsylvania on the month of the sale, but in no event less than $50.00 per gross ton.

103.    U.S. Steel breached its contractual obligations to Allied by removing and/or placing on indefinite hold various facilities that were within Allied's scope of work.  Examples of the buildings and/or facilities removed include the No. 1 Tin Warehouse, Raw Coil Structures, No. 1 Warehouse and No. 2 Warehouse.

104.    U.S. Steel's removal of these facilities from Allied's scope of work without compensation is in breach of Sections 10.2 and 10.3 of the Final Conformed Specification and has directly and proximately caused Allied to incur damages in an amount in excess of $75,000.00.

WHEREFORE, Allied Erecting and Dismantling Co., Inc., demands judgment in its favor and against United States Steel Corporation, in amount in excess of $75,000.00, plus costs, interest, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT V
## BREACH OF CONTRACT

### The Value Of Remaining Non-ferrous and Rail At The Fairless Works

105.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Allied hereby incorporates by reference the averments contained in the preceding paragraphs as fully set forth herein.

106.    Pursuant to the Final Conformed Specification, Allied was "assigned the ownership of each facility to be dismantled", which assignment of ownership also expressly included:

(1)    All ferrous and non-ferrous scrap "located within each dismantling area" (Article 5.2.2); and

(2)  Railroad track located within a specific dismantling area which "exclusively serves that dismantling area".  (Article 5.2.5).

107.  U.S. Steel has breached its obligations to Allied by refusing to permit Allied to remove the remaining non-ferrous scrap at Fairless (much of which is associated with the underground utility system), as well as the remaining railroad track at Fairless which exclusively served the various dismantling areas.

108.  U.S. Steel also has breached its contractual obligations to Allied by insisting that, as part of the removal of any remaining railroad track, Allied be responsible for the disposal of any railroad ties which are not salvageable.

109.  However, the cost responsibility for non-salvageable ties resides with U.S. Steel pursuant to Section III(c) of the 2003 AIP (Hazmat removal is for "U.S. Steel's account"), as well as Articles 5.8, 6.4.5 and 6.4.6 of the Final Conformed Specification, since the creosote in these railroad ties is a coke plant by-product and, therefore, the railroad ties are considered Hazmats.

110.  Consistent therewith, under the parties' well established past practice at Fairless, U.S. Steel has consistently paid for the disposal of any non-salvageable ties (as well as wood block flooring).

111.  As a direct and proximate result of U.S. Steel's breaches of contract in failing to permit Allied to remove the remaining non-ferrous and rail at the Fairless Works, and by insisting that Allied incur costs for the disposal of non-salvageable railroad ties, Allied has incurred damages in an amount in excess of $75,000.00.

WHEREFORE Allied Erecting and Dismantling Co., Inc., demands judgment in its favor and against United States Steel Corporation, in amount in excess of $75,000.00, plus costs, interest, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT VI
## BREACH OF CONTRACT

### Accelerated Salvage Removal At the Fairless Works

112.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Allied hereby incorporates by reference the averments contained in the preceding paragraphs as fully set forth herein.

113.    Pursuant to Article 3 of the Final Conformed Specification, U.S. Steel is required to provide Allied, upon the completion of all dismantling work at the Fairless Works, "an additional 12 months to remove all accumulated scrap from the site."

114.    In 2006 when the issue of an agreed "lay down area" for Allied was first discussed, U.S. Steel agreed, in an August 7, 2006 email (reflecting a meeting at Fairless between Allied and U.S. Steel), a copy of which was provided to Allied, that the agreed lay down area would not be "sold or leased until demolition is complete."

115.    Allied stored, _inter alia_, salvage structural steel from the Fairless Works site on a 40 acre parcel west of the Sheet and Tin Facility demolition area because this area had been specifically identified by U.S. Steel in 2006 as a lay down area to be used by Allied.

116.    Although Allied's demolition work at the Fairless Works still is not complete, in November 2011, U.S. Steel advised Allied, contrary to its earlier designation of this area, that it had now sold this parcel and that Allied now needed to remove these materials before its demolition was complete.

