**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ALLIED ERECTING AND** | : | |
| **DISMANTLING CO., INC.** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 4:12 CV 1390** |
| | : | |
| **v.** | : | **JUDGE SARA LIOI** |
| | : | |
| **UNITED STATES STEEL** | : | **MAGISTRATE JUDGE** |
| **CORPORATION,** | : | **GEORGE J. LIMBERT** |
| | : | |
| **Defendant.** | : | |

**DEFENDANT'S PARTIAL ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT**[1]

**(DEMAND FOR JURY TRIAL ENDORSED HEREIN)**

AND NOW, comes the Defendant United States Steel Corporation ("U. S. Steel") by and through its undersigned counsel, with the following Partial Answer, Affirmative Defenses, and Counterclaims to the Second Amended Complaint of Plaintiff Allied Erecting and Dismantling Co., Inc. ("Allied"), whereof the following is a statement:

**I.  THE PARTIES**

1.      Admitted.

2.      Admitted.

**II.  JURISDICTION AND VENUE**

3.      Admitted.

4.      Admitted.

---

[1] U. S. Steel has moved to dismiss Counts I, II, III, IV, V and VIII of Allied's Second Amended Complaint.  [Doc. No. 46.]  While U. S. Steel has responded to the allegations preceding Allied's counts, U. S. Steel has not responded to the counts that are the subject of its pending motion to dismiss.

## III.  BACKGROUND

5.      Admitted.

6.      It is admitted that the parties were litigants in Civil Actions Nos. 93-0575 and 02-2216, docketed in the United States District Court for the Western District of Pennsylvania.   The subject matter of those actions is set forth in the pleadings of those actions.

7.      It is admitted that on November 17, 2003 the parties entered into an Agreement in Principle ("2003 AIP"), which released some of the claims and counterclaims which were the subject of the action filed at Docket No. 93-0575 in the United States District Court for the Western District of Pennsylvania.  The written terms and provisions of the 2003 AIP speak for themselves.

8.      The written terms and provisions of the 2003 AIP speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.

9.      It is admitted that on April 5, 2004 the parties entered into an "Agreement in Principle for Settlement of Civil Action No. 02-2216 (W.D. PA)" ("2004 AIP") which resolved all claims and counterclaims in that action.

10.     It is admitted that on May 13, 1993 the parties entered into a "Blanket Agreement Covering Work Performed on Behalf of [U. S. Steel]" ("1993 Blanket Agreement").  The written terms and provisions of the 2004 AIP and the 1993 Blanket Agreement speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.

11.     Admitted.

12.     It is admitted that the Final Conformed Specification was and is a comprehensive and detailed specification with respect to the buildings and facilities identified in it and that, in

addition to the April 24, 1992 Construction Contract ("1992 Construction Contract"), it governed Allied's work with respect to the "Hot End" of Fairless Works.  It is denied that the Final Conformed Specification was or is a comprehensive and detailed specification with respect to further dismantling work at Fairless Works performed pursuant to the 2003 AIP or the July 15, 2004 Dismantling Services Agreement ("2004 DSA").  To the contrary, only certain "relevant" terms and conditions contained in the Final Conformed Specification and 1992 Construction Contract apply to work performed by Allied beyond the "Hot End" of Fairless Works.

13.    The written terms and provisions of the 2003 AIP speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.

14.    It is admitted that on August 7, 2004 and July 6, 2007 U. S. Steel issued the Order Acknowledgements, attached as Exhibits A and B to Plaintiff's Second Amended Complaint. The written terms and provisions of the Order Acknowledgments—mischaracterized in the Second Amended Complaint as "Purchase Orders" or "Property Transfer Orders"—speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.

15.    The written terms and provisions of the 2003 AIP speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions are denied.  It is denied that Allied is entitled to additional payment from U. S. Steel.

16.    The written terms and provisions of the 2003 AIP speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions are denied.

17.    Admitted.  In addition, the 2003 AIP further defines "Dismantling Work" at Section II B(6)(b).

18.     Denied.

19.     Denied.

20.     It is admitted that the 2004 DSA was a further definitive agreement to assist, in part, in the administration of the 2003 AIP.  The written terms and provisions of the 2004 DSA speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.  U. S. Steel denies that the quoted language is found at 2004 DSA Section III(A).

21.     It is admitted that Attachment 4 to the 2004 DSA is entitled "Labor and Specialized Dismantling Equipment Charging Rate Schedule" which is only applicable as per the terms and provisions of the 2004 DSA.  It is denied that the claims of Allied made part of this action are for extra work or that the referenced Charging Rate Schedule is applicable.

