UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIED ERECTING AND DISMANTLING CO., INC., | ) ) ) | CASE NO. 4:12-cv-1390 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION** |
| UNITED STATES STEEL CORPORATION, | ) ) ) | **AND ORDER** |
| DEFENDANT. | ) | |

Before the Court is plaintiff's motion for reconsideration of summary judgment on defendant's second counterclaim (Doc. No. 178)[1] and defendant's motion to strike the motion for reconsideration as untimely (Doc. No. 182).[2]

For the reasons set forth herein, defendant's motion to strike is denied; plaintiff's motion for reconsideration is granted, but, upon reconsideration, the Court adheres to its original decision regarding defendant's second counterclaim.

### I. APPLICABLE LAW

Although plaintiff cited no legal authority or rule under which it brings its motion, "district courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). "This authority allows district courts 'to afford such relief from [interlocutory orders] as justice requires.'" *Id*. (quoting *Citibank N.A. v. Fed.*

---

[1] Plaintiff also filed an accompanying appendix to the motion. (Doc. No. 179.) Defendant filed its opposition ("Opp'n" [Doc. No. 198]) and plaintiff filed a reply ("Reply" [Doc. No. 201]).

[2] Plaintiff filed its opposition (Doc. No. 184) and defendant filed a reply (Doc. No. 197).

*Deposit Ins. Corp.*, 857 F. Supp. 976, 981 (D.D.C. 1994) (alteration in original)). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). "This standard obviously vests significant discretion in district courts." *Id.* at 959 n. 7.

## II. BACKGROUND AND ARGUMENTS

Plaintiff Allied Erecting and Dismantling Co., Inc. ("Allied") has performed work as an industrial dismantling contractor for defendant United States Steel Corporation ("U.S. Steel") for over 30 years. Their contracts have led to various lawsuits, whose settlement documents have led to further lawsuits. This Court itself has issued several extensive opinions ruling on various matters in the latest round of disputes between these parties over the terms of their multiple, patchwork agreements.

In the most recent ruling, issued on September 30, 2014 ("Opinion" [Doc. No. 174]), the Court ruled, *inter alia*, that U.S. Steel was entitled to summary judgment on its second counterclaim, which meant that Allied must return to U.S. Steel a $10 Million MFG Advance payment made under their contract. The Court concluded that Allied had provided "little or no consideration" to warrant its retention of the advance payment, notwithstanding the contractual characterization of the advance payment as "non-refundable." In particular, the Court concluded that, while Allied received its end of the parties' bargain, namely a $63 Million Profit/Gross Margin, U.S. Steel received none of its end of the bargain, namely, $10 Million in discounted manufacturing work.

Allied's motion for reconsideration does not argue that there has been a change in controlling law or that this Court made a clear error resulting in manifest injustice. Rather, by way of an affidavit from its long-time accountant, dated November 17, 2014, Allied presents evidence it did not previously present to the Court in support of the very same argument it made at the summary judgment stage of the proceedings, which this Court rejected. (*See* Anness Affidavit [Doc. No. 179-6].) Although this evidence may be newly presented, it is not "new" in the legal sense. "New" evidence is evidence that was not previously available. *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 483 F. App'x 85, 94 (6th Cir. 2012) (citing *CGH Transport, Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 824 (6th Cir. 2008) (finding that district court did not abuse its discretion in denying motion for reconsideration where allegedly newly discovered evidence was not previously unavailable)).

Even if Allied's evidence were new, it would not change the Court's conclusion, which was, and remains, based on the language of the parties' contracts. Allied's current argument is that, although U.S. Steel did not enjoy any discounted *manufacturing* work, it did get about $23.5 million in discounted *dismantling* work and, therefore, "received its bargained-for consideration for the MFG Advance." (Motion at 8674.) Allied argues now, as it did before, that U.S. Steel had the option of meeting its $63 Million Profit/Gross Margin Commitment to Allied by providing Allied with either dismantling work or manufacturing work, and it chose to award dismantling work. Allied argues that U.S. Steel "received ample consideration under the 2004 AIP" (*id.* at 8678) because it enjoyed discounts on the dismantling work it awarded to Allied. In the alternative, Allied asserts that the existence or amount of discounts should be a question for a jury. (*Id.*)

Although U.S. Steel seeks to have the motion for reconsideration stricken as untimely,[3] it also argues that the motion is not based on any intervening change in law or facts, on errors of law, or on manifest injustice which might justify granting this kind of "extraordinary" and "disfavored" motion. (Opp'n at. 10456.) U.S. Steel correctly asserts that Allied's current position is inconsistent with the parties' contracts, which expressly provide that U.S. Steel should be allowed to recoup its $10 Million MFG Advance Payment in the form of discounted *manufacturing* work performed by Allied, notwithstanding the fact that U.S. Steel was permitted to satisfy its Profit/Gross Margin Commitment to Allied by counting both manufacturing and dismantling work.

Without citing any authority or any portion of the record before this Court, Allied replies:

> U.S. Steel has opportunistically exploited language in the 2004 AIP regarding the "consideration" for the MFG Advance in order to make it seem that it eagerly wanted and bargained for discounted "manufacturing work." Nothing could be further from the truth. What U.S. Steel bargained for was some accounting mechanism to allow it to defer the immediate recognition of a $10 million liability through a "recovery" by the receipt of some value from Allied over time.

(Reply at 10470.)

