UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIED ERECTING AND DISMANTLING CO., INC., | ) ) ) | CASE NO. 4:12-cv-1390 |
| PLAINTIFF, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| UNITED STATES STEEL CORPORTION, | ) ) ) ) | |
| DEFENDANT. | ) | |

Before the Court are several fully-briefed pre-trial motions in limine relating to various evidentiary matters, which the Court will address in turn.

To the extent the Court rules herein on any of these motions, it does so with the caveat that in limine rulings are always provisional in nature. *Ohler v. United States*, 529 U.S. 753, 758, n.3, 120 S. Ct. 1851, 146 L. Ed. 2d 826 (2000) ("*in limine* rulings are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial.").

1. **Defendant's Motion to Limit the Admission of Parol Evidence (Doc. No. 212)**

Defendant argues in this motion (Doc. No. 212 ["Def. Mot. 212"]) that, in its ruling on summary judgment, "the Court identified a discrete set of ambiguities in the parties' contracts for which it indicated that it will hear parol evidence." (*Id.* at 11264, referencing Doc. No. 174 ["MSJ MOO"].) Defendant "requests that the Court not permit any other parol evidence at trial." (*Id.*)

Defendant relies upon the parol evidence rule, which the Pennsylvania Supreme Court[1] has explained as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (quoting *Gianni v. R. Russel & Co.*, 126 A. 791, 792 (Pa 1924)).

The first step in determining whether the parol evidence rule applies is to determine if the parties created "a writing that represents the 'entire contract between [them].'" *Id.* (quoting *Gianni*, 126 A. at 792). If the contract "'appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties . . . .'" *Id.* (alterations in original). "[A]lthough the presence of an integration clause within an agreement makes the parol evidence rule particularly applicable, its absence does not automatically subject the written agreement to parol evidence." *Kehr Packages, Inc. v. Fidelity Bank, N.A.*, 710 A.2d 1169, 1173 (Pa. Super. Ct. 1998) (citing *Int'l Milling Co. v. Hachmeister Inc.*, 110 A.2d 186, 191 (Pa. 1955) (holding that "the presence of an integration clause cannot invest a writing with any greater sanctity than the writing merits . . . .")).

"Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving

---

[1] There is no dispute that Pennsylvania substantive law applies here.

the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Yocca*, 854 A.2d at 436-37. That said, "[t]he Court in interpreting . . . a contract can always consider the surrounding circumstances in order to ascertain the intention and the meaning of the parties." *In re Herr's Estate*, 161 A.2d 32, 34 (Pa. 1960). "[W]here an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *Id.* Further, "custom in the industry or usage in the trade is always relevant and admissible in construing commercial contracts and does not depend on any obvious ambiguity in the words of the contract. If words have a special meaning or usage in a particular industry, then members of that industry are presumed to use the words in that special way . . . regardless of whether there appears to be any ambiguity in the words." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001).

Although defendant recognizes that, "'where a term in the parties' contract is ambiguous, parol evidence is admissible to explain or clarify or resolve the ambiguity,'" (Def. Mot. 212 at 11270, quoting *Yocca*, 854 A.2d at 437), defendant asserts that this is an exception that must be limited to the narrow areas identified in the Court's MSJ MOO (i.e., to the meanings of "concrete removal," "backfilling," and the "no cost" obligation).

In opposition, Allied argues that the "vague and premature" motion "seeks generally to bar admission of all parol evidence . . . without specifying what that evidence may actually be and without regard to whether the circumstances in this case may warrant the admission of such evidence." (Doc. No. 218 ["Mot. 212 Opp'n"] at 11334.) Allied relies on *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) for the proposition that "[o]rders in limine which exclude broad categories of evidence should rarely be employed."

Rather, "[a] better practice is to deal with questions of admissibility of evidence as they arise." *Id.* Allied also argues that "the circumstances surrounding the execution of a contract may always be shown and are relevant to a determination of what the parties intended by the words they chose." (Motion 212 Opp'n at 11338, quoting 11 Williston on Contracts § 32:7 (4th ed.).)

