UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIED ERECTING AND DISMANTLING CO., INC., | ) ) ) | CASE NO. 4:12CV1390 |
| PLAINTIFF, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) | |
| UNITED STATES STEEL CORPORATION, | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANT. | ) | |

Before the Court is defendant's motion under Fed. R. Civ. P. 50(a)(1) for judgment as a matter of law as to certain counts of plaintiff's complaint. Resolution of the motion rests upon two factors: (1) the language of the parties' agreements; and (2) plaintiff's principal's testimony and other evidence elicited in plaintiff's case-in-chief. Since interpretation of contracts is a question of law for the Court, *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94, 96 (Pa. Super. 2015), this opinion examines the contracts in light of the testimony, viewed most favorably to plaintiff, and concludes that defendant is entitled to judgment on plaintiff's Counts III, IV and V, with one narrow exception.

### I. PROCEDURAL BACKGROUND

At the close of plaintiff Allied Erecting and Dismantling Co., Inc.'s ("Allied") case on May 29, 2015, defendant United States Steel Corporation ("U.S. Steel") moved for judgment as a matter of law under Fed. R. Civ. P. 50(a)(1) as to Counts II, III, IV and V of plaintiff's second amended complaint (Doc. No. 43.) U.S. Steel raised a number of separate

arguments. (*See* Trial Tr. [Doc. No. 281] at 20818[1] *et seq.*) Plaintiff made its counter-arguments on the record. (*Id.* at 20846 *et seq.*)[2]

On June 1, 2015, the Court issued a ruling from the bench, deferring a ruling as to Count II,[3] and granting U.S. Steel's motion for judgment as a matter of law as to plaintiff's Counts III, IV and V, and indicated that a written ruling would be forthcoming. At the opening of proceedings on June 2, 2015, the Court clarified the ruling as to Count V.

## II. DISCUSSION

### A. Factual Background

Plaintiff Allied is an industrial dismantling contractor, and defendant U.S. Steel owns and operates numerous steelmaking facilities. Allied has performed work as an industrial dismantling contractor for U.S. Steel at numerous locations throughout the United States for over thirty years. The parties' long history of doing business together has not always been harmonious, and this is not the first lawsuit between them.

The present dispute relates to Allied's work at U.S. Steel's Fairless Works, a steelmaking facility in Fairless Hills, Pennsylvania. Fairless Works is a large facility that contains many different sections, such as the "Hot End," "Sheet and Tin," and the "Pipe Mill." All of Allied's work at Fairless Works is governed by a patchwork of contracts and agreements, some of which go back to 1992 and arise from settlements of prior disputes. Specifically, the 2003 Agreement in Principle ("2003 AIP" [Jt. Ex. 4]) and the 2004 Dismantling Services Agreement ("2004 DSA" [Jt. Ex. 7]), as well as the "relevant terms and conditions" from the

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

[2] Subsequently, each side supplied the Court with a memorandum in support of its respective position(s). (*See* Doc. Nos. 283, 285.)

[3] Prior to the Court issuing a ruling as to Count II, the defendant withdrew its motion as to that count.

1992 Construction Contract (the "1992 Contract" [Jt. Ex. 1]) and the 1992 Final Conformed Specification (the "1992 Specification" [Jt. Ex. 2]) govern the parties' relationship in this present dispute.[4]

There is no disagreement between the parties regarding the contracts that apply to Allied's Fairless work or that Pennsylvania contract law controls that dispute. Applying the "relevant" terms of the controlling contracts and Pennsylvania contract law to the trial testimony elicited during plaintiff's case-in-chief, the Court concludes as a matter of law that plaintiff's claims in Counts III, IV, and part of V, were brought after the four-year statute of limitations under Pennsylvania law for bringing a contract claim had expired. Accordingly, for the reasons discussed below, defendant's Rule 50(a) motion is granted with respect to those claims.

**B.  Fed. R. Civ. P. 50**

Rule 50 provides, in relevant part, as follows:

**(a) Judgment as a Matter of Law.**

> **(1)** *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > **(A)** resolve the issue against the party; and
> >
> > **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> **(2)** *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

---

[4] For ease of reference, provisions pertinent to this decision are reproduced in the appendix to this opinion.

A Rule 50(a) motion may be granted "'only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party.'" *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015) (quoting *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (citation omitted)).

**C.     Analysis**

The contracts between the parties provide that, once work is released and begun, it must be completed within three years, absent the written granting of an extension.[5] Allied claims that it was unable to timely complete its work within the three-year period for various reasons: (1) delay and disruption by U.S. Steel (Count III); (2) removal by U.S. Steel of structures and facilities from the scope of work previously authorized and released by U.S. Steel and begun by Allied (Count IV); and (3) U.S. Steel's refusal to allow Allied to remove ferrous and non-ferrous scrap that Allied allegedly owned (Count V).

