

# BRG Expert Report

## In connection with:
## Case No. 4:12CV1390
## United States District Court
## Northern District of Ohio
## Eastern Division

## Regarding:
## Allied's Proposed Alternative Security, and
## Other Financial Matters

## Allied Erecting & Dismantling Co., Inc.
*Plaintiff*

## vs.

## United States Steel Corporation
*Defendant*

## November 20, 2015

Prepared by:

**James A. Falconi, CPA, CFF, CFE**
**Director**
**Berkeley Research Group**
Four PPG Place, 4ᵗʰ Floor
Pittsburgh, PA 15222

Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

# TABLE OF CONTENTS

I.  **Introduction & Background**………………………………………………………3

    A.  Qualifications & Compensation……………………………………………………3

    B.  Background……………………………………………………………………………3

    C.  Summary of Opinions………………………………………………………………5

II.  **Analysis**…………………………………………………………………………...6

    A.  Allied's Proposed Alternative Security Appears to be Insufficient to Secure U. S.
       Steel's Judgment…………………………………………………………………6

    B.  Allied's Post-Judgment Shifting of Equipment Assets Creates Insecurity
       Concerning Assets Available to Satisfy U. S. Steel's Judgment…….……………10

    C.  Allied's Loss of Bank Financing and Continuing Poor Financial Performance Call
       Into Question its Ability to Continue Operating as a Going Concern……………13

III.  **Conclusion**………………………………………………………………………...19

IV.  **Documents Reviewed & Potential Exhibits**………………………………………21

V.  **Additional Testimony**………………………………………………………...22



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

## I.   INTRODUCTION & BACKGROUND

United States Steel Corporation has retained the services of Berkeley Research Group ("BRG") of Four PPG Place, Pittsburgh, Pennsylvania 15222.  BRG has provided independent professional services in the case of Allied Erecting & Dismantling Co., Inc. ("Allied" or "AED") vs. United States Steel Corporation ("U. S. Steel") (N.D. Ohio Case No. 4:12CV1390) and has been asked to continue its independent professional assistance in connection with the post-judgment phase of this matter.  Specifically, U. S. Steel and its Counsel requested BRG to analyze Allied's offers of alternative security to U. S. Steel and to evaluate Allied's continuing financial position as reported in financial statements and other financial documents recently produced by Allied.

### A.      Qualifications and Compensation

I, James A. Falconi, am a Director with BRG and am responsible for the opinions expressed in this report.  My qualifications and BRG's compensation for this work are consistent with the relevant statements expressed in previous reports that BRG issued in connection with this matter.  Since we published our BRG Report date February 17, 2014, I testified in two additional matters that I have identified in section V. of this report.

### B.      Background

In lieu of a supersedeas bond to secure the Court's judgment in favor of U. S. Steel during Allied's appeal,  Allied originally offered U. S. Steel alternative security consisting of  "some combination of Allied's dismantling equipment ($16,596,085), attachment inventory ($6,831,433) and/or structural steel ($7,100,000) in order to satisfy the judgment in the event Allied's appeal is unsuccessful."[1]  Allied subsequently revised this offer and is currently offering U. S. Steel

---

[1] Allied's "Memorandum in Support of Expedited Motion for Temporary Stay and Motion for Stay of Execution and Approval of Alternative Security" dated October 9, 2015, page 12.



Case: 4:12-cv-01390-SL Doc #: 351-1 Filed: 11/20/15 4 of 22. PageID #: 22328

Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

alternative security consisting of structural steel salvaged from the Fairless works with a purported value of $7,100,000, real property with a total Mahoning County 2014 tax valuation of $6,972,820 and five categories of equipment with an alleged combined orderly liquidation value of $1,020,000.[2]  U. S. Steel has questioned the adequacy of this alternative security.

As a result of my review of Allied's recently-produced financial statements and other financial documents in conjunction with my evaluation of the proposed alternative security, I also noted that Allied transferred over $8 million (before depreciation) in equipment assets from the books of Allied Erecting and Dismantling, (the named plaintiff in this matter) to the books of Allied Gator and "replaced" such assets on AED's books with a "receivable" from Allied Gator. Again, this action raises concerns, on the part of U. S. Steel regarding the safety of assets that Allied may ultimately use to satisfy U. S. Steel's damage award.

Finally, in addition to learning about Allied's evolving offer of alternative security and the transfer of assets between Allied affiliates, I have also learned that Allied's bank, J. P. Morgan Chase ("JPM") has called its loans from Allied on account of Allied's breach of its loan and security agreements with JPM.[3]  As a result, Allied was forced to liquidate a substantial portion of its equipment in order to generate cash to repay loan balances that it owed to JPM.  Allied generated over $8.3 million from two equipment auctions[4] most of which was used to repay JPM's loans.  While the repayment of JPM's loans has positive aspects, on the negative side:

- Allied was forced to sell a large portion of its income-producing fleet of equipment, and
- Allied currently has no working capital line of credit from which to finance its continuing operations.

