# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ALLIED ERECTING AND DISMANTLING CO., INC., | ) ) ) ) | CASE NO. 4:12-cv-1390 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION** |
| UNITED STATES STEEL CORPORATION, | ) ) ) ) | **AND ORDER** |
| DEFENDANT. | ) | |

Before the Court is the renewed motion of defendant United States Steel Corporation ("U.S. Steel") for judgment as a matter of law ("JMOL") under Fed. R. Civ. P. 50(a) with respect to Count IV and the portion of Count V pertaining to the "Hot End" of Fairless Works. (Doc. No. 426.) Plaintiff Allied Erecting and Dismantling Co. ("Allied") has filed a memorandum in opposition (Doc. No. 429), and U.S. Steel has filed a reply (Doc. No. 430).

Also before the Court is Allied's motion to reopen the record and to amend the second amended complaint. (Doc. No. 431.) U.S. Steel has filed a brief in opposition (Doc. No. 434) and Allied has filed a reply (Doc. No. 435). With leave of Court, U.S. Steel filed a sur-reply. (Doc. No. 437.)

For the reasons set forth herein, defendant's renewed Rule 50(a) motion (Doc. No. 426) is denied without prejudice to reassertion (in any form) in the context of a new trial. Plaintiff's motion to reopen the record and to amend the second amended complaint (Doc. No. 431) is denied.

# I. BACKGROUND

This case (filed on June 4, 2012) involves a decades-long relationship between Allied and U.S. Steel that culminated in decades of litigation in this court and others. This case has been pending for years, and the parties have engaged in extensive discovery, extensive pre-trial and trial-related motion practice, and a jury trial. There have been two appeals and two remands[1] and, in each instance, a number of the myriad complex issues in the case have been resolved and the remaining claims and issues have been narrowed. Under the relevant contracts between these parties,[2] "Allied dismantles U.S. Steel's Fairless plant [a defunct steelmaking plant in Pennsylvania] at essentially no cost, and, in return, U.S. Steel lets Allied keep and sell the scrap metal generated by that dismantling work." *Allied II*, 814 F. App'x at 23.

As noted by the Sixth Circuit, after the second appeal and remand, only two of Allied's breach of contract claims in its second amended complaint (Doc. No. 43) remain for resolution.

> First, there is Allied's breach of contract count IV. Here, Allied alleges that U.S. Steel removed certain buildings from the scope of Allied's dismantling work without compensating Allied for the buildings' scrap value, thus violating the 1992 Specification's *removal compensation* provision.
>
> * * *
> Second, there is Allied's (distinct but similar) breach of contract count V. Here, Allied more broadly alleges that U.S. Steel refused to let Allied remove *any* scrap or railroad track from the Tin and Sheet facility—all of which Allied supposedly owned—thus violating the 1992 Specification's *assignment of ownership* provision.

*Allied II*, 814 F. App'x at 24 (emphases in original; internal record citations omitted).

---

[1] *See Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 726 F. App'x 279 (6th Cir. 2018) ("*Allied I*"); *Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 814 F. App'x 21 (6th Cir. 2020) ("*Allied II*").

[2] Over the years, the parties entered into a complicated patchwork of contracts, only two of which are directly at issue now. These are a 1992 construction contract, which the parties refer to as the "1992 Specification," and a 2003 settlement agreement, which the parties refer to as the "2003 AIP." *See Allied II*, 814 F. App'x at 23 (describing the relevant contract provisions).

## II. DEFENDANT'S RENEWED RULE 50(a) MOTION

In its second remand order, the Sixth Circuit noted "that U.S. Steel raised two alternative grounds for affirmance in its [appellate] brief." *Id*. at 27. But the Circuit "[left] it to the district court to resolve these issues in the first instance, within the context of a new trial." *Id*. This Court now "'must implement . . . the [Sixth Circuit's] mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" *Kay v. United of Omaha Life Ins. Co.*, No. 09-cv-11887, 2015 WL 13035521, at *1 (E.D. Mich. Mar. 3, 2015) (quoting *United States v. Cook*, 238 F.3d 786, 789 (6th Cir. 2001) (citing cases)).