117.    Allied initially objected to this directive and advised U.S. Steel of its prior designation of this area and that it would incur additional costs if it was required to move this material in advance.  U.S. Steel nevertheless demanded that this material be removed by Allied on an accelerated basis, and Allied complied with U.S. Steel's demand.

118.    U.S. Steel's demand that Allied remove the salvage structural steel from the agreed lay down area prior to the completion of all dismantling work at Fairless Works caused Allied to incur additional costs, including overtime to accomplish the accelerated removal.

119.    By reason of the foregoing, Allied has been damaged in an amount in excess of $75,000.00.

WHEREFORE, Allied Erecting and Dismantling Co., Inc., demands judgment in its favor and against United States Steel Corporation, in amount in excess of $75,000.00, plus costs, interest, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT VII
## BREACH OF CONTRACT

### U.S. Steel's Failure To Award Dismantling Work To Allied

120.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Allied hereby incorporates by reference the averments contained in the preceding paragraphs as fully set forth herein.

121.    On February 11, 2010, Allied and U.S. Steel entered into another Dismantling Services Agreement, which extended Allied's rights to perform certain dismantling work for U.S. Steel under designated terms and conditions (the "2010 DSA").

122.    Under Section 3 of the 2010 DSA, Allied is entitled to perform dismantling work for U.S. Steel pursuant to designated terms and conditions.

28

123. Despite Allied's willingness to perform the following work in accordance with the identified terms and conditions, in the 2010 DSA, U.S. Steel has breached its contractual obligations to Allied under Section 3 of the 2010 DSA by failing to award and/or permit Allied the opportunity to perform the following dismantling work:

      (1)    83 Railroad Cars at Great Lakes (February 2012);

      (2)    40 Railroad Cars at Lorain (February 2012);

      (3)    10 Barges at Chickasaw, AL (May 2012);

      (4)    7 Railroad Cars at Clairton (June 2012);

      (5)    10 Railroad Cars at Edgar Thompson Works (June 2012);

      (6)    72 Railroad Cars at Gary (June 2012);

      (7)    Hot Car at B Battery at Clairton (July 2012);

      (8)    No. 3 Flushing Liqur Surge Tank at Clairton (August 2012);

      (9)    40 Railroad Cars at Edgar Thompson Works (September 2012); and

      (10)    120 Railroad Cars at Lorain (September 2012).

124. U.S. Steel has continued to breach Section 3 of the 2010 DSA by failing to permit Allied the opportunity to perform dismantling work and any further such refusal by U.S. Steel will constitute additional damages to Allied.

125. By reason of the foregoing, Allied has been damaged in a currently undetermined amount in excess of $75,000.00.

WHEREFORE, Allied Erecting and Dismantling Co., Inc., demands judgment in its favor and against United States Steel Corporation, in amount in excess of $75,000.00, plus costs, interest, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT VIII
## BREACH OF CONTRACT

### Unanticipated Scrap Quantities for Dismantling Work under the 2010 DSA

126.    Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Allied hereby incorporates by reference the averments contained in the preceding paragraphs as fully set forth herein.

127.    Pursuant to the 2010 DSA, Allied performed dismantling work for U.S. Steel on the Gary Sinter Plant Cooler and Stack project and the Granite City #6 Galvanize Line project.

128.    On both projects Allied calculated an initial "walk through" estimate of the scrap tonnages it expected to encounter in connection with its work on these two projects, but it subsequently encountered significant additional unanticipated scrap tonnages for a variety of reasons, including:

(1)    The lack of accurate as-built drawings to determine, for instance, wall thicknesses, dimensions of tanks, piping, decking, beams and/or plates, whether or not rolls inside equipment were hollow or solid;

(2)    Undecided areas of work;

(3)    Confined space restrictions, unsafe areas (like platforms and stairs) and/or limited access to areas;

(4)    The build-up of debris (i.e., sinter materials, dirt and grease, debris, rust, etc.);

(5)    Flooded basements; and

(6)    Insufficient lighting.

129.    Notably, when these higher scrap tonnages were encountered by Allied, while the cost for the performance of Allied's work increased, the revenue recognized on this scrap for

U.S. Steel's benefit also increased. While U.S. Steel has accepted the benefit of the added revenue, it has been unwilling to accept responsibility for the added cost necessarily associated therewith.