22.     It is admitted that U. S. Steel provided a "Preliminary Plan" site map ("Preliminary Plan") to Allied on or about January 15, 2004.  The written terms and provisions of the Preliminary Plan speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.

23.     It is admitted that U. S. Steel provided a Purchase Order, No. 381273, to Allied on or about March 1, 2004.  The written terms and provisions of the Purchase Order speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.

24.     It is admitted that, in 2004, U. S. Steel advised Allied that certain work areas within the Sheet & Tin Facility at Fairless Works were to be released to Allied after the completion of certain advance work.  U. S. Steel is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore, denies the same.

25.     It is admitted that on or about July 15, 2004, U. S. Steel provided an email to Allied, attaching a color copy of a plan of proposed work areas at the Fairless Works.  The written terms and provisions of the email and its attachment speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.

26.     It is admitted that on August 7, 2004, U. S. Steel issued the Order Acknowledgement, attached as Exhibit A to Plaintiff's Second Amended Complaint.  The written terms and provisions of the Order Acknowledgment speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.  U. S. Steel denies that the Order Acknowledgement assigned ownership of ferrous scrap, non-ferrous scrap and/or equipment to Allied.

27.     U. S. Steel admits that it had not released and authorized in writing for dismantling any facilities at the Sheet & Tin Facilities by January 2005.  U. S. Steel denies that it had an obligation to release by any particular time or date any facilities to Allied for dismantling work under the 2003 AIP, which states, among other things, that release of such work will be "regardless of time" and at U. S. Steel's discretion.

28.     It is admitted that on or about March 2005, Allied provided to U. S. Steel a proposed plan related to the performance of Allied's work at the Sheet & Tin Facilities.  The written terms and provisions of that proposed plan speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.

29.     U. S. Steel is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore, denies the same.

30.     Denied.  The various agreements relating to Allied's dismantling work at Fairless Works specifically contemplate utility relocation, asbestos abatement, and Hazmat removal.

31.     It is admitted that on or about April 28, 2005, U. S. Steel provided to Allied a document entitled "Fairless Buildings Planned for Demolition."  The written terms and provisions of that document speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied. It is further admitted U. S. Steel obtained a Zoning/Construction Permit dated May 31, 2005.  The written terms and provisions of that permit speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.

32.     U. S. Steel is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore, denies the same.  The term "available," as used in this paragraph, is ambiguous, as are the remaining allegations.

33.     To the extent alleged, it is admitted that on or about October 12, 2007, U. S. Steel provided to Allied an email, attached to the Second Amended Complaint as Exhibit D, regarding dismantling work at the Sheet & Tin Facilities.  The language of that email speaks for itself, and any characterization of that language at odds with the language is denied.  U. S. Steel is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore, denies the same.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

39.     Admitted.

40.     Admitted.

41.     Denied.

42.     The language of the referenced July 31, 2006 e-mail speaks for itself, and any characterization of that language at odds with the language is denied.  It is denied that the referenced e-mail supports Allied's contentions as to its contractual scope of "no cost" work, that Allied is to receive additional compensation for the work at issue in this action or that said work is "extra work."

43.     The language of the referenced August 7, 2006 e-mail speaks for itself, and any characterization of that language at odds with the language is denied.  It is denied that the referenced e-mail supports Allied's contentions as to its contractual scope of "no cost" work, that Allied is to receive additional compensation for the work at issue in this action or that said work is "extra work."

44.     Denied.

45.     The language of the referenced October 12, 2007 e-mail speaks for itself, and any characterization of that language at odds with the language is denied.  It is denied that the referenced e-mail supports Allied's contentions as to its contractual scope of "no cost" work, that Allied is to receive additional compensation for the work at issue in this action or that said work is "extra work."

46.     The language of the referenced February 3, 2009 Meeting Minutes speaks for itself, and any characterization of that language at odds with the language is denied.  It is denied that the referenced minutes support Allied's contentions as to its contractual scope of "no cost" work, that Allied is to receive additional compensation for the work at issue in this action or that said work is "extra work."

47.     The language of the Purchase Orders, including Exhibits F, G, H, and I, speak for themselves, and any characterization of that language at odds with the language is denied.  It is denied that the referenced Purchase Orders support Allied's contentions as to its contractual scope of "no cost" work, that Allied is to receive additional compensation for the work at issue in this action or that said work is "extra work."