### III. DISCUSSION

This Court could embark on a lengthy analysis as to whether Allied's motion is timely and/or whether it has met the standard for reconsideration. But the Court concludes there

---

[3] Motions for reconsideration can be filed at several different procedural junctures, and their timeliness must be judged in light of that procedural posture. Here, there has been no final judgment, even with respect to the issues already resolved. Therefore, defendant's position that the 28-day time limit in Fed. R. Civ. P. 59(e) applies is unavailing. Any decision in the case to date is interlocutory in nature and can be revisited at any time prior to final judgment. *See Rodriguez*, *supra*. The Court, therefore, judges the timeliness of this motion under Fed. R. Civ. P. 60(c), which requires that the motion be filed "within a reasonable time[.]" The Court cannot conclude that the timing of Allied's motion failed to meet that standard.

is no need for the simple reason that Allied's argument ignores the language of the contract between the parties—a contract entered into in *settlement* of previous disputes.

The 2004 AIP provides, in Section II(B) dealing with "Long-Term Dismantling and Manufacturing Work":

> (2) <u>Manufacturing Contracts</u>. [Allied] agrees to perform *manufacturing* work for U.S. Steel under terms, conditions, and work scopes as the parties may agree *at [Allied's] facility in Youngstown, Ohio*, under the Manufacturing Contracts. *Until the recovery of the MFG Advance Payment*, each invoice for work performed under any of the Manufacturing Contracts *shall be discounted by [Allied] to permit U.S. Steel to recover the MFG Advance Payment* over the 120-month term of this Agreement, provided that no invoice shall be discounted to the point that the profit/gross margin would be less than zero to [Allied] for such work. *After the recovery of the MFG Advance Payment, no further discount will be required.* (emphases added).

(2004 AIP [Doc. No. 59-6] at 997.) There is no dispute that Allied never built its manufacturing facility in Youngstown and Allied never performed *any* discounted manufacturing work for U.S. Steel.

The 2004 AIP further provides in Section II(B):

> (3) <u>Profit/Gross Margin Commitment</u>. U.S. Steel commits to offer or arrange work for [Allied], . . . over the next one hundred and twenty (120) months *in order to generate a profit/gross margin to [Allied] of Sixty Three Million Dollars ($63,000,000)* (the "Profit/Gross Margin Commitment"). . . .
>
> In meeting the Profit/Gross Margin Commitment set forth in this Section II(B)(3), [Allied's] profit/gross margin *on revenues from any source derived from work awarded or arranged under this Agreement will be counted*. . . . If at any time hereunder, [Allied] generates a profit/gross margin in excess of $63.0 million on work awarded or arranged hereunder, the Profit/Gross Margin Commitment will be deemed satisfied. . . . U.S. Steel's commitment to provide [Allied] with additional work under this Agreement, beyond that which is already under contract, shall be complete when the profit/gross margin generated by [Allied] under this Agreement, including any advance payments that may be made under Sections II(A)(1) and II(A)(2) and any shortfall payments that may be made under Section II(B)(4) below, equal $63.0 million. . . .

(*Id.* at 998.) There is no dispute that, through dismantling work awarded or arranged by U.S. Steel, Allied enjoyed a profit/gross margin of $63.0 million.

Allied now conflates these provisions of the 2004 AIP, arguing that, since U.S. Steel apparently (as suggested by the newly presented evidence) enjoyed discounts on *dismantling* work, that should satisfy *Allied's* commitment to provide discounted manufacturing work because U.S. Steel was allowed to count both dismantling work and manufacturing work for purposes of meeting *its* commitment to Allied. It may be that that would have been a good arrangement; but it is not the arrangement set forth in the 2004 AIP. In return for the MFG Advance Payment from U.S. Steel, Allied agreed to perform discounted manufacturing work until the discounts equaled the amount of the advance payment. At the same time, U.S. Steel agreed to provide or arrange for enough dismantling and/or manufacturing work for Allied that Allied would enjoy a $63 million profit/gross margin. That was the deal. Allied did not come through[4] and, as explained in the Court's Memorandum Opinion and Order of September 30, 2014, "the word non-refundable [as it relates to the MFG Advance Payment] cannot be construed as a license to provide little or no consideration and to still retain an advance payment." (Opinion at 8646.)

The language of the 2004 AIP is clear – Allied is to perform discounted *manufacturing* work. If that were not sufficient reason for the Court's ruling herein (and previously), the Court also notes that the 2004 AIP additionally provides:

> This Agreement, and any definitive agreement resulting therefrom, may be amended so as to address and/or to incorporate any further agreements between the parties with respect to any additional matters and/or additional work that the parties may, in the

---

[4] Allied claims that "U.S. Steel received discounts on the only work it offered to Allied" (Motion at 8678), as if to suggest that U.S. Steel was at fault for not offering Allied any manufacturing work. This ignores the undisputed fact that, since Allied never built its manufacturing facility in Youngstown, no manufacturing work could be awarded by U.S. Steel.

> future, agree to pursue, provided, however, *that any such additions or amendments must be in writing, signed by the President of [Allied] and by the President of U.S. Steel and that any other attempts to alter, amend, or to change the agreements herein shall be void.*

(2004 AIP at 1003, emphasis added.) The 2004 DSA (Doc. No. 59-7), which was the "definitive agreement" resulting from the 2004 AIP, contains a virtually identical provision. (*See*, *id.* at 1018.) Therefore, any testimony of the principals or of any of the persons who negotiated these agreements, which has been referred to by Allied in its motion, is both irrelevant and in direct contravention of the language of the agreements.

## IV. CONCLUSION

For the reasons set forth herein, defendant's motion to strike the motion for reconsideration (Doc. No. 182) is **DENIED**. Plaintiff's motion for reconsideration (Doc. No. 178) is **GRANTED**; but, upon reconsideration, the Court adheres to its original decision with respect to defendant's second counterclaim.

**IT IS SO ORDERED**.


Dated: February 13, 2015

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**