Although the Court may have ruled in its MSJ MOO that certain terms relating to certain specific claims and issues raised in the motion for partial summary judgment warranted the admission of parol evidence, that does not mean the Court was thereby limiting itself in advance of the trial with respect to evidentiary rulings. Decisions regarding the appropriateness of admission of parol evidence during trial will be made as the need arises, and will not be limited to the issues that the parties may have raised in their motions for *partial* summary judgment. During trial, both parties will be free to make appropriate objections and arguments in the context of the proceedings as they develop.

Defendant's motion (Doc. No. 212) is denied without prejudice to raising parol evidence challenges at any appropriate time within the context of the trial.

**2.     Defendant's Motion to Exclude Evidence Related to Prior Litigation (Doc. No. 213)**

By way of this motion (Doc. No. 213 ["Def. Mot. 213"], defendant seeks to exclude any evidence of prior litigation between these two parties both because such evidence is not relevant within the meaning of Fed. R. Evid. 401 and 402,[2] and because, even if it were tangentially relevant, it would be more prejudicial to defendant than probative of the issues, and

---

[2] Fed. R. Evid. 402 provides that "[r]elevant evidence is [generally] admissible[.]" Under Fed. R. Evid. 401:
> Evidence is relevant if:
>> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>> (b) the fact is of consequence in determining the action.

runs the risk of misleading and/or confusing the jury. (*Id.* at 11278.)³ To the extent the agreements themselves (which are agreements in settlement of prior litigation) mention any such prior litigation, defendant proposes redacting the agreements. (*Id.* at 11279, n. 4.) In defendant's view, the only exception to mentioning any prior litigation between the parties should be to the extent defendant needs to mention it in support of any affirmative defense, such as the bar of *res judicata*. (*Id.* at 11278, n. 3.) Defendant cites *Ross v. Am. Red Cross*, 567 F. App'x 296 (6th Cir. 2014) (affirming the trial court's exclusion of evidence of prior settlements and litigation brought by others against the Red Cross), *Newark Group, Inc. v. Sauter*, No. C2:01 CV 1247, 2004 WL 5623944 (S.D. Ohio Mar. 26, 2004) (excluding evidence of prior litigation between the same parties at the liability phase of trial because it was irrelevant to the facts), and *Kinan v. City of Brockton*, 876 F.2d 1029 (1st Cir. 1989) (affirming the trial court's exclusion, in a § 1983 civil rights action, of evidence of two prior settled civil rights actions brought against the city by different parties).

Plaintiff opposes the motion (Doc. No. 219 ["Mot. 213 Opp'n"]), arguing that, unlike the cases relied upon by defendant, evidence of prior litigation should be admissible here precisely *because* this case involves claims of breaches of agreements that were entered into in settlement of prior litigation between these two parties. Allied represents that it wishes to introduce "background evidence regarding the parties' history prior to the AIPs to establish the context, circumstances, and objects of those agreements . . . ." (*Id.* at 11348.) It asserts that this kind of evidence is relevant within the meaning of the Rules of Evidence and permissible when a court is construing a contract. *See Huegel v. Mifflin Constr. Co., Inc.*, 796 A.2d 350, 354 (Pa.

---

³ Under Fed. R. Evid. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

5

2002) ("[I]n construing a contract the intention of the parties governs and that intention must be ascertained from the entire instrument taking into consideration the surrounding circumstances, the situation of the parties when the contract was made and the objects they apparently had in view and the nature of the subject matter.") (quoting *In re Mather's Estate*, 189 A.2d 586, 589 (Pa. 1963)); *Mellon Bank, NA v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1010-11 (3d Cir. 1980) (same).

While it is true, as plaintiff argues, that the cases relied upon by defendant are distinguishable, the Court is unable to rule on this motion without knowing the specific testimony Allied seeks to introduce. Although some context testimony may be appropriate, given that this is a breach of contract case (albeit arising from a settlement), it is the parties' written memorialization of that settlement that should control. As such, at the final pretrial hearing the Court shall further consider the parties' arguments so that proper parameters regarding any such testimony may be established.