U.S. Steel argues that it is entitled to judgment as a matter of law with respect to Counts III, IV and V. It raises several arguments in support of its motion for judgment, including: (1) that Counts III, IV and V are all barred by the statute of limitations; (2) that Allied has failed to present any evidence that it generated scrap from any of the buildings, basements, track and non-ferrous materials that it claims to own (relating to Counts IV and V); and (3) that Allied has failed to meet the notice requirement that is a condition precedent to the

---

[5] During briefing on defendant's initial motion to dismiss and later on motions for summary judgment, Allied had argued that the three-year completion deadline in § 3 of the 1992 Specification governed its work at Fairless. U.S. Steel had taken the position that there was no time limit because the 2003 AIP § III used the expression "regardless of time" when referencing the "further dismantling work" at Fairless. This Court adopted Allied's view, holding that the "regardless of time" provision merely meant there was no deadline for U.S. Steel's release and authorization of the work but, whenever that occurred, Allied would thereafter have three years to complete the project. This became the law of the case on that issue.  (*See* MSJ Opinion [Doc. No. 174] at 8621, 8628-29.)

delay/disruption claim in Count III. U.S. Steel also renewed an earlier objection to Allied's expert's use of the Measured Mile methodology for computation of damages. (*See* Trial Tr. [Doc. No. 281] at 20845-46.) Although all of the arguments have merit, including defendant's challenge to plaintiff's proposed Measured Mile methodology, the discussion herein focuses on the statute of limitations argument, since that resolves all three counts.

Resolution of defendant's motion regarding the timeliness of Counts III, IV and V turns on when these claims accrued. Under Pennsylvania law, which governs this case, an action upon a contract "must be commenced within four years." 42 Pa. C.S.A. § 5525. Further, "the time within which a matter must be commenced … shall be computed … from the time the cause of action accrued," 42 Pa. C.S.A. § 5502(a), that is, when "the plaintiff could have first maintained the action to a successful conclusion." *Kapil v. Assoc. of Pa. State Coll. & Univ. Faculties*, 470 A.2d 482, 485 (Pa. 1983). The Pennsylvania Supreme Court has determined that "the applicable clock starts running 'as soon as the right to institute and maintain a suit arises.'" *Univ. of Pittsburgh v. Townsend*, 542 F.3d 513, 523 (6th Cir. 2008) (quoting *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005)). A party need only know *that* it has been damaged, not "the precise amount or extent of the damage[.]" *Schnelling v. Prudential Secs., Inc.*, No. A03-6021, 2004 WL 1790175, at *2 (E.D. Pa. Aug. 9, 2004) (collecting cases); *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042 (Pa. Super. Ct. 1999) (Pennsylvania courts "ha[ve] repeatedly held that, for purposes of the statute of limitations, a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined."); *Pashak v. Barish*, 450 A.2d 67, 69 (Pa. Super. Ct. 1982) (the issue of damages can forestall accrual of a claim only where "the uncertainty concerns the fact of damages rather than the amount") (internal quotation marks and citation omitted)).

According to U.S. Steel, crediting the testimony of Allied's principal, John Ramun,[6] that the contract work was authorized and released in November 2003, and work began in January 2004, Allied would have known by as early as November 2006 or as late as January 2007, that, because its dismantling work was not completed within the requisite three-year period for completion of the work in the "first phase" (i.e., the Pipe Mill and Sheet and Tin), it would not be able to realize the scrap associated with the buildings, the basements, the railroad track and the non-ferrous scrap it claimed to own at Sheet and Tin. But Allied, in its case-in-chief, embarked upon a theory of the case that, due to delays and disruptions caused by U.S. Steel, work could not begin "in earnest" at Sheet and Tin until 2006, resulting in a project completion date, under the contract, of 2009. Plaintiff's attempt to tailor its arguments to, on the one hand, establish ownership of the facilities in 2003,[7] and, on the other hand, defer the accrual date for its contract claims to 2009, is not supported by either the language of the contracts or the reality of what Allied claims took place.