---

[2] Allied's "Reply Memorandum in Support of Expedited Motion for Temporary Stay and Motion for Stay of Execution and Approval of Alternative Security" dated November 2, 2015, page 7.
[3] Addemdum to Loan Advance/Repayment Request, Acknowledgement Of Event Of Default and Release dated 7/2/15.
[4] Ritchie Brothers' Auction Settlement Statements for Equipment Auctions dated 9/2/15 and 11/4/15.



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

Thus, it is within this context that U. S. Steel and its Counsel requested that BRG analyze: (i) Allied's offers of alternative security to U. S. Steel, (ii) Allied's post-judgment shifting of assets off AED's books,  and (iii)  Allied's continuing financial position as reported in financial statements and other financial documents recently produced by Allied.


## C.  Summary of Opinions

Based on my analysis below, in my opinion:

- Allied's proposed alternative security appears to be insufficient to secure U. S. Steel's $9.8 million judgment.  The fabricated steel and the equipment are not as valuable as Allied has asserted and the real estate must be appraised and evaluated for potential environmental contamination.  Even if these assets were as valuable as Allied claims, Allied's lawyers and accountant appear to have filed an unrestricted security interest in all of Allied's assets including the very same assets that Allied is offering to U. S. Steel as alternative security.  The table below compares Allied's claimed value to my estimated value for the alternative security Allied is  currently offering:

### Proposed Alternative Security

| | Claimed Value | Actual  Value |
|---|---|---|
| Structural Steel | $   7,100,000 | $      403,000 |
| Real Property | 6,972,820 | *Unknown\** |
| Equipment | 1,020,000 | 616,000 |
| **Total** | **$ 15,092,820** | **$   1,019,000** |
| | | **(Unknown)** |

*\* No current appraisal or environmental assessment*

- Allied's post-judgment shifting of equipment assets from AED's books to Allied Gator's books creates reasonable grounds for U. S. Steel's insecurity concerning assets available to satisfy U. S. Steel's damage award.

- Allied's recent liquidation of a substantial portion of its revenue-generating equipment assets, its loss of a working capital line of credit and its continuing poor financial performance call into question its ability to continue operating as a going concern. Allied has produced nothing to allay U. S. Steel's concerns in this area, such as a coherent detailed business plan, information concerning its ongoing projects (i.e., backlog), its plan to secure a replacement credit facility, and audited financial statements by an independent public accounting firm expressing a clean opinion as to Allied's ability to operate as a going concern.



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

## II.  ANALYSIS

### A.  Allied's Proposed Alternative Security Appears to be Insufficient to Secure U. S. Steel's Judgment.

As noted earlier, Allied's current offer of alternative security to U. S. Steel consists of three components:[5]

- Structural steel salvaged from the Fairless works with a purported value of $7,100,000,
- Real property with a total Mahoning County 2014 tax valuation of $6,972,820, and
- Five specific categories of equipment with an alleged combined orderly liquidation value of $1,020,000.

It is important to consider that in the period after the verdict but before the judgment, Allied's lawyers and accountant ("Professionals") filed an unrestricted security interest in these same assets that Allied is offering to U. S. Steel as alternative security.[6]  Moreover, my understanding is that the Professionals' security interest was structured in a way that allows their security interest to grow in tandem with the growth of Allied's obligations owed to the Professionals that will likely occur during the appeal process.  I am not offering an opinion regarding the validity or the priority of the Professionals' security interest.  However, certain details of the Professionals' security interest are relevant to my analysis.  The nature of the Professionals' post-verdict maneuvering to establish this security interest,  combined with the fact that Allied has not produced certain relevant supporting appraisals and valuation data, creates significant uncertainty concerning assets available to satisfy U. S. Steel's damage award.

The Professionals' alleged security interest impacts essentially all of Allied's assets, including all of the proposed alternative security.  In addition, I have summarized other specific observations

---

[5] Allied's "Reply Memorandum in Support of Expedited Motion for Temporary Stay and Motion for Stay of Execution and Approval of Alternative Security" dated November 2, 2015, page 7.
[6] Consideration and Security Agreement for All Assets dated August 24, 2015 between Allied and the Professionals.



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

regarding each component of Allied's proposed alternative security in the following paragraphs.

### 1. Structural Steel

Allied has asserted that the fair market value of the fabricated structural steel that Allied salvaged from the Fairless Works to be reassembled at its headquarters in Youngstown is equivalent to the $7.1 million value that I placed on that material in the BRG Expert Report dated February 17, 2014.  In fact, the value to U. S. Steel as a security interest is much lower.

That fabricated steel would not carry that same value to the general marketplace unless the ultimate purchaser is planning to construct buildings of the same exact dimensions with the same exact structural characteristics.  This is because the components are already cut to specific lengths and bolt holes and corresponding plates and braces have already been "fabricated" to fit together.  The fabrication of steel buildings for industrial applications is a very custom-made-to-order industry.   It is only because *Allied* planned to re-erect the same exact buildings at its headquarters in Youngstown that the building components were valuable enough *to Allied*  to justify its spending over $3 million to carefully disassemble and match-mark all of the components.