Based upon the parties' briefing, the language of the Circuit's opinion evidently was not clear with respect to the sequencing of the resolution of the unresolved Rule 50(a) matters and the new trial. Understandably, U.S. Steel would like this Court to first address the remaining grounds it raised in support of its Rule 50(a) motion, while predictably Allied argues that U.S. Steel is not entitled to revisit its original JMOL motion, claiming that "both the letter and the spirit of the Sixth Circuit's mandate" require a new trial. (Doc. No. 423 at 1[3]; Doc. No. 429 at 7.)

The Court requested that the parties file briefs including pinpoint citations to the trial record, and as necessary citations to court rulings, in support of their respective arguments on the remaining Rule 50(a) matters. (Doc. No. 425 at 2.) As with the course of proceedings in this entire case, the arguments for and against the instant motion give an entirely new meaning to the expression "moving target."[4]

---

[3] Page number references herein are to the consecutive page numbers applied to each individual document by the court's electronic filing system.

[4] Almost from the outset of this case, perhaps due to the self-inflicted complexity resulting from their complicated contractual arrangements or perhaps just as a deliberate strategy, the parties have exhibited a troublesome pattern of raising alternate arguments *once an initial argument has been rejected*. To this day, in the briefs on the instant motions, they persist in this pattern, resulting in expenditure of countless hours of judicial resources. This behavior pattern contributes nothing to the resolution of the very real disputes this case involves.

After considering the parties' briefing and the Circuit's remand directive, the Court concludes that, in order to give meaning to the phrase "within the context of a new trial[]" in the Sixth Circuit's opinion, this Court must conduct a new trial on Count IV and what remains of Count V[5] and, in the context of that new trial, the Court will resolve any Rule 50(a) motions that may be raised, including any renewed ground for a Rule 50(a) motion that was previously raised but not fully considered by this Court.

Accordingly, U.S. Steel's renewed Rule 50(a) motion for judgment as a matter of law based on the *initial* trial record (Doc. No. 426) is **denied**. This denial is without prejudice to U.S. Steel's right to raise Rule 50(a) challenges (including new ones) "within the context of [the] new trial."

### III. PLAINTIFF'S MOTION TO REOPEN/AMEND

The Court now turns to Allied's motion to reopen the record to submit additional damages evidence and to amend Count IV by adding a request for declaratory judgment.

**A.    Motion to Reopen the Record**

Allied first asserts that it has the right, when met with a Rule 50(a) motion alleging insufficient evidence, to have the record reopened and to be given an opportunity to correct any deficiency. (*See* Doc. No. 429 at 18–21, referenced by Doc. No. 431 at 1.) Allied claims it would be prejudiced if U.S. Steel is permitted to belatedly raise an evidentiary deficiency that was not raised during the initial trial when, according to Allied, it would have still had an opportunity to address the deficiency by presenting additional evidence.[6]

---

[5] The so-called "Fox Rail" portion of Count V has already been resolved and was not appealed.

[6] Citing Second Circuit case law, Allied argues that "Rule 50 is designed 'to give the other party "an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury." ' " (Doc. No. 429 at 18–19 (quoting *Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir. 1986) (quoting 5A Moore's Federal Practice para. 50.08, at 50–77 (2d ed. 1986)); *Davis v. Rodriguez*, 364 F.3d 424, 432 (2d Cir. 2003) (holding that the party should have been permitted to reopen his case to give him an opportunity to cure the defect in proof that could otherwise preclude him from taking the case to the jury)).) Since an initial Rule 50(a) motion is made after the close of a plaintiff's case

4

Given the Court's denial of U.S. Steel's renewed Rule 50(a) motion with respect to the first trial, Allied's motion to reopen the record for purposes of addressing a Rule 50 issue is—at best—moot. Allied is no longer currently met with a Rule 50(a) motion. At such time (if ever) that it is, Allied may take whatever procedural steps it deems appropriate. To that extent, Allied's motion is denied.