130. A quantity change in the amount of scrap encountered by Allied due to a difference between the original "walk through" estimate and the final generated quantity can be a compensable "change in the work"(i.e., a differing site condition) for which a change order should be issued.

131. Allied sought additional compensation from U.S. Steel under the 2010 DSA for the additional costs associated with this unanticipated additional work, but U.S. Steel improperly denied these two requests, incorrectly claiming that no change orders were permitted under the operative contract documents.

132. As a direct result of U.S. Steel's breach of contract in failing to pay Allied additional compensation for the unanticipated scrap it encountered on these two projects, Allied has been damaged in a currently undetermined amount in excess of $75,000.00.

WHEREFORE, Allied Erecting and Dismantling Co., Inc., demands judgment in its favor and against United States Steel Corporation, in amount in excess of $75,000.00, plus costs, interest, attorneys' fees and such other and further relief as this Court deems just and proper.

## COUNT IX
## BREACH OF CONTRACT

### Improper Deductions On The Clairton Screening Project

133. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Allied hereby incorporates by reference the averments contained in the preceding paragraphs as fully set forth herein.

134.    Allied performed dismantling work for U.S. Steel under the 2010 DSA at the Clairton Screening Project.

135.    In connection with various invoices submitted by Allied, U.S. Steel improperly deducted $60,623.00 in claimed costs from the amount to be paid to Allied.

136.    These costs, which primarily relate to charges for equipment mobilization and demobilization, as well as down time for equipment repairs, are fully recoverable under the 2010 DSA.

137.    In fact, U.S. Steel has regularly paid these same costs to Allied on numerous other projects dating back to the 2004 DSA.

138.    U.S. Steel's failure to pay these amounts to Allied constitutes a breach of the 2010 DSA.

139.    By reason of the foregoing, Allied has been damaged in the amount of $60,623.00.

WHEREFORE, Allied Erecting and Dismantling Co., Inc., demands judgment in its favor and against United States Steel Corporation, in amount in excess of $75,000.00, plus costs, interest, attorneys' fees and such other and further relief as this Court deems just and proper.

Allied Erecting and Dismantling Co., Inc. hereby demands a jury trial of all issues so triable.

Respectfully submitted,


/s/ F. Timothy Grieco
Christopher R. Opalinski, Esquire
Ohio Bar No. 0084504
copalinski@eckertseamans.com

F. Timothy Grieco, Esquire
tgrieco@eckertseamans.com

Jacob C. McCrea, Esquire
jmccrea@eckertseamans.com

Eckert Seamans Cherin & Mellott, LLC
Firm PA No. 075
44th Floor, 600 Grant Street
Pittsburgh, Pennsylvania  15219
(412) 566-5963
Fax: (412) 566-6099

Jay M. Skolnick, Esquire
Ohio Bar No. 0006767
jmskolnick@nnblaw.com

Kevin L. Bradford, Esquire
Ohio Bar No. 0080225
klbradford@nnblaw.com

Nadler Nadler & Burdman Co., LPA
20 Federal Plaza West, Suite 600
Youngstown, OH  44503-1423
(330) 744-0247
Fax: (330) 744-8690

Dated:  November 12, 2012              Attorneys for Plaintiff
                                       Allied Erecting and Dismantling Co., Inc.

33

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Second Amended Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties listed below.

Timothy J. Cornetti, Esquire
U.S. Steel Corporation
600 Grant Street, Suite 1500
Pittsburgh, PA 15219
TJCornetti@uss.com

Roy A. Powell, Esquire
Jones Day
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
rapowell@jonesday.com

Michael R. Gladman, Esquire
Jones Day
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215-2673
mrgladman@jonesday.com

/s/ F. Timothy Grieco
F. Timothy Grieco, Esquire

Eckert Seamans Cherin & Mellott, LLC
44th Floor, 600 Grant Street
Pittsburgh, Pennsylvania 15219

Attorneys for Plaintiff
Allied Erecting and Dismantling Co., Inc.

(J1693685.1;docx)