48.     The language of the referenced documents speaks for itself, and any characterization of the language at odds with the language is denied  To the extent that Allied makes allegations in paragraph 48 against U. S. Steel, they are denied.

49.     Denied.

50.     It is admitted that in September of 2011 and in January of 2012 U. S. Steel issued to Allied Exhibit J, attached to Plaintiff's Amended and Redacted Complaint, entitled "Keystone Industrial Port Complex Subgrade Backfilling Procedures," which speaks for itself.  It is denied that Exhibit J was a "proposed specification/scope of work."

51.     The language of Exhibit J speaks for itself.  It is denied that Exhibit J was a "proposed scope of work."   It is denied that any of the backfilling procedures set forth in Exhibit J constitutes compensable work.  It is admitted that the backfilling procedures set forth in Exhibit J must be performed by Allied as they are within Allied's contractual obligation to perform at no cost to U. S. Steel.

52.     Denied.

53.     Denied.  It is admitted only that, on December 14, 2011, Allied submitted to U. S. Steel a claim relating to its work at the former Sheet & Tin Facilities at Fairless Works.

54.    Denied.  It is admitted only that, on December 14, 2011, Allied submitted to U. S. Steel a claim relating to its work at the former Sheet & Tin Facilities at Fairless Works.  It is denied that U. S. Steel caused, or could cause, any delays to Allied's work at the Fairless Works.

55.    Denied.

56.    It is denied that Allied has been directed to perform concrete removal below top of floor slab.  It is denied that Allied is to receive additional compensation for any of the work it was directed to perform which is at issue in this action or that said work is "extra work."

57.    It is admitted that Allied is contractually obligated to perform the work at issue at no cost. It is admitted that Allied has refused to perform this work absent additional compensation and that U. S. Steel refuses to recognize the work as compensable extra work as it is not.  The remaining allegations in paragraph 57 are denied.

58.    It is admitted that after Allied refused to perform the work it was directed to perform at no cost to U. S. Steel, U. S. Steel hired a third-party contractor to perform the work and that U. S. Steel notified Allied of its intention to backcharge Allied for cost of such work.  The remaining allegations in paragraph 58 are denied.

59.    Denied.

60.    Admitted.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Denied.

65.     U. S. Steel admits that Allied previously attempted to resolve the basement dispute through dispute resolution, but it is denied that the Dispute Resolution provision set forth in Section IV of the 2003 AIP is applicable to the basement dispute.

66.     It is admitted that U. S. Steel participated in dispute resolution relating to the basement work at Fairless Works, but it is denied that the Dispute Resolution provision set forth in Section IV of the 2003 AIP is applicable to the basement dispute.

67.     It is admitted that U. S. Steel advised Allied that the Dispute Resolution provision set forth in Section IV of the 2003 AIP is not applicable to the basement dispute.  Notwithstanding that fact, U. S. Steel subsequently participated in dispute resolution related to the basement work at Fairless Works.  The remaining allegations contained in paragraph 50 are denied.

68.     Denied.  It is admitted only that, on December 14, 2011, Allied submitted to U. S. Steel a claim relating to its work at the former Sheet & Tin Facilities at Fairless Works.

69.     Denied.   Prior to September 21, 2012, U. S. Steel responded to Allied's claim by requesting additional information, meeting with Allied, and through other informal exchanges. Allied did not provide its updated claim to U. S. Steel until July 18, 2012.  Approximately two months later, in a letter dated September 21, 2012, U. S. Steel formally denied Allied's claim, in its entirety.

70.     Admitted.

71.     U. S. Steel lacks knowledge or information sufficient to form a belief as to conditions precedent referenced by Allied in paragraph 71, and on that basis, denies the allegations contained therein.

## COUNTS I–V: DECLARATORY JUDGMENT AND BREACH OF CONTRACT

72–111.  U. S. Steel incorporates by reference all preceding paragraphs as though fully stated herein.  U. S. Steel further states that the allegations in paragraphs 72–111 are subject to a pending motion to dismiss, and therefore, no response is required of U. S. Steel.

WHEREFORE, as further articulated in its pending Partial Motion to Dismiss [Doc. No. 46], U. S. Steel respectfully requests that this Court dismiss Counts I–V and deny Allied the relief requested in Counts I–V of its Second Amended Complaint.

## COUNT VI – BREACH OF CONTRACT

112.  U. S. Steel incorporates by reference all preceding paragraphs as though fully stated herein.

113.  Denied.  Article 3 of the Final Conformed Specification does not contain terms "relevant" or applicable to the allegations in Count VI.