3.  **Plaintiff's Motion to Exclude Certain Evidence and Arguments (Doc. No. 214)**

Plaintiff argues in this motion (Doc. No. 214 ["Pl. Mot. 214"]) that it "anticipates that U.S. Steel may attempt to present evidence or arguments that are either foreclosed by this Court's Memorandum Opinion and Order dated September 30, 2014 (Doc. 174), or barred from admission by the Federal Rules of Evidence." (*Id.* at 11292.) Specifically, Allied argues that certain categories of evidence should be barred under Fed. R. Evid. 403 because the evidence would both implicate the MSJ MOO and lack relevance within the meaning of Fed. R. Evid. 402. These categories include evidence involving: "(1) the applicability of the 1993 Blanket Agreement or 2003 Blanket Agreement to work at Fairless; (2) the applicability of the 1992

Construction Contract and Final Conformed Specification to work at Fairless, including which provisions thereof are 'relevant'; (3) whether 'concrete removal' is compensable under the 2003 AIP; (4) whether 'concrete removal' means hauling concrete off of the Fairless site; (5) whether the Sheet and Tin work at Fairless was a 'phase' of work under the 2003 AIP and 1992 Specification; (6) whether Allied owns scrap at Fairless only after it is 'generated' on site; and (7) whether Allied is responsible, at its own cost, to remove and haul railroad ties under Section 6.1.6 of the 1992 Specification." (*Id.* at 11292-293.)[4] Further, Allied seeks to exclude any "evidence or testimony from Brandenburg Industrial Service Company ["Brandenburg"] as to the alleged industry meaning of 'concrete removal' or 'top of floor slab'." (*Id.* at 11293.) Plaintiff proposes a blanket order that bars U.S. Steel "from attempting to present any evidence or arguments relating to the subject matters identified in Allied's Motion in Limine and Brief in Support." (*See* Doc. No. 214-1.)

U.S. Steel filed its opposition (Doc. No. 216 ["Mot. 214 Opp'n"]), arguing that neither party should be permitted to submit evidence that either contradicts this Court's prior rulings or fails to comport with the Rules of Evidence. Moreover, U.S. Steel argues that Allied's interpretation of what might fall into these seven categories greatly "stretches" both this Court's rulings and the rules of evidence.

The Court is inclined to agree with U.S. Steel's position that Allied is taking an expansive view of the Court's opinion in an attempt to inappropriately limit U.S. Steel's defense.

In the MOO MSJ, the Court did not broadly rule, as Allied argues, that the 1992 Construction Contract and its accompanying Final Conformed Specification "governed Allied's

---

[4] Although Allied has listed these seven areas of concern, it does not clearly link each of the seven to the four sections of its memorandum in support of its motion, illustrating the elusive nature of Allied's arguments.

7

work at Fairless[,]" (Pl. Mot. 214 at 11299), thus barring any reference to any later agreement (e.g., the 1993 Blanket Agreement or the 2003 Blanket Agreement). Rather, as properly pointed out by defendant, the Court ruled that "the more general articles [of the 1992 Specification], *unless specifically overriden by or in conflict with the later contracts*, still apply because they are 'relevant.'" (MOO MSJ at 8635, emphasis added.) The Court did determine, contrary to U.S. Steel's position, that Sheet & Tin was a "phase" of work under the relevant contracts (*id.* at 8635), and that § 10.1 and § 25.1 of the 1993 Blanket Agreement were inapplicable to excuse any delay or disruption by U.S. Steel (*id.* at 8630). But the Court did not definitively rule out the possibility that the "general articles" it identified as "relevant" could not have been overriden by or in conflict with later agreements. That determination remains for trial.

Allied's position with respect to the meaning of "generated" is similarly too broad and not consistent with the Court's ruling that later contracts could override or be in conflict with earlier relevant contract provisions. As specifically noted by the Court, questions about whether scrap had been "generated" from "released" facilities (and therefore owned by Allied) are matters of fact for the jury. (*Id*. at 8636.)