Under the 2003 AIP, U.S. Steel paid Allied $7 million up front in return for "no cost" dismantling at Fairless Works. (2003 AIP, § II(A); *see also* § III.) Although the work was at "no cost" to U.S. Steel, it held significant value for Allied because Allied was considered the owner of all ferrous and non-ferrous scrap that it generated through its work. (*Id.*, § II(B)(7).) Under the 2003 AIP, U.S. Steel also agreed to give Allied enough future dismantling work (and other work) to generate $17.5 million in revenue over the 36-months following the execution of

---

[6] The Court relies herein primarily on the testimony of Mr. Ramun since he testified that, due to its confidentiality, he never provided his field people with a copy of the 2003 AIP. (Trial Tr. [Doc. No. 274] at 18723 lines 17-21.)

[7] One of the items that Allied would "own" during the dismantling project was scrap that it had generated. U.S. Steel argues that Allied has not shown that it "generated" any scrap within the meaning of the 2004 DSA, which John Ramun conceded applied to the work at Fairless. (Trial Tr. [Doc. No. 275] at 18973-974.) Although John Ramun was equivocal during his trial testimony as to the meaning of "generating" scrap (*see, e.g.*, *Id.* at 18975), he testified at his deposition that "generat[ing] scrap" occurred "when it's converted into scrap by the process of taking the building down and processing it." (*Id.* at 18976.)

the 2003 AIP. (*Id.*, § II(B)(1) & (6).) There is no dispute that U.S. Steel paid Allied the $7 million and gave Allied enough dismantling work to generate $17.5 million in revenues within the requisite time period.

The dispute here centers on dismantling work at Fairless Works, governed by § III of the 2003 AIP, which was to be performed under all the "relevant" terms contained in the 1992 Specification, and in accordance with the terms of the 1992 Contract that had governed Allied's work for U.S. Steel at the "Hot End" of Fairless Works, a project that had been done in phases.

Under § 3 of the 1992 Specification, work on each phase of the project was to be "completed within three years after [U.S. Steel] has authorized [Allied] to begin work on that phase." Further, § 10.2 of the 1992 Specification provided that U.S. Steel's "rights to remove any complete facility from the scope [of Allied's work] shall terminate upon the commencement of work at that facility by [Allied]."

John Ramun testified that, after the execution of the 2003 AIP, "the first phase of work" was "[t]he pipe mill and sheet and tin except for the galvanizing line and water treatment plant that was still operating." (Trial Tr. [Doc. No. 274] at 18767, 18770.) He later repeated that all of the Sheet and Tin facility, including "all buildings, rail, and nonferrous … [and] all of the items from the hot end that were not done when that job was done[]" (except the galvanizing line and the water treatment facility, which Allied knew U.S. Steel always intended to keep operational), was authorized and released for dismantling on November 17, 2003. (*Id.* at 18887-889; 18775-776.)[8] Ramun also testified that he understood there to be a three-year time limit for Allied to complete its work, once a facility was released and authorized for dismantling. (*Id.* at

---

[8] Counsel for plaintiff has also repeatedly made the same representation to the Court. (*See* Daubert Tr. [Doc. No. 208] at 11210; Final Pretrial Conference [Doc. No. 268] at 17983.) Further, U.S. Steel cites this Court's prior ruling on summary judgment that, under the relevant contracts, once a facility was authorized and released, Allied was required to complete the dismantling within three years. (MSJ Order [Doc. No. 174] at 8629.)

18890-891.) In fact, it is the three-year completion period that establishes the basis for the plaintiff's delay and disruption claims.

Ramun testified that he did not expect any formal written release because he was advised by Mr. Surma, at U.S. Steel, that "as long as it's released at the corporate level, you'll get it." (Trial Tr. [Doc. No. 274] at 18763.) The release would be via "an internal corporate document" (produced at trial), and "there was never any intent for Allied to ever get this corporate release." (*Id.*) John Ramun testified that, pursuant to § 10.2 of the 1992 Specification, Allied commenced its dismantling work "in every part of sheet and tin" in January 2004. (*Id.* at 18868; *see also* 18857, 18891.) Once that occurred, under § 10.2 U.S. Steel lost its right to remove any complete facility from the scope of Allied's work. (*Id.* at 18868.)

John Ramun's testimony is clear: the release and authorization of Fairless Pipe Mill and Sheet and Tin occurred at the latest by January 2004, when John Ramun admitted that Allied commenced work. This is the latest possible date when the three-year contractual period for completion of the work could have commenced for purposes of Counts III, IV and V.