An analogous situation would be a made-to-measure suit crafted by a tailor for a specific person with odd measurements.  Such a suit could cost as much as $1,000.  However, that same suit put on the rack to be sold to the general public would be far less valuable as it could sit on that rack for some time until a buyer, with the exact same measurements and tastes would buy it.  The same attributes that drive its value to the intended purchaser may well be the very attributes that cause it to be less valuable to the ultimate purchaser.

Accordingly, the value that I placed on the salvaged material in our previous report was a value *specifically to Allied* as their intention was to reassemble the same exact buildings with the same



Case: 4:12-cv-01390-SL Doc #: 351-1 Filed: 11/20/15 8 of 22. PageID #: 22332

Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

exact structural characteristics on their site in Youngstown. This was value that *Allied* derived from the Fairless project that had to be considered in the context of evaluating *Allied's* actual financial performance on that project. Thus the value I used was the value *to Allied in lieu of having to purchase the fabricated steel in order to build its fabrication shop in Youngstown.*

By contrast, the current value to U. S. Steel or most anyone else who did not want to construct those very specific buildings, would be a scrap value of approximately $403,000 (i.e., 2,840 tons at approximately $142 per ton.)[7] Importantly, the worth of that material to U. S. Steel would also have been based on scrap value even back at the time that Allied carefully salvaged it.

### 2. Real property

Allied has also offered U. S. Steel alternative security in the form of real property in Youngstown. Allied has purported that the value of the real estate, based on Mahoning County property tax values, is almost $7 million but has not supported that value with a current real estate appraisal. Moreover, considering that Allied has for decades used a portion of the real estate as a metal scrap yard, there is a potential that whatever value exists may be significantly offset by contingent environmental remediation liabilities. Allied has not produced any environmental contamination analyses for any of its real estate.

### 3. Equipment

Finally, Allied has offered as alternative security, five categories of equipment with a total alleged Orderly Liquidation Value ("OLV") of $1,020,000. Allied's OLV comes from a May 28, 2015 machinery and equipment valuation obtained from Gordon Brothers ("Gordon Brothers Valuation"). The Gordon Brothers Valuation also concludes that the Forced Liquidation Value, ("FLV") for that same equipment is 30% less at $708,500.[8] Based on my analysis of the results of

---

[7] Heavy Melt scrap is currently trading for approximately $142 per ton per the American Metal Market Daily dated November 12, 2015. In addition, there would be costs associated with selling the structural steel, further reducing its value.
[8] Gordon Brothers Machinery & Equipment Valuation as of May 28, 2015.



Case: 4:12-cv-01390-SL Doc #: 351-1 Filed: 11/20/15 9 of 22. PageID #: 22333

Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

two auctions of Allied's equipment performed by Ritchie Brothers,[9] I determined that Allied actually realized even less than the Forced Liquidation Value (i.e., approximately 3% less) for the assets it sold in the auctions. In addition, Allied had to pay Ritchie Brothers over 10% of the sales value to market and sell the equipment.[10] Thus the estimated net realizable value for the five categories of equipment that Allied is currently offering as alternative security is approximately $616,000 as follows:

**Allied Proposed Alternative Security - Equipment**

| Item | Description | (a) | |
| --- | --- | --- | --- |
| | | OLV | FLV |
| 3 | Tri-Con Containers | $ 82,000 | $ 61,500 |
| 13 | Bi-Con Containers | 123,000 | 82,000 |
| 14 | Open Side Containers | 150,000 | 125,000 |
| 27 | Cincinnati 500 Ton Press Brake | 65,000 | 50,000 |
| 70 | 6 Shoring Towers | 600,000 | 390,000 |
| | | $ 1,020,000 | $ 708,500 |
| | Realization Rate *(b)* | | 87% |
| | **Estimated net Realizable Value** | | **$ 616,395** |

Source: (a) Gordon Brothers Machinery & Equipment Valuation as of May 28, 2015.
(b) Results of Ritchie Brothers' September '15 and November '15 auctions and net of a 10% commission.

Therefore, the proposed alternative security is worth far less than U. S. Steel's $9.8 million net judgment, let alone 150% of that net judgment asserted by Allied as summarized below:

**Proposed Alternative Security**

| | Claimed Value | Actual Value |
| --- | --- | --- |
| Structural Steel | $ 7,100,000 | $ 403,000 |
| Real Property | 6,972,820 | Unknown* |
| Equipment | 1,020,000 | 616,000 |
| **Total** | **$ 15,092,820** | **$ 1,019,000** |
| | | *(Unknown)* |

*\* No current appraisal or environmental assessment*

---

[9] Ritchie Brothers' Owner's Detail Reports for the auctions dated September 2, 2015 and November 4, 2015.
[10] Ritchie Brothers' Auction Settlement Statements.