But Allied has also previously raised another argument, which it references in passing in its brief in opposition to U.S. Steel's JMOL motion. (*See* Doc. No. 429 at 20 (citing Doc. No. 418, Motion for Expert Report Schedule)[7].) In Doc. No. 418,[8] Allied argues that it needs to call different witnesses, in particular new expert witnesses (which will require new expert reports). (Doc. No. 418 at 1 n.1.) Allied claims that "[d]ue to [its] bankruptcy and passage of time, some of the Allied witnesses are likely no longer available." (*Id*. at 3 (emphases omitted).) Allied claims that it "effectively was put out of business and lost all of its employees." (*Id*. at 4.) "In particular, Ed Klein is no longer an employee of Allied and is not available to testify to Allied's damage calculations for Counts IV and V." (*Id*.) Allied claims it needs "replacement expert witnesses" who will need to "submit expert reports[.]" (*Id*.) In a footnote, Allied mentions that its "prior overall damages expert [Mark Gleason] will now need to modify his prior expert report to, *inter*

---

(and renewed at the close of all the evidence), it is unclear how this "opportunity" would arise in the context of a trial. Presumably, as in *Davis*, it would be by a motion to reopen made after defendant's Rule 50(a) motion at the close of plaintiff's case. Notably, Allied made no such motion during the original trial. (*See* Doc. No. 281 at 212–240 (U.S.Steel's oral motion); at 240–270 (Allied's oral opposition); at 270–279 (U.S. Steel's oral reply); *see also* additional arguments at 280–288.) Although the bulk of the arguments addressed the statute of limitations issue (which was rejected on appeal), there were also arguments relating to the merits of the claims. During those arguments, Allied did not ask to reopen its case.

[7] On December 3, 2020, this Court deferred a ruling with respect to this motion relating to new experts. (*See* Doc. No. 425 at 1.) Therefore, it takes up the matter now.

[8] *See also* Doc. No. 420, U.S. Steel's Opposition and Doc. No. 423, Allied's Reply, as well as Doc. No. 416, U.S. Steel's Motion for Order on Scope of Trial, Doc. No. 419, Allied's Opposition, and Doc. No. 422, U.S. Steel's Reply.

5

*alia*, incorporate the new weight estimates [that will be supplied by the replacement experts]." (*Id.* at 5 n.2.)

In opposition to Allied's "request for an expert do-over[,]" (Doc. No. 420 at 2), U.S. Steel argues that "it is black letter law in this Circuit that parties are not entitled to reopen expert discovery and supplement expert opinions simply because their expert strategy failed the first time around." (*Id.* (citing cases).) In *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244 (6th Cir. 2001), the Sixth Circuit pointed out that, according to the Supreme Court, "'[i]t is implausible to suggest, post-*Daubert*, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail.'" *Id.* at 250 (quoting *Weisgram v. Marley Co.*, 528 U.S. 440, 455, 120 S. Ct. 1011, 145 L. Ed. 2d 958 (2000)). U.S. Steel argues that this is precisely what Allied is attempting to do—first replace the *Daubert*-excluded testimony of Ed Klein with new, "second chance" expert testimony (Doc. No. 420 at 3), and then revise the testimony of its main damages expert to incorporate the new testimony. As noted by U.S. Steel, "during the original proceedings, the parties conducted extensive and expensive expert discovery . . . , took six expert depositions, engaged in extensive *Daubert* briefing, and participated in an all-day oral argument on those *Daubert* motions." (Doc. No. 420 at 4.) U.S. Steel claims it would be unfairly prejudiced if it were required to start that process over.

In reply, Allied claims that U.S. Steel is "asking this Court to deny Allied . . . the opportunity to present its claims under Count IV and V to a jury[.]" (Doc. No. 423 at 1.)

Allied is confusing its right to a new trial on Counts IV and V with the question of what witnesses and what evidence should be permitted at that trial. Although Allied styles its motion as one to "reopen the record," in fact what it is requesting is to reopen pre-trial proceedings—in particular, expert discovery—and to permit entirely new witnesses in an effort to correct

deficiencies identified both during the initial trial and by U.S. Steel's Rule 50(a) motion (and, to some extent, by the outcome of its appeals). But in *Nelson*, the Sixth Circuit rejected the plaintiff's claim that, after his expert testimony was excluded under *Daubert*, he should be "afforded a second chance to marshal other expert opinions and shore up his case[.]" *Nelson*, 243 F.3d at 250.[9]