114.  It is admitted that on or about August 7, 2006, U. S. Steel provided to Allied an email, attached to the Second Amended Complaint as Exhibit C, regarding a meeting held at Fairless Works related to the dismantling work at the Sheet & Tin Facilities and reflecting discussions pertaining to a piece of property to be utilized for processing and transporting scrap.  The language of that email speaks for itself, and any characterization of that language to the contrary is denied.

115.  U. S. Steel admits that it allowed Allied to utilize a 37-acre parcel of land at Fairless Works as a temporary lay-down yard for structural steel.  U. S. Steel denies that the 37-acre parcel utilized as a temporary lay-down yard for structural steel is the same piece of property as, or otherwise has anything to do with, the property to be utilized for processing and transporting scrap that is referenced in Exhibit C to the Second Amended Complaint.

116.    It is admitted that U. S. Steel instructed Allied to remove materials from the 37-acre parcel of land at Fairless Works utilized as a temporary lay-down yard for structural steel when U. S. Steel entered into negotiations for sale of the parcel to a third-party, as U. S. Steel had every right to do.    U. S. Steel denies that its instructions were contrary to any "earlier designation" or agreement.

117.    It is admitted that Allied initially objected to but eventually complied with U. S. Steel's instructions to remove the materials from the 37-acre parcel of land at Fairless Works utilized as a temporary lay-down yard for structural steel.    U. S. Steel denies that its instructions were contrary to any "prior designation" or that Allied incurred damages as a result.

118.    Denied.

119.    Denied.

WHEREFORE, U. S. Steel respectfully requests that this Court deny Allied the relief requested in Count VI of its Second Amended Complaint.

## COUNT VII – BREACH OF CONTRACT

120.    U. S. Steel incorporates by reference all preceding paragraphs as though fully stated herein.

121.    It is admitted that on February 11, 2010 the parties entered into another "Dismantling Services Agreement" ("2010 DSA").  The written terms and provisions of the 2010 DSA speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.

122.    The written terms and provisions of the 2010 DSA speak for themselves, and any characterization of those terms and provisions at odds with those terms and provisions is denied.

123.    Denied.

124.    Denied.

125.    Denied.

WHEREFORE, U. S. Steel respectfully requests that this Court deny Allied the relief requested in Count VII of its Second Amended Complaint.

## COUNT VIII – BREACH OF CONTRACT

126–132.        U. S. Steel incorporates by reference all preceding paragraphs as though fully stated herein.  U. S. Steel further states that the allegations in paragraphs 126–132 are subject to a pending motion to dismiss, and therefore, no response is required of U. S. Steel.

WHEREFORE, as further articulated in its pending Partial Motion to Dismiss [Doc. No. 46], U. S. Steel respectfully requests that this Court dismiss Count VIII and deny Allied the relief requested in Count VIII of its Second Amended Complaint.

## COUNT IX – BREACH OF CONTRACT

133.    U. S. Steel incorporates by reference all preceding paragraphs as though fully stated herein.

134.    It is admitted that Allied performed some dismantling work for U. S. Steel at the Clairton Screening Project.

135.    Denied.

136.    Denied.

137.    Denied.

138.    Denied.

139.    Denied.

WHEREFORE, U. S. Steel respectfully requests that this Court deny Allied the relief requested in Count IX of its Second Amended Complaint.

140.    Except to the extent specifically admitted herein, U. S. Steel denies each and every allegation contained in the Second Amended Complaint, including all allegations contained in headings or otherwise not contained in one of the Second Amended Complaint's 139 numbered paragraphs.

## AFFIRMATIVE DEFENSES

141.    Some or all of Plaintiff's claims fail to state a claim upon which relief can be granted.

142.    Plaintiff's claims may be barred, in whole or in part, as a result of Plaintiff's breach of the applicable contractual agreements.

143.    Plaintiff's claims may be barred, in whole or in part, as a result of Plaintiff's refusal to perform work as directed by U. S. Steel.

144.    Plaintiff's claims may be barred, in whole or in part, as a result of the doctrines of estoppel and/or waiver.

145.    Plaintiff's claims may be barred, in whole or in part, as a result of the doctrines of collateral estoppel and/or res judicata.

146.    Plaintiff's claims may be barred, in whole or in part, as a result of the absence of any harm or damages incurred by Plaintiff and/or as a result of the doctrine of payment.

147.    Plaintiff's claims may be barred, in whole or in part, as a result of the applicable statute of limitations and/or doctrine of laches.