Allied also seeks an order prohibiting U.S. Steel from attempting to offer evidence or arguments that concrete removal below top of floor slab is not compensable. It asserts that this Court already ruled on summary judgment that concrete removal below top of floor slab is for U.S. Steel's account. (Pl. Mot. 214 at 11302.) The Court did rule that the various contracts provide that Allied is to be compensated for concrete removal below top of floor slab. (*See* MOO MSJ at 8623 ("Concrete removal would be 'for U.S. Steel's account' only if it was below top of floor slab.") *But* what Allied fails to acknowledge is that it is U.S. Steel's position that the basement work Allied claims is compensable does not constitute "concrete removal

8

below top of floor slab," and, therefore, is *not* compensable. In other words, U.S. Steel argues that what Allied is characterizing as compensable "concrete removal below top of floor slab" is no more than "backfilling," which the Court has ruled is at "no cost" to U.S. Steel. Basically U.S. Steel is taking the position that, because the demolished concrete is not "removed" (i.e., hauled away), but is simply dropped to the basements below the floor, there is no "concrete removal" but only "backfilling." As the relevant contracts do not define these terms, the Court has ruled that a fact-finder must resolve what the parties themselves intended when entering into the contracts.

Related to these questions regarding the meaning of "concrete removal" and "top of floor slab," Allied argues that U.S. Steel should be barred from having Brandenburg (the replacement contractor who did basement work at Fairless) testify as to the meaning of these terms. In Allied's view, only the parties' understanding is relevant. But, if these are industry terms (and the Court suspects they may be), another person in the industry can testify as to their meanings and the jury will be free to credit that testimony, or not. Nor must the meaning of industry terms be admitted only in the form of expert testimony, as Allied argues. *See, e.g., Dakota, Minnesota & E. R.R. Corp. v. Wisconsin & S. R.R. Corp.*, 657 F.3d 615, 619 (7th Cir. 2011) (evidence of trade usage need not take the form of expert evidence; any management-level employee of a business engaged in the trade would fit the definition of a lay witness entitled to give opinion evidence under Fed. R. Evid. 701); *Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, Civil Action No. H-11-3569, 2015 WL 409803, at * 6 (S.D. Tex. Jan. 29, 2015) ("an officer or employee of a corporation may testify to industry practices . . . without qualifying as an expert") (internal quotes, alterations, and citations omitted). Long-time employees of an industry may certainly testify as to their personal understanding of industry terms.

Finally, Allied seeks an order barring U.S. Steel from relying on Article 6.1.6 of the 1992 Specification as it relates to railroad tie removal. Allied asserts that this Court "rejected the contract interpretation proffered by U.S. Steel." (Pl. Mot. 214 at 11303.) This overstates the Court's ruling on summary judgment. The only thing the Court "rejected" was defendant's argument that the hazardous materials provisions of the 2003 AIP and the 2004 DSA did not override Article 6.1.6. The Court specifically held that "there remains a material factual dispute as to whether the relevant railroad ties contain hazardous material that would shift the cost from Allied (under § 6.1.6 of the 1992 Specification[5]) to U.S. Steel (under § III(c) of the 2003 AIP and § II(A)(iii) of the 2004 DSA[6])." (MOO MSJ at 8638, footnotes added.)

Plaintiff's motion (Doc. No. 214) is denied without prejudice to appropriate objections being raised by either party during the course of trial.

**4.   Defendant's Motion to Bifurcate Trial on Liability and Damages (Doc. No. 211)**

Under Fed. R. Civ. P. 42(b),[7] defendant moves (Doc. No. 211 ["Def. Mot. 211"]) to bifurcate the trial on liability and damages, arguing that "[t]he thorny predicate liability issues facing the jury will present enough of a challenge without simultaneously requiring jurors to hear, consider, and resolve complicated damages evidence." (*Id.* at 11251.) Defendant asserts that "allowing the jury to address liability before considering damages may facilitate a more

---

[5] Section 6.1.6 provides: "In areas where railroad track is removed [Allied] shall remove, haul and legally dispose of associated railroad ties at its expense." (Doc. No. 59-2 at 934.)