Under the 2003 AIP § III, U.S. Steel was responsible for, *inter alia*, isolation of all the utilities at Sheet and Tin and, according to the initial plan in January 2004, U.S. Steel would be provided upwards of a year to complete that work. Allied had no problem with this plan and, in fact, commenced its work on the Pipe Mill demolition. (Trial Tr. [Doc. No. 274] at 18779, 18892.) To be clear, U.S. Steel's responsibilities did not alter the contractual provision relating to the three-year completion deadline. Rather, if Allied perceived any delay in the performance or completion of its work due to events outside its control, the parties' agreement provided a separate remedy: Allied could request that U.S. Steel grant an extension, in writing. (1992 Contract, Art. 3.1.) John Ramun testified that this provision was relevant to Allied's work

8

at Sheet and Tin, and conceded that Allied never requested a written extension order from U.S. Steel. (Trial Tr. [Doc. No. 274] at 18939, 18940-941.)[9]

Despite John Ramun's unequivocal testimony that the Pipe Mill and Sheet and Tin had been released and authorized by U.S. Steel and further (and importantly) that Allied had actually performed demolition in every building at Sheet and Tin beginning in January 2004,[10] Allied argues that, since its work at Sheet and Tin did not begin "in earnest" until 2006,[11] the claims did not accrue until 2009, giving it until 2013 to file suit. But, the contractual trigger for the three-year completion period is not when work began "in earnest," it is when Allied was authorized to begin work. Allied testified it began work in all areas of Sheet and Tin in January 2004. Allied's attempt to rewrite this contract term is unavailing.

Allied's argument is inconsistent with the testimony of Mr. Ramun that the work at Fairless was authorized and released in November 2003; that the "first phase" of Fairless included both the Pipe Mill and Sheet and Tin; that Allied began work at the Pipe Mill in January 2004 and completed that work within one and a half to two years; and that work also began *in every building* at Sheet and Tin as of January 2004. If all of that is so, Allied cannot argue the mutually exclusive position that the three-year contractual period did not begin until 2006. The January 2004 commencement of work at the Pipe Mill triggered the running of the three-year project completion deadline for the "first phase." For purposes of this motion, the Court must credit John Ramun's testimony that the facility was both authorized/released and that Allied

---

[9] Ramun also testified that, although Allied did certain "extra work" at Fairless, none of that work ever caused any delay. (Trial Tr. [Doc. No. 274] at 19061, 19062.)

[10] Allied must take this position in order to assert its "ownership" of the relevant materials and to prevent U.S. Steel from removing a complete facility from the scope of work.

[11] The testimony that work began "in earnest" at Sheet and Tin in 2006, following completion of the Pipe Mill, was elicited from both John Ramun and Gordon Lindquist during the direct examination of each. (*See* Trial Tr. [Doc. Nos. 274 & 275] at 18727, 19201.)

performed work in January 2004, to be completed by January 2007 (resulting in a 2011 filing deadline), and must reject Allied's argument that Counts III, IV and V did not accrue until 2009.[12]

To summarize, under the terms of the contracts and John Ramun's own testimony, absent receipt of a written extension from U.S. Steel, Allied had three years from January 2004 (at the latest) to complete its work at Fairless. Even if the Court takes as true all of Allied's assertions that U.S. Steel delayed/disrupted its work, and/or improperly removed buildings from the scope of work, and/or refused to allow Allied to remove ferrous and nonferrous scrap, these facts would have been known to Allied by January 2007, when the contract required the work to be completed. Yet Allied, by John Ramun's own testimony, did not avail itself of the contractual provision that would have permitted it to gain an extension of its three-year deadline. There was no request for an extension, and there was no written extension. Therefore, all of these claims accrued, at the latest, in January 2007, and the suit on these claims should have been filed within four years. That did not occur.

Thus, plaintiff has failed to establish "a legally sufficient evidentiary basis" to refute U.S. Steel's asserted defense that these contract claims are time-barred.

### III. CONCLUSION

The Court concludes, pursuant to Fed. R. Civ. P. 50, that U.S. Steel is entitled to judgment as a matter of law on Counts III and IV, and as to Count V, except as it relates to the "Fox rail." Additionally, the Court grants the motions for all the other reasons set forth by U.S.

---

[12] There is one exception to this ruling with respect to Count V. This exception relates to certain Hot End rail removal that U.S. Steel allegedly awarded to Fox Construction Company in 2010 through 2011. Allied alleges that, under the "further dismantling" provisions of the 2003 AIP, U.S. Steel was required to offer any rail removal opportunity to Allied, no matter when that opportunity arose. Therefore, this narrow portion of Count V is not time-barred.

10

Steel in its Rule 50 motion at the end of plaintiff's case. Finally, the Court also finds merit in U.S. Steel's objection to the Measured Mile methodology employed by Allied relative to its damage computation for its delay and disruption claim (Count III).

**IT IS SO ORDERED**.

Dated: June 8, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**