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

## B. Allied's Post-Judgment Shifting of Equipment Assets Creates Insecurity Concerning Assets Available to Satisfy U. S. Steel's Judgment

Based on my review and analysis of Allied's recently produced financial statements dated June 30 2015[11] and September 30, 2015, I noted that Allied transferred over $8.7 million (before depreciation of $1.9 million) in equipment assets from the books of AED, the named plaintiff in this matter, to the books of Allied Gator and replaced such assets on AED's books with a "receivable" from Allied Gator.[12]  Indeed it appears that Allied made this transfer on its books just days after the Court issued its $9.8 million judgment in favor of U. S. Steel and against Allied.[13]  The following table provides the related balances I noted in the relevant financial statements:

**Machinery & Equipment Transfer to Gator**

| | Allied Erecting & Dismantling | | | Allied Gator | | |
|---|---|---|---|---|---|---|
| | 6/30/2015 | 9/30/2015 | Change | 6/30/2015 | 9/30/2015 | Change |
| | | | (a) | | | |
| Machinery & Equipment | 47,004,873 | 29,808,441 | (17,196,432) | 3,078,315 | 11,604,168 | 8,525,853 |
| Accum Depreciation | | | | (1,691,148) | (4,201,841) | |
| Net | | | | 1,387,167 | 7,402,327 | 6,015,160 |
| | | | | | | |
| Intercompany Receivable | 8,235,464 | 14,733,249 | 6,497,785 | | | |
| | | | | | | |
| Intercompany Payable | | | | 7,031,440 | 13,469,998 | 6,438,558 |

*(a) Reduction due to Transfer to Gator and Auction #1 Liquidation of Equipment Balances from Allied Consolidating Balance Sheets.*

This action raises concerns on the part of U. S. Steel regarding the safety and value of assets that Allied may ultimately use to satisfy U. S. Steel's damage award.  Specifically, this action appears to replace tangible equipment assets on AED's books with an intangible "account receivable" with questionable collectability from Allied Gator.

Allied's Counsel stated that "this equipment had been inadvertently added to Allied Erecting's Depreciation Schedule when, in fact, it should have been listed on the Allied-Gator

---

[11] Allied's June 30, 2015 Financial Statements were produced by Seubert Insurance Brokers.
[12] Amounts based on relevant journal entries recently provided by Allied.
[13] Relevant journal entries produced by Allied's Counsel are dated September 30, 2015.



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

Depreciation Schedule"[14]  in essence indicating that the equipment was originally placed on AED's books by "mistake," was left there for several years, and was only "corrected" post-judgment.  If that were indeed the case, the correcting entries on the books should not have impacted the intercompany receivable account. On the contrary, a reduction of equipment assets on AED's books should have had a corresponding reduction in shareholders' equity while an increase in equipment assets on Allied Gator's books should have had a corresponding increase in Allied Gator's shareholders' equity.  In other words, if it were a simple mistake of the placement of the assets, the offsetting entries to the movement of the equipment assets should not have impacted intercompany receivables, but instead should have impacted each company's shareholder equity account.  The explanation offered by Allied's Counsel does not align with Allied's financial statements.

Allied's Counsel also stated that "from July 2006 through September 2008 Allied-Gator expended $8,682,235 in funds on machining and fabrication equipment for Allied-Gator's use in the new manufacturing facility."[15]  This explanation also begs the question, if Allied-Gator did indeed expend "$8,682,235 in funds on machining equipment" then why did the correcting entries create an additional intercompany payable owed to AED?  In addition, Allied Gator's historical financial statements call Allied's Counsel's explanation into question.  My review of Allied Gators' financial statements during that time frame revealed that there appears to be no evidence that Allied Gator made any such expenditure.  Aside from $2 million in long term debt incurred before fiscal 2007, Allied Gator did not even appear to have or be in a position to generate the requisite "funds" to purchase $8.6 million of new equipment.   Allied Gator's financial statements during that time frame as summarized below, show that the company had minimal net earnings, no cash, a growing liability to its affiliates and inventories that turn over (i.e., convert to cash) once every five years.[16]

---

[14] Email from Timothy Grieco, Esq to Michael Gladman, Esq dated November 10, 2015.

[15] Ibid.

[16] I would expect to see an inventory turnover rate of at least 2 to 3 times a year for this type of business.  A turnover of once in five years is abnormal and may be a sign of obsolete and slow-moving inventory.  This fact not only calls