Further the mere fact that the Sixth Circuit has ordered a new trial does not mean that this Court must permit either party an opportunity to obtain new expert witnesses. There is nothing in *Allied II* to suggest that the mandate for a "new trial" requires this Court to permit the "do-over" Allied seeks. A new trial means just that; it does not also include new discovery. Nor does the remand order require this Court to proceed as if there had been no carefully orchestrated (and completed) pre-trial scheduling and preparations (complete with extensive fact discovery and expert discovery, followed by dispositive motion practice and *Daubert* motions), pursuant to Fed. R. Civ. P. 16(b), that permitted both sides to be more than sufficiently trial-ready for the first trial.[10]

This is especially true in this case where Allied was permitted to marshal its best evidence with respect to Counts IV and V and present it to the jury. It was only after Allied rested its case that the Court took consideration of Counts IV and V from the jury. (*See* Doc. No. 282 at 13.)

---

[9] In *Nelson*, plaintiffs alleged that they were personally injured by exposure to chemicals released into the environment by defendants. The parties selected seven "flagship plaintiffs" who consented to the jurisdiction of the magistrate judge. On defendants' motion, the magistrate judge excluded the testimony of plaintiffs' experts because it did not meet *Daubert* standards. A few days later, the magistrate judge granted summary judgment to defendants, finding that plaintiffs' evidence was insufficient to establish personal injury. On appeal, plaintiffs argued that the magistrate judge abused his discretion because equity and fair play demanded that they be given an opportunity to cure the deficiencies in their expert testimony before a ruling on summary judgment. The Sixth Circuit rejected the argument, concluding that "[p]laintiffs had adequate opportunity to develop their expert testimony, test their theories, and respond to defendants' specific challenges to the testimony." *Nelson*, 243 F.3d at 249.

[10] To obtain *pre-trial* modification of a Rule 16(b) scheduling order, the moving party must make a showing of good cause. *Gatza v. DCC Litig. Facility, Inc.*, 717 F. App'x 519, 521 (6th Cir. 2017); *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003). The Court must also consider whether the opposing party will experience prejudice. *Id.* Given the extensive expert discovery conducted by the parties in this case, as well as the preserved deposition and trial testimony, Allied has failed to show good cause to modify the scheduling order by reopening expert discovery *after* the trial. And, as already noted, Allied cannot camouflage its attempt to reopen expert discovery by styling its motion as one to reopen *the record*.

Indeed, Allied itself argues forcefully that it is a "false narrative" to claim, as U.S. Steel does, "that no admissible evidence of Count IV damages were [sic] admitted at trial." (Doc. No. 423 at 1–2 (citing trial testimony).) Therefore, Allied will be free to marshal all that evidence and submit it in the context of the new trial.[11]

That said, it is unlikely that a new trial will be a complete duplicate of the original trial and this Court would not expect that. But what can be said is that, prior to the original trial, the parties engaged in lengthy pretrial preparation governed by several versions of the Case Management Plan and Trial Order. (*See* Doc. Nos. 175, 177, 181, 223, and 226.) Thus, by the time the trial occurred, both fact and expert discovery had *long* since been completed based on the claims in the operative second amended complaint. The mere passage of time cited by Allied does not affect the finality of all discovery. In preparation for the first trial, Allied presumably would have completed all its discovery to its own satisfaction in a manner that, in its view, would position it to present its best case. The result of all that discovery is still in Allied's possession and it is free to re-present it during the new trial in whatever way it deems strategically necessary and most compelling to make its case within the Rules of Evidence.[12]

Allied asserts that Ed Klein is "likely" not available as a witness because he is no longer employed by Allied. But that is not a foregone conclusion. Allied gives no reason why Klein could not be subpoenaed to testify if he were otherwise not inclined to do so voluntarily—which is also

---

[11] Even evidence that Allied (or, for that matter, U.S. Steel) may have chosen not to present during the first trial is fair game for the new trial—subject, of course, to the Rules of Evidence.

[12] Allied argues extensively that a new trial "proceeds *de novo*." It asserts, for example, that "the scope of evidence from a first trial has no relevance on [sic] the scope of evidence for a retrial on remand[,]" that "on retrial following remand [a party] is not confined to damages evidence previously admitted[,]" and that a witness "may testify differently or correct the testimony given by him at the first trial[.]" (*See* Doc. No. 419 at 8-11 (citing cases).) No one would disagree with any of this. But none of this language suggests that *discovery* must be reopened on remand for a new trial. It merely means that the parties are free to structure and present their cases differently.