148.    Plaintiff's claims may be barred, in whole or in part, because Plaintiff failed to mitigate its alleged damages.

149.    Plaintiff's claims may be barred, in whole or in part, by the doctrine of accord and satisfaction.

150.    Plaintiff's claims may be barred, in whole or in part, by the parole evidence rule or the statute of frauds.

151.    Plaintiff's claims may be barred, in whole or in part, by prior arbitration and award.

152.    Plaintiff's claims may be barred, in whole or in part, by the doctrine of preemption.

153.    Plaintiff's claims may be barred, in whole or in part, by fraudulent actions or omissions of Plaintiff.

154.    U. S. Steel reserves the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and the factual developments in this case.

## COUNTERCLAIM I:

### Breach of Contract Related To Basement Work at Fairless Works

155.    U. S. Steel incorporates by reference all preceding paragraphs as though fully stated herein.

156.    Pursuant to the 2003 AIP, 2004 DSA and the 1992 Final Conformed Specification, Allied is obligated to remove machinery, equipment, structures and debris as directed by and at no cost to U. S. Steel.

157.    Pursuant to the 2003 AIP, 2004 DSA and the 1992 Final Conformed Specification, Allied is to backfill basements as directed by and at no cost to U. S. Steel.

158.    During its demolition work on the "Hot End" of Fairless Works, Allied performed the very same work at issue in this matter at no cost to U. S. Steel.

159.    In November of 2011, U. S. Steel directed Allied to remove non-concrete materials from the basements at the Fairless Works and backfill the voided basements.

160.    In response to that direction, Allied informed U. S. Steel that it would not proceed to perform the work absent additional compensation from U. S. Steel.

161.    Allied's refusal to remove machining equipment, structures and debris from basements and then backfill them at no cost to U. S. Steel constitutes a breach of the 2003 AIP and the 2004 DSA.

162.    As a result of Allied's breach of its contractual obligations, U. S. Steel retained a third party contractor to perform the work that Allied had refused to perform absent additional compensation.

163.    To date, U. S. Steel has been damaged in an amount in excess of $795,000.00 as a direct and proximate result of Allied's breach of contracts as aforesaid.

WHEREFORE, United States Steel Corporation demands judgment against Allied Erecting and Dismantling in an amount in excess of $795,000.00 plus interest thereon, costs, and any other relief that this Court deems proper.

## COUNTERCLAIM II:

### Breach of Contract Related To MFG Advance Payment

164.    U. S. Steel incorporates by reference all preceding paragraphs as though fully stated herein.

165.    Pursuant to Section II(A)(2) of the 2004 AIP, U. S. Steel agreed to make a $10 million Advance Payment to Allied in consideration for Allied's agreement to perform manufacturing work for U. S. Steel at Allied's facility in Youngstown, Ohio (the "MFG Advance Payment").

166.    The 2004 AIP further provided in Section II(B)(2) that U. S. Steel would recover the MFG Advance Payment over the ten-year term of the agreement through discounts on Allied's invoices for manufacturing work.

167.    Pursuant to a January 2005 First Amendment to the 2004 AIP, the parties agreed to extend the term of the 2004 AIP from ten to eleven years, setting the end of its term at March 31, 2015.

168.    U. S. Steel tendered the MFG Advance Payment to Allied on July 25, 2005.

169.    On February 14, 2005, the parties entered into a Manufacturing Services Agreement ("2005 MSA"), which established procedures for administering manufacturing work contemplated by the 2004 AIP.  The 2005 MSA became effective April 1, 2004.

170.    Since the tender of the MFG Advance Payment, Allied has not performed manufacturing work for U. S. Steel at its Youngstown, Ohio facility.

171.    Upon information and belief, the construction of Allied's Youngstown, Ohio facility is not even complete and the facility is otherwise unable to accept manufacturing work from U. S. Steel.

172.    Allied's failure to perform manufacturing work for U. S. Steel has precluded U. S. Steel from recovering the MFG Advance Payment.

173.    U. S. Steel has requested that Allied provide adequate assurances of the performance of its contractual obligation to perform manufacturing work at its Youngstown, Ohio facility, so as to assure U. S. Steel of its ability to recover the MFG Advance Payment through discounted invoices over the remaining term of the 2004 AIP.

174.    Allied has failed to provide adequate assurances to U. S. Steel.

175.    Allied's failure to provide adequate assurances to U. S. Steel constitutes a repudiation by Allied of its contractual obligations under the 2004 AIP and 2005 MSA.