[6] Section III(c) of the 2003 AIP and § II(A)(iii) of the 2004 DSA, both provide that "hazmat removal" is "for U.S. Steel's account." (Doc. No. 59-4 at 967; Doc. No. 59-7 at 1014.)

[7] Although this is a diversity case where the law of Pennsylvania controls on substantive issues, procedural issues are to be guided by federal law. *Erie RR Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *see also Butler v. Yamaha Motor Co., Ltd.*, No. CIV. A. 89-1380, 1993 WL 95513, at * 4 (E.D. Pa. Apr. 1, 1993) ("Whether a particular claim or issue should be bifurcated in a diversity case is a matter of federal procedure and not state law.").

expeditious and economical trial by eliminating or narrowing claims, obviating the need for evidence on damages or narrowing the scope of damages issues to be presented." (*Id.*)[8]

Plaintiff opposes the motion (Doc. No. 217 ["Mot. 211 Opp'n"]), arguing that there are no "compelling circumstances that would warrant denying Allied the traditional right to present its entire case at one time and in an overall context." (*Id.* at 11320.)

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." "Only one of these criteria need be met to justify bifurcation[]" and the language of the rule "places the decision to bifurcate within the discretion of the district court." *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996) (citations omitted). Even so, "a decision ordering bifurcation should be grounded in the facts and circumstances of each case." *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, No. 1:03 CV 1322, 2004 WL 5690159, at *4 (N.D. Ohio Feb. 19, 2004) (citations omitted). To assess a motion to bifurcate, "[t]he best approach . . . appears to be to determine whether each of the individual factors in Rule 42(b) weighs in favor or against separate trials." *Ohio ex rel. Betty Montgomery v. Louis Trauth Dairy*, 163 F.R.D. 500, 504 (S.D. Ohio 1995).

Here, bifurcating would not serve judicial economy, nor would it eliminate the predictable complexity of the case. Although separate issues of liability might be narrowed by the jury's findings, obviating the need for at least some of the damages testimony, the liability and damages evidence is not wholly unrelated. Further, some of the same witnesses will

---

[8] The Court discussed the possibility of bifurcation at the close of the Daubert hearing. Following that discussion, although the Court tentatively believed the issue was resolved in favor of bifurcation (*see* Daubert Tr. at 11232), the Court specifically asked counsel "to confer to make sure you're still on the same page[,]" and to "discuss the issue of bifurcation." (*Id.*) In its motion, defendant represents that it reached out to Allied's counsel to have this discussion, but got no response. (Def. Mot. 211 at 11252, n.2.)

undoubtedly be called to testify during both phases, implicating the convenience factor. Even though "considerations of economy of time, money and convenience must always yield[]" to a concern for "ensuring a fair and impartial trial to all litigants," *Bondex, Int'l*, 2004 WL 5690159, at *4 (citing *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 1988)), these considerations are not wholly inconsequential, and the moving party has the burden of proving it will be prejudiced by lack of bifurcation. *Louis Trauth Dairy*, 163 F.R.D. at 504 (citing *Corrigan v. Methodist Hosp.*, 160 F.R.D. 55 (E.D. Pa. 1995)).

Defendant argues likely prejudice because Allied's quantification of its alleged damages, although distinct from liability, "is nonetheless premised on numerous factual assumptions[,] [and] [p]remature testimony on Allied's alleged damages would implicitly put a seal of approval on factual issues that are still under consideration by the jury." (Def. Mot. 217 at 11255.) But, of course, this is the case in every non-bifurcated trial, where the jury hears all the testimony at one time and is counted upon, with proper instruction, to sort it out. Bifurcation cannot eliminate the complexity, and the onus will be on counsel to thoughtfully and effectively present their cases in an organized and comprehensible manner so as to better assist the jury in its ultimate task.

Defendant's motion to bifurcate (Doc. No. 211) is denied.

**IT IS SO ORDERED**.

Dated: April 22, 2015

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**