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

### Allied Gator Financial Statements

| BALANCE SHEET | 2006 | 2007 | 2008 | 2009 | |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| Cash | $ - | $ - | $ - | $ - | ← No Cash |
| Accounts Receivable | 69,794 | 341,642 | 152,632 | 125,657 | |
| Inventories | 6,793,844 | 6,730,241 | 9,215,640 | 9,882,024 | |
| Prepaid Expenses | | | 670,961 | 573,940 | |
| Machinery & Equipment | 1,005,935 | 1,507,713 | 1,817,382 | 2,015,922 | |
| Less Accum Depreciation | (294,610) | (516,042) | (786,906) | (1,073,677) | |
| Furniture & Fixtures | 11,883 | 11,883 | 11,883 | 11,883 | |
| Other Assets | 146,994 | 78,085 | 78,085 | 78,085 | |
| | $ 7,733,840 | $ 8,153,522 | $ 11,159,677 | $ 11,613,834 | |
| **LIABILITIES** | | | | | |
| Accounts Payable | $ 1,272,738 | $ 621,581 | $ 276,286 | $ 715,875 | |
| Current Portion of LTD | 625,000 | 625,004 | 593,737 | 250,000 | |
| Long Term Debt | 1,468,745 | 854,154 | 250,000 | - | |
| Intercompany Liability | 2,354,107 | 3,941,213 | 7,846,996 | 8,402,896 | |
| | 5,720,590 | 6,041,952 | 8,967,019 | 9,368,771 | |
| **EQUITY** | | | | | |
| Shareholders' Equity | 2,013,250 | 2,111,570 | 2,192,658 | 2,245,063 | |
| | $ 7,733,840 | $ 8,153,522 | $ 11,159,677 | $ 11,613,834 | |
| **INCOME STATEMENT** | | | | | |
| Revenues | $ 4,966,481 | $ 2,463,418 | $ 1,541,346 | $ 3,031,161 | |
| Cost of Revenue | (2,840,563) | (1,570,791) | (1,160,764) | (2,028,525) | |
| General & Admin | (581,297) | (731,888) | (179,940) | (933,910) | |
| Interest | (121,569) | (62,419) | (119,990) | (16,321) | |
| Net Income | $ 1,423,052 | $ 98,320 | $ 80,652 | $ 52,405 | ← Minimal net earnings |
| | | | | *Average* | |
| Inventory Turnover | | 0.23 | 0.15 | 0.21 | 0.20 |

Inventory growth financed by affiliates

Inventory turns once every 5 years

*Source: Allied Consolidating Financial Statements*

Even though the invoices for the equipment were directed to Allied Gator, all of this evidence supports the conclusion that AED, not Allied Gator, paid for the equipment and that AED moved its assets to Allied Gator post-judgment. Thus, rather than having $8.5 million in equipment available to satisfy U. S. Steel's judgment, U. S. Steel is left to pursue an intercompany receivable due from Allied Gator. U. S. Steel is insecure about the collectability of the intercompany receivable due from Allied Gator given its weak financial position shown in the above financial statement summary and their current (i.e., September 30, 2015) financial statements. It is important to note that Allied Gator's intercompany debt owed to AED has grown to over $13.4 million as of September 30, 2015. Allied has produced nothing that would

---

into question the value of the most-significant asset on Allied Gator's balance sheet but also raises questions concerning Allied Gator's liquidity and ability to repay AED and ultimately AED's ability to pay U. S. Steel.



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

allow U. S. Steel to fully evaluate this issue and alleviate its uncertainty concerning assets ultimately available to satisfy U. S. Steel's judgment.

## C. Allied's Loss of Bank Financing and Continuing Poor Financial Performance Call Into Question its Ability to Continue Operating as a Going Concern.

Notwithstanding Allied's claims that it has tens of millions of dollars in assets with which to satisfy U. S. Steel's judgment, Allied's financial statements, as impacted by recent events, reveal a bleaker financial situation.  Allied's continuing financial erosion will lead to fewer assets available to satisfy U. S. Steel's judgment and may even force Allied into bankruptcy.

### 1.  Allied's Loss of Bank Financing

As noted earlier, JPM has called its loans from Allied.  As a consequence, Allied was forced to liquidate a substantial portion of its revenue-generating equipment in order to raise the cash needed to repay the loan balances.  More specifically, Allied was forced to sell over $8 million of its $19.5 million[17] of machinery and equipment (i.e., over 40%.)  In addition to losing 40% of the equipment Allied uses to generate revenues, and perhaps more critical, is the fact that Allied also lost its working capital line of credit from which to finance its continuing operations. [18] Working capital is the lifeblood to any business and is so important that banks normally require that loan covenants include required favorable working capital levels.  Without a working capital line of credit, Allied must maintain a large enough cash balance to sustain its continuing need for liquid working capital in order to operate as a going concern. The following schematic illustrates how businesses rely on sufficient working capital to continue operating:

---

[17] Gordon Brothers Machinery & Equipment Valuation as of May 28, 2015, page 18.
[18] Working Capital is a measure of both a company's efficiency and its short-term financial health. Working capital is calculated as the balance of current assets over and above current liabilities.



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation



The length of time that it takes a company to turn its cost expenditures in a project back into a cash receipt from the customer impacts how large of a cash cushion the company requires to operate effectively.  A functioning working capital line of credit allows a company to borrow cash using inventory and accounts receivable as collateral, in effect, shortening the above cycle in exchange for interest.  Allied no longer has the benefit of a working capital line of credit and has not produced any evidence of its plan to mitigate this situation (e.g., prospects for a replacement credit facility, a recovery plan or even backlog information.)