8

not a foregone conclusion. Further, even if Klein is "unavailable" to testify in person, he was certainly deposed and, at the very least, his testimony at the first trial remains "available" for Allied's use. The fact that Allied may now recognize weaknesses in Klein's testimony is no reason to reopen discovery and start over with new experts. *See*, *Nelson*, *supra*.

To the extent any witness is shown to be *actually* unavailable, Allied will be free to pursue any of the usual avenues to obtain such witness' testimony—be it by subpoena or by designating deposition testimony or testimony from the first trial for inclusion in the second trial.

This Court, having been directed by the Sixth Circuit to conduct a new trial on Count IV and what remains of Count V, still retains its significant discretion with respect to management of that new trial. *Dunning v. War Mem'l Hosp.*, 534 F. App'x 326, 331 (6th Cir. 2013) ("Matters of trial management are for the district judge and we intervene only when it is apparent the judge has acted unreasonably.") (citation omitted). Allied has not directly asked to reopen discovery and start afresh with new experts; instead it styles its request as a motion to "reopen the record." The trial record will most definitely be "reopened" in the form of a new trial as to Count IV and what remains of Count V. Even had Allied directly moved to reopen discovery, given the procedural posture of the case and for the reasons noted above, it has not demonstrated good cause to do so.

Accordingly, Allied's motion to reopen the record, which the Court construes as a motion to reopen expert discovery is **denied**.

**B.     Motion to Amend Second Amended Complaint**

Allied also moves for leave to further amend the second amended complaint "to conform to the evidence and to add a request for declaratory relief[.]" (Doc. No. 431 at 1.) In particular, Allied seeks to amend the "WHEREFORE" clause of Count IV to add a request for a declaratory judgment "that Allied owns the facilities, structures, buildings, machinery, equipment, scrap, and

9

materials wrongfully removed from Allied's scope of work at the Fairless Works[.]" (*Id*.) In its reply brief, Allied further argues that "[t]he typical deadline for amendment of pleadings is irrelevant here[,] . . . [because] Rule 15 contemplates [that] amendments to conform the pleadings to the evidence may be granted prior to trial, at trial, or even after trial." (Doc. No. 435 at 8 n.3.) Allied fails to identify any such evidence in this case that would require conformance, but it does assure the Court and U.S. Steel that "no new *claim* is being asserted" and that the amendment seeks only "to confirm[] the nature of the *additional relief* being sought." (*Id*. (emphases added).)

U.S. Steel argues that Allied's untimely request, if granted, would deprive U.S. Steel of an opportunity to conduct appropriate discovery to defend against Allied's "additional theory[.]" (Doc. No. 434 at 4 ("Had U.S. Steel been provided with timely notice of Allied's additional theory, it may have chosen to pursue discovery related to additional defenses and may have presented an expert in response to such a claim. U.S. Steel did not have the opportunity to do so and should not be required to take additional discovery this late stage of the case.").) Further, U.S. Steel notes that any form of declaratory judgment would be unenforceable (and thus, futile) because U.S. Steel sold its former Fairless Works facility at the end of 2020.[13]

This case was remanded by the Sixth Circuit "so that the [district] court can conduct a new trial on Allied's two remaining claims [Count IV and part of Count V]." *Allied II*, 814 F. App'x at 23.

Count IV of the second amended complaint stated a claim for breach of contract, seeking to recover *damages* for U.S. Steel's alleged removal of facilities from Allied's scope of work at the Sheet and Tin facility at Fairless. Although Allied alleged that such removal was wrongful

---

[13] *See* Doc. No. 434 at 4 (citing T. Sofield, *Large U.S. Steel Site In Falls Twp. Sold For $160 Million*, http://levittownnow.com/2020/12/29/large-u-s-steel-site-in-falls-twp-sold-for-160-million/ (Dec. 29, 2020)).

because Allied had already commenced its work (Doc. No. 43 ¶ 101), Allied further alleged that, even assuming U.S. Steel had the right to remove or indefinitely withhold a facility from Allied's scope of work, Allied would be entitled to recover the "agreed value of any removed facility." (*Id.* ¶ 102 (quoting § 10.3 of the relevant contract).) Allied alleged that "U.S. Steel's removal of these facilities from Allied's scope of work without compensation is in breach of [the relevant contract] and has directly and proximately caused Allied to incur damages in an amount in excess of $75,000.00." (*Id.* ¶ 104; *id.* at 25 ("wherefore" clause of Count IV).)[14]