176.    U. S. Steel has notified Allied that it considers Allied's repudiation of its contractual obligations under the 2004 AIP and 2005 MSA as final, and U. S. Steel demanded from Allied the return of the MFG Advance Payment, plus interest thereon.

177.    Allied has repudiated and otherwise anticipatorily breached its contractual obligation to perform manufacturing work at its Youngstown, Ohio facility, preventing U. S. Steel from recovering the MFG Advance Payment through discounted invoices over the remaining term of the 2004 AIP.

178.    As a direct and proximate result of Allied's repudiation and/or breach of its contractual obligations under the 2004 AIP and 2005 MSA, U. S. Steel has been damaged in the amount of $10,000,000, plus interest thereon.

WHEREFORE, United States Steel Corporation seeks judgment against Allied Erecting and Dismantling in the amount of $10,000,000, plus interest thereon, costs, and any other relief that this Court deems proper.

## COUNTERCLAIM III:

### Breach of Contact and Declaratory Judgment Related To Railroad Tie Removal

179.    U. S. Steel incorporates by reference all preceding paragraphs as though fully stated herein.

180.    The Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201-02, provides, in part, that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

181.    A dispute exists between the parties regarding Allied's obligation to remove railroad ties from Fairless Works.

182.    Pursuant to 2003 AIP Section III and 2004 DSA Section II(A), Allied is obligated to perform, at no cost to U. S. Steel, dismantling work that is "released and authorized in writing for dismantling" by U. S. Steel.

183.    U. S. Steel released and authorized in writing Allied's removal of certain railroad track at Fairless Works.

184.    Allied performed some of that railroad track removal, but Allied refused, and continues to refuse to, at its expense, remove, haul and legally dispose of railroad ties associated with railroad track removal.

185.    Pursuant to Section 6.1.6 of the 1992 Final Conformed Specification, "[i]n areas where railroad track is removed [Allied] shall remove, haul and legally dispose of associated railroad ties at its expense."

186.    Allied has breached its contractual obligation to, at its expense, remove, haul and legally dispose of railroad ties associated with railroad track removal.

WHEREFORE, United States Steel Corporation seeks judgment against Allied Erecting and Dismantling in an amount in excess of $75,000.00 and requests a declaratory judgment in its favor and against Allied Erecting and Dismantling that:

(a)    In areas at Fairless Works where Allied removes, or has removed, railroad track released and authorized in writing for removal by U. S. Steel, Allied must remove, haul and legally dispose of associated railroad ties at its expense; and

(b)    Allied has breached its contractual obligation to, at its expense, remove, haul and legally dispose of railroad ties associated with railroad track removal at Fairless Works.

United States Steel Corporation also seeks interest, costs, and any other relief that this Court deems proper.

## **JURY DEMAND**

U. S. Steel hereby demands a trial by jury on any issue so triable.

Dated: December 12, 2012                    Respectfully submitted,


                                            s/ Michael R. Gladman
                                            Michael R. Gladman
                                            (Ohio Bar Registration No. 0059797)
                                            E-mail:  mrgladman@jonesday.com
                                            B. Kurt Copper
                                            (Ohio Bar Registration No. 0082563)
                                            E-mail:  bkcopper@jonesday.com
                                            JONES DAY
                                            Street Address:
                                               325 John H. McConnell Blvd., Suite 600
                                               Columbus, OH 43215-2673
                                            Mailing Address:
                                               P.O. Box 165017
                                               Columbus, OH  43216-5017
                                            Telephone:  (614) 469-3939
                                            Facsimile:  (614) 461-4198

                                            Roy A. Powell
                                            (admitted *pro hac vice*)
                                            E-mail:  rapowell@jonesday.com
                                            JONES DAY
                                            500 Grant St., Suite 4500
                                            Pittsburgh, PA 15219-2514
                                            Telephone:  (412) 391-3939
                                            Facsimile:  (412) 394-7959

                                            Timothy J. Cornetti, Esq.
                                            (admitted *pro hac vice*)
                                            Email:  tjcornetti@uss.com
                                            United States Steel Corporation
                                            600 Grant Street, Suite 1500
                                            Pittsburgh, Pa. 15219
                                            Telephone:  (412) 433-2992
                                            Facsimile:  (412) 288-3063

                                            *Counsel for Defendant United States Steel Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2012, a copy of the foregoing was filed by operation of the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

s/ Michael R. Gladman

*One of the Attorneys for Defendant United States Steel Corporation*

COI-1484897v6