### 2.   Allied's Financial Position (Balance Sheet)

My analysis of Allied's Consolidated Balance Sheet[19] shows that Allied is limited not only in its working capital, but also in assets ultimately available to satisfy its obligation to U. S. Steel and the Professionals.  The following table shows Allied's most recently published consolidated balance sheet as of September 30, 2015 and identifies my relevant financial observations and noteworthy financial impacts from recent events:

---

[19] Allied's Consolidated Balance Sheet presents the financial position as of September 30, 2015, of all of the entities in Allied Consolidated Industries combined including Allied Erecting and Dismantling, Allied-Gator, Allied Industrial Scrap, Allied Industrial Equipment, Allied Industrial Contracting and Allied Industrial Development.



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation



**Allied Consolidated Balance Sheet**
*as of September 30, 2015*

| ASSETS | | |
|---|---|---|
| Cash | $ | 1,009 |
| Accounts Receivable | | 842,840 |
| Inventories | | 7,699,936 |
| Accumulated Scrap Processing Cost | | 1,774,995 |
| Prepaid Expenses and other Current Assets | | 236,530 |
| **Current Assets** | | **10,555,310** |
| Land | | 912,741 |
| Buildings and Improvements | | 40,237,215 |
| Construction in Progress | | 11,974,501 |
| Machinery & Equipment | | 38,968,551 |
| Licensed Vehicles | | 3,138,940 |
| Furniture & Fixtures | | 913,544 |
| Accumulated Depreciation | | (40,502,830) |
| **Property, Plant & Equipment** | | **55,642,662** |
| Other Assets | | 236,536 |
| **TOTAL ASSETS** | | **$ 66,434,508** |
| | | |
| **LIABILITIES & EQUITY** | | |
| Bank Line of Credit | $ | 2,979,982 |
| Accounts Payable | | 2,595,454 |
| Loan Payable to Officer | | 400,000 |
| Accrued Payroll & rRelated Taxes | | 95,900 |
| **Current Liabilities** | | **6,071,336** |
| Deferred Contract Revenue | | 10,904,244 |
| Deferred Federal Income Taxes | | 1,174,000 |
| Shareholders' Equity | | 48,284,928 |
| **TOTAL LIABILITIES & EQUITY** | | **$ 66,434,508** |

Annotations (boxed notes):
- Allied Gator's Inventories discussed earlier. Very slow moving. Very likely obsolete and of little true value. Not a "current" asset in assessing working capital.
- Real Property value unclear. Potential environmental issues. Property tax value @ $6.9 mil
- FLV of Machinery & Equip of approx $11.5 mil, of which $3.6 mil was transferred to Allied Gator leaving approx $8 mil at AED
- Paid Off
- Primarily Amount Due U.S. Steel

*Source: Allied Consolidated Industries Financial Statements dated September 30, 2015.*

Adjusting for the above known impacts and other financial issues reveals that Allied appears to have no working capital and substantially less assets from which to secure its obligations owed to U. S. Steel and the Professionals.[20]  Working capital is defined as the excess of current assets[21] over current liabilities.[22]  As noted in the balance sheet above and in a prior section, Allied recognizes its inventory as "current" even though Allied Gator's inventory turns over once every five years. Thus, by definition and from an economic standpoint, Allied cannot count on

---

[20] As noted earlier, Allied's Professionals have have filed a security interest in all of Allied's assets including the same assets that Allied is offering to U. S. Steel as alternative security and appear to have structured their security interest in a way that allows their security interest to grow in tandem with the growth of Allied's obligations owed to the Professionals that will likely occur during the appeal process.

[21] Current assets are defined as assets that can reasonably expected to be converted into cash within one year.

[22] Current liabilities represent a company's debts or obligations that are due to be paid within one year.



Case: 4:12-cv-01390-SL  Doc #: 351-1  Filed:  11/20/15  16 of 22.  PageID #: 22340

Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

the sale of these assets in the normal course of its business to generate working capital to fund its current operations.  The following balance sheet adjusted for known impacts and recent valuations shows a company with no working capital and dwindling assets from which to pay its obligations owed to U. S. Steel and the Professionals:



**Allied Consolidated Balance Sheet** *(with adjustments)*
*as of September 30, 2015*

**ASSETS**

| | | |
|---|---|---|
| Cash | $ 1,009 | |
| Accounts Receivable | 842,840 | |
| Inventories | | Gator inventory - questionable value.  Not a "current" asset in assessing working capital. |
| Accumulated Scrap Processing Cost | 1,774,995 | |
| Prepaid Expenses and other Current Assets | 236,530 | |
| **Current Assets** | **2,855,374  (A)** | |
| Land | | Property tax value @ $6.9 mil. Not clear about potential environmental impact on value. |
| Buildings and Improvements | 6,972,820 | |
| Construction in Progress | | |
| Machinery & Equipment | 11,500,000 | |
| Licensed Vehicles | | FLV of Machinery & Equip of approx $11.5 mil, of which $3.6 mil was transferred to Allied Gator leaving approx $8 mil at AED |
| Furniture & Fixtures | 913,544 | |
| Accumulated Depreciation | | |
| **Property, Plant & Equipment** | **19,386,364** | |
| Other Assets | 236,536 | |
| **TOTAL ASSETS** | **$ 22,478,274** | |
| | | |
| **LIABILITIES & EQUITY** | | |
| Bank Line of Credit | $ - | Paid Off |
| Accounts Payable | 2,595,454 | |
| Loan Payable to Officer | 400,000 | |
| Accrued Payroll & rRelated Taxes | 95,900 | |
| **Current Liabilities** | **3,091,354  (B)** | |
| Deferred Contract Revenue | 10,904,244 | |
| Deferred Federal Income Taxes | 1,174,000 | |
| Shareholders' Equity | 7,308,676 | |
| **TOTAL LIABILITIES & EQUITY** | **$ 22,478,274** | |
| **Working Capital:** | | |
| **(A) $2,855,374 - (B) $3,091,354 =** | **$ (235,980)** | Negative Working Capital |

*Source: Allied Consolidated Industries Financial Statements dated September 30, 2015 with adjustments.*

### 3.  Allied's Operating Performance (Income Statement)

U. S. Steel projects have constituted 60%-70% of Allied's business over the recent years.  Now, with virtually no new work coming from U. S. Steel, it is unclear how Allied will be able to



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

regain profitable operations in order to pay U. S. Steel and its Professionals.  I analyzed Allied's Income Statements to assess the financial health of Allied's continuing operating performance.

First, I noted that Allied's sales volume has declined substantially.  The following table shows Allied's consolidated sales revenue levels over the last 12 years and for the fiscal year-to-date period ending September 30, 2015:

### Allied Consolidated  Trend of "Revenue Earned"

| | | |
|---|---|---|
| FYE 3/31/04 | | $  2,931,136 |
| FYE 3/31/05 | | 17,711,664 |
| FYE 3/31/06 | | 38,054,253 |
| FYE 3/31/07 | | 74,803,342 |
| FYE 3/31/08 | | 64,745,947 |
| FYE 3/31/09 | | 44,678,148 |
| FYE 3/31/10 | | 24,910,742 |
| FYE 3/31/11 | | 29,359,378 |
| FYE 3/31/12 | | 29,375,559 |
| FYE 3/31/13 | | 24,908,585 |
| FYE 3/31/14 | | 25,676,922 |
| FYE 3/31/15 | | 17,110,888 |
| 3 mos 6/30/15 | 2,268,609 | |
| *Annualized* | | 9,074,436 |
| 6 mos 9/30/15 | 4,531,768 | |
| *Annualized* | | 9,063,536 |

"In-force" period of the contracts that are central to this matter.

Allied is trending at only 53% of last year and 35% of Fiscal 2014

*Source: Allied Consolidated Financial Statements(except for FYE 3/31/04 which came from Allied's Consolidated Form 1120 for that year.*

As noted above, while it enjoyed substantial revenues during the period that Allied's long-term dismantling contracts with U. S. Steel were in force, Allied's sales volume has recently decreased to roughly half of the volume it achieved in Fiscal 2015 and a third of its volume in Fiscal 2014.  The decline in projects from U. S. Steel has translated into substantially reduced sales levels for Allied.



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

Although Allied's business is relatively scalable,[23] it doesn't appear that Allied has appropriately right-sized its business to cope with the lower sales volumes.  I analyzed Allied's operating performance focusing on its Earnings Before Interest Taxes Depreciation and Amortization ("EBITDA").  EBITDA is essentially a company's net income with interest, taxes, depreciation, and amortization added back.  It is a common metric that is used to analyze operating performance and profitability as it eliminates the effects of tax, financing and accounting peculiarities that have limited impact on the main operation of the business.  I analyzed EBITDA because Allied's Statements of Operations is misleading as it does not report gross profits from operations or segregate the effects of extraordinary transactions such as dispositions of fixed assets.  Moreover, its Statements of Cash Flows is also misleading as it improperly includes the effects of dispositions of fixed assets in Cash Flows from Operating Activities.[24]  My analysis of Allied's ongoing EBITDA follows:

### Allied's EBITDA from Operations

| 6 Months Through 9/30/15: | | | Per Month | | 3 Months Through 6/30/15: | | | Per Month |
|---|---|---|---|---|---|---|---|---|
| Revenue | $ 4,531,768 | | | | Revenue | $ 2,268,609 | | |
| Other Income | 664,707 | | | | Other Income | 573,011 | | |
| Less Deferred Rev | (1,760,000) | $ 3,436,475 | $ 572,746 | | Less Deferred Rev | (880,000) | $ 1,961,620 | $ 653,873 |
| | | | | | | | | |
| Cost of Sales | 6,825,259 | | | | Cost of Sales | 1,920,595 | | |
| Less CIP write off | (3,931,230) | | | | Less CIP write off | | | |
| Less Depreciation | (1,981,748) | (912,281) | (152,047) | | Less Depreciation | (1,000,191) | (920,404) | (306,801) |
| | | | | | | | | |
| G&A Expenses | | (3,999,253) | (666,542) | | G&A Expenses | | (1,716,899) | (572,300) |
| | | | | | | | | |
| EBITDA from Operations | | $(1,475,059) | $ (245,843) | | EBITDA from Operations | | $ (675,683) | $(225,228) |

*Source: Allied Interim Financial Statements dated 6/30/15 and 9/30/15.*

The above analysis reveals that Allied is losing at least $225,000 per month from its operations.  Allied has partially lessened the cash impact of these ongoing losses by extending its accounts

---

[23] A scalable business can quickly add resources (i.e., labor, equipment etc.) and the related expense in order to complete a project and can just as quickly reduce resources and the related expenses as projects are completed.
[24] GAAP requires that the financial effects of dispositions of fixed assets be reported in Cash Flows from Investing Activities, not in Cash Flows from Operations.



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

payable.  However, there is a limit to the amount that trade creditors can be extended until they demand cash on delivery (i.e., COD).

Based on the above analysis and considering that the appeals process can take over a year, Allied's financials show that it is on track to lose at least $2.7 million (i.e., $225,000 x 12) for every year that its appeal is pending.  Allied has not produced any information that would allow U. S. Steel to fully evaluate these issues and alleviate its uncertainty concerning the safety of assets Allied has offered as alternative security or other assets that Allied could ultimately use to satisfy U. S. Steel's damage award.  Allied has not produced any evidence of a recovery plan, its plan to right-size its business, its plan to secure a replacement credit facility or even information so basic as its backlog (e.g., Statements of Contracts in Progress.)[25]

## III.  CONCLUSION

Based on my analyses summarized above it is my general opinion that Allied is offering alternative security to U. S. Steel that is not only insufficient to secure U. S. Steel's judgment, but has already been pledged to its Professionals along with all of the other assets of Allied.  In addition, Allied's post-judgment shifting of equipment assets from AED's books to Allied Gator's books creates reasonable grounds for U. S. Steel's insecurity concerning the sufficiency of any assets available to satisfy U. S. Steel's damage award.  And finally, Allied's recent liquidation of a substantial portion of its revenue-generating equipment assets, its loss of a working capital line of credit and its continuing poor financial performance call into question its ability to continue operating as a going concern.  This potentially places into jeopardy the alternative security Allied has offered U. S. Steel as well as other assets that Allied could ultimately use to satisfy U. S. Steel's damage award and Allied's Professionals' fees.

---

[25] Counsel for U. S. Steel has informed me that they have requested these reports and other information from Allied.



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

My opinions, observations, and analyses presented in this report are based upon information I have reviewed as of the date of this report.  I reserve the right to revise this report as necessary, and if any new or additional information becomes available through, among other things, discovery, independent research, additional fact-finding and reports of other experts.  My opinions and conclusions are rendered within a reasonable degree of professional certainty.

By:     Berkeley Research Group

_____

James A. Falconi, CPA, CFF, CFE

Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

**IV.  DOCUMENTS REVIEWED & POTENTIAL EXHIBITS**

In addition to documents that I have previously considered for this matter I have reviewed the following new documents recently produced:

- Allied's Reviewed Financial Statements dated March 31, 2015

- Allied's Compiled Interim Financial Statements dated June 30, 2015

- Allied's Compiled Interim Financial Statements dated September 30, 2015

- Allied's Partial Revised Statement of Cash Flows dated September 30, 2015

- Gordon Brothers Machinery & Equipment Valuation as of May 28, 2015

- Ritchie Brothers' owner's Detail Reports for the auctions dated September 2, 2015 and November 4, 2015

- Allied's "Reply Memorandum in Support of Expedited Motion for Temporary Stay and Motion for Stay of Execution and Approval of Alternative Security" dated November 2, 2015

- Allied's "Memorandum in Support of Expedited Motion for Temporary Stay and Motion for Stay of Execution and Approval of Alternative Security" dated October 9, 2015

- Journal entries recording the transfer of equipment assets from the books of AED to the books of Allied Gator

- Email from Timothy Grieco, Esq to Michael Gladman, Esq dated November 10, 2015

- American Metal Market Daily Scrap Iron & Steel Prices, November 12, 2015

- Ritchie Brothers' Auction Settlement Statements

- Various emails between Allied's Counsel and Seubert & Associates

- Various Loan Documents between Allied and J.P. Morgan Chase

- Various Financial Documents subpoenaed from Seubert Insurance Brokers



Allied Erecting & Dismantling Co., Inc. vs. United States Steel Corporation

## V.   ADDITIONAL TESTIMONY

Since we published our BRG Report date February 17, 2014, I testified in the following additional matters:

| 4/2014 | Industrial Technology Qatar W.L.L.  v.  Consolidated Contractors International Company S.A.L. | Construction Damages | Arbitration | ICC Arbitration, Doha, Qatar | John N. Craig Q.C. Bennett Jones, LLP. (Calgary) (403) 298-3463 |
|---|---|---|---|---|---|
| 9/2015 | Covol Fuels No. 4, LLC v. Pinnacle Mining Company, LLC | Lost Profits Damages | Deposition | United States District Court – Southern District of West Virginia | Timothy Downing, Esq Ulmer Berne, LLP (216) 583-7142 |