Count IV did not originally seek declaratory relief, as made clear by the remand order following the first appeal. *See Allied I*, 726 F. App'x at 281–82 (citing the SAC at 23–25 and describing Count IV as seeking "breach-of-contract damages under Section 10.3 of the 1992 Specification for U.S. Steel's allegedly wrongful retention of (or indefinite indecision as to whether to retain) certain Fairless facilities for itself, without compensation, rather than either turning them over for Allied to dismantle or paying Allied the scrap value of such facilities[]").[15] Allied sought declaratory relief *only* on Count I, which specifically related to payment for concrete removal and basement backfill. The issues in Count I have already been decided and did not encompass any part of the two counts that remain for a new trial.

Allied suggests no basis (*e.g.*, 28 U.S.C. § 2201(a)) for seeking declaratory relief for a breach of contract claim. Ordinarily, it is within a court's discretion to decline jurisdiction under

---

[14] Similarly, in Count V (the "Fox Rail" portion of which has already been decided, and not appealed), Allied stated another breach of contract claim, alleging that U.S. Steel "fail[ed] to permit Allied to remove the remaining non-ferrous and rail at the Fairless Works, . . . [for which] Allied has incurred damages in an amount in excess of $75,000.00." (*Id.* ¶ 111; *id.* at 27 ("wherefore" clause of Count V).) Although Allied has not asked to amend this count, if it had, the ruling would be the same.

[15] The same is true of Count V. *See Allied I*, 726 F. App'x at 281–82 (citing the SAC at 25–27 and describing Count V as seeking "breach-of-contract damages under Sections 5.2.2 and 5.2.3 of the 1992 Specification and Section III(c) of the 2003 AIP, alleging that U.S. Steel had prevented Allied from removing certain scrap and railroad track from areas being dismantled . . . .").

11

§ 2201 ("In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration . . . .") (emphasis added). In *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223 (3d Cir. 2017), the Third Circuit[16] noted that "[c]ourts have greater discretion to decline jurisdiction over actions for declaratory judgments because they seek an adjudication of rights and obligations *prior to the enforcement of a remedy*." *Id.* at 227 (emphasis added) (citations omitted).

Here, Allied is attempting to seek a declaration—either in addition to or as an alternative to the usual contract remedies (which is unclear)—long after the fact of first pleading and twice re-pleading its contract claim seeking only monetary damages. Given the procedural history of this case, the Court exercises its discretion to decline permission for such amendment.

Moveover, Allied *specifically* sought damages for the breaches alleged in Counts IV (and V). Should a jury decide that a breach occurred, the jury will then decide what, if any, damages, the evidence proves that Allied will be entitled to recover (consistent, of course, with the terms of the relevant contract(s), as cited by the Sixth Circuit in *Allied I*). Thus, there is no need for a declaratory judgment when the jury will decide the issues.

In this case, amending to insert a request for declaratory judgment would serve no purpose and would prejudice U.S. Steel by inserting a new remedy that Allied did not previously seek, and for which U.S. Steel did not have the opportunity to conduct appropriate discovery. Indeed, Allied was very specific in its many iterations of its complaint in only seeking a declaratory judgment in Count I. It did not do so for Count IV and, at this late stage, to permit the amendment would be

---

[16] Pennsylvania law applies here. *See Allied I*, 726 F. App'x at 282.

improper. Therefore, Allied's motion to further amend the second amended complaint to add to Count IV a request for declaratory judgment is **denied**.

## IV. CONCLUSION

For the reasons set forth herein, defendant's renewed Rule 50(a) motion (Doc. No. 426) is denied without prejudice to reassertion (in any form) during the new trial. Plaintiff's motion to reopen the record (which the Court construes as a motion to reopen expert discovery) and to amend the second amended complaint (Doc. No. 431) is denied.

By separate order, the Court will schedule the final pretrial conference and jury trial, along with all trial-related events.

**IT IS SO ORDERED**.

Dated: August 27, 2021

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**