UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIED ERECTING AND DISMANTLING CO., INC., | ) ) ) | CASE NO. 4:12-cv-1390 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | |
| UNITED STATES STEEL CORPORATION, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANT. | ) ) | |

Before the Court is the motion of plaintiff Allied Erecting and Dismantling Co., Inc. ("Allied") to substitute expert. (Doc. No. 451.)[1] Allied's motion seeks to identify a new expert after an adverse *Daubert*[2] ruling by this Court. Defendant United States Steel Corporation ("U.S. Steel") has filed a brief in opposition. (Doc. No. 456.) For the reasons set forth herein, Allied's motion is denied.

I.  **Procedural Background**

In 2015, this Court conducted a three-week jury trial in this complex contractual dispute between the parties, with a resulting $10.7 million judgment in U.S. Steel's favor. Allied appealed; the issues raised by Allied on appeal did not include any challenge to the Court's evidentiary rulings at trial.[3]

---

[1] Throughout this order, all page number references are to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court.

[2] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[3] The Court takes judicial notice of Allied's appellate briefs in Appeal No. 15-4182, which are available on the Sixth Circuit's website. *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n.5 (6th Cir. 2005) (federal courts may

On February 23, 2018, the Sixth Circuit Court of Appeals affirmed this Court's judgment in substantial part, and rejected only the grant of judgment as a matter of law ("JMOL") that had dismissed Counts IV and V of the second amended complaint on statute of limitations grounds. *See Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 726 F. App'x 279 (6th Cir. 2018) ("*Allied I*"). On remand, by order dated March 15, 2019, this Court determined that there existed no genuine disputes of material fact and that U.S. Steel was entitled to JMOL on Counts IV and V. Allied again appealed.[4]

On May 12, 2020, the Sixth Circuit reversed and remanded for "a new trial on Allied's two remaining claims [Counts IV and a portion of Count V]." *Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 814 F. App'x 21, 23 (6th Cir. 2020) ("*Allied II*"). On remand, the parties each filed motions seeking particular orders from this Court.

U.S. Steel filed a renewed motion for JMOL, seeking a ruling on matters that had been raised at the trial on U.S. Steel's motion for directed verdict, but which had been left unresolved by this Court at the time. In U.S. Steel's view, these matters provided other grounds for dismissal of the claims and, therefore, needed to be resolved before conducting the new trial ordered by the appellate court.

---

take judicial notice of related "'proceedings in other courts of record[]'") (quoting *Rodic v. Thistledown Racing Club, Inc.*, 615 F.3d 736, 738 (6th Cir. 1980); Fed. R. Evid. 201).

[4] The Court again takes judicial notice of Allied's appellate briefs in Appeal No. 19-3326, available on the Sixth Circuit's website. The Court notes that, once again, Allied raised no evidentiary challenges (although it was arguably too late to do so since Allied did not raise the issue during its first appeal). Allied made only the following statement in its review of the procedural history of the case: "At trial (after certain evidentiary rulings by the district court that reduced the damages sought by Allied on Count IV and V), testimony from Allied's damages expert was admitted and submitted to the jury showing that Allied had suffered millions of dollars in damages for Count IV (retained buildings) and in excess of $1 million in damages for Count V (underground nonferrous and rail)." (Appellant Brief at 25.) There was no other mention by Allied, and certainly no challenge raised, with respect to the exclusionary rulings by the Court during the trial.

Allied filed a motion to reopen the record[5] and, in opposition to U.S. Steel's renewed JMOL motion, Allied renewed its own earlier unresolved motion to be permitted, due to the alleged unavailability of one of its expert witnesses, to call new expert witnesses and supply new expert reports.[6]

After briefing, in an order dated August 27, 2021, this Court concluded as to U.S. Steel's renewed JMOL motion that, "in order to give meaning to the phrase 'within the context of a new trial[]' in [*Allied II*], this Court must conduct a new trial on Count IV and what remains of Count V and, in the context of that new trial, the Court will resolve any Rule 50(a) motions that may be raised, including any renewed ground for a Rule 50(a) motion that was previously raised but not fully considered by this Court." (Doc. No. 439 at 4 (footnote omitted).)

As to Allied's motion to reopen the record and call new experts, which the Court construed as a request to reopen pretrial proceedings (in particular, to reopen expert discovery), the Court ruled that *Allied II* contained no directive (or requirement) that this Court, in the context of the new trial, must "proceed as if there had been no carefully orchestrated (and completed) pre-trial scheduling and preparations (complete with extensive fact discovery and expert discovery,

---

[5] Allied also sought leave to amend the second amended complaint, but that motion (which has been denied) is not relevant to the instant discussion.

[6] In a footnote contained in its memorandum in support of the instant motion, Allied claims that it "originally requested leave to substitute its expert back in 2018 following the first remand." (Doc. No. 451-1 at 1 n.1 (citing Doc. No. 407 at [19] n.12).) But, even as recognized by Allied's counsel during the hearing on November 30, 2021, Doc. No. 407 was Allied's opposition to a motion filed by U.S. Steel; it was not itself a motion. It is well settled that a passing mention such as this (especially one in a footnote) is not a substitute for a proper motion. *See, e.g.*, *Smith v. Nationstar Mortg., LLC*, 756 F. App'x 532, 536 (6th Cir. 2018) (rejecting plaintiff's "'throwaway' request for leave to amend his complaint [contained] in his opposition to [d]efendants' motion to dismiss[]") (citation omitted). Allied's further citation to another opposition brief (Doc. No. 419 at 9) suffers in the same manner. Neither this Court nor U.S. Steel was required to respond to such unofficial "motions" (although, admittedly, U.S. Steel did so in a reply brief) nor to consider Allied's passing comments as indicative of any formal position held by Allied. That said, the issue here is what Allied is entitled to on a remand for new trial in a situation where all discovery was previously completed and each party was presumably trial-ready. Merely repeatedly raising one's desire to name a new expert does not amount to entitlement to be granted that request.

followed by dispositive motion practice and *Daubert* motions), pursuant to Fed. R. Civ. P. 16(b), that permitted both sides to be more than sufficiently trial-ready for the first trial." (*Id.* at 7 (footnote omitted).) The Court further noted that "Allied was permitted to marshal its best evidence with respect to Counts IV and V and present it to the jury[]" and that "[i]t was only after Allied rested its case that the Court took consideration of Counts IV and V from the jury." (*Id.* (citing the trial transcript).) After a brief discussion of Allied's claim that Klein was "likely" not available as an expert witness, the Court ruled that "given the procedural posture of the case and for the reasons noted [in its opinion], [Allied] has not demonstrated good cause to [reopen expert discovery]." (*Id.* at 9.)

Having ruled on the then-pending motions, the Court issued its final pretrial conference and trial order, wherein it set various deadlines, including one for motions in limine. (*See* Doc. No. 440.[7]) Both parties timely filed and briefed several motions. The Court conducted hearings and orally ruled on all but plaintiff's instant motion to substitute expert.[8]

## II. Discussion

### A. The Parties' Positions[9]

In this motion, which the Court construes as a motion for reconsideration,[10] Allied asserts that its original trial expert, Ed Klein ("Klein"), "is no longer employed by Allied, and is unwilling

---

[7] The Court set the final pretrial conference for December 15 2021, and the jury trial on a two-week standby basis beginning January 18, 2022.

[8] The motion is not actually an in limine motion, which is "'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984)).

[9] As with so many matters in this case, the parties' ever-changing positions (and, particularly, those of Allied) are scattered throughout many documents and are not confined to the briefs on the motion currently before the Court.

[10] In its motion, Allied points to Doc. No. 418, its motion for an expert report schedule, asserting that "there is some confusion about how [the motion] . . . was considered." (Doc. No. 451 at 1 n.1.). But Allied fails to acknowledge that this Court specifically addressed Doc. No. 418 (which it had previously deferred) in its August 27, 2021 ruling. Allied also fails to mention that the Court denied Doc. No. 418 in conjunction with its denial of Allied's more recent motion

(and, thus unable) to offer expert testimony in the upcoming trial in this matter." (Doc. No. 451 at 1 (citing Doc. No. 451-2, Declaration of Ed Klein).) Because, in Allied's view, an expert such as Klein "cannot generally be subpoenaed to testify," (*id.*), that renders Klein "unavailable." Allied seeks "leave to designate a new expert witness to testify regarding [the] damage components, including estimated weights of the ferrous and non-ferrous scrap associated with Counts IV and V." (Doc. No. 451-1 at 1.) Allied offers to "make its substitute expert available for deposition and/or *Daubert* motions practice, as appropriate." (Doc. No. 451 at 2.) Allied claims that "U.S. Steel would suffer no substantial prejudice by permitting this substitution, while Allied will suffer extreme prejudice to its case by being denied an opportunity to present its damages expert 'live' to the jury at trial." (*Id.*)

During the hearing conducted on the various motions, Allied noted that Klein had offered testimony as to three components of damages, but the Court excluded the testimony as to only one component—the building weights. In Allied's view, since, in order to have a fair retrial, it "needs" a new expert due to Klein's alleged "unavailability," Allied would also take that opportunity for the new expert to update Klein's entire report so as to address the deficiencies originally found by the Court in Klein's testimony. In order to streamline and to avoid prejudice to U.S. Steel, Allied offers that it would agree to submit new and updated evidence regarding only the third component of damages and would use the testimony of Klein from the first trial for the other two damage components.

---

to reopen the record (Doc. No. 431). (*See* Doc. No. 439, Memorandum Opinion and Order at 5 n.7 [the Court "takes up the matter [of Doc. No. 418] now"]; and at 5–9 (denying Allied's motion to reopen the record, construed it as a motion to reopen expert discovery).) Therefore, Allied's instant motion, improperly filed during the time period for filing motions in limine, is really a motion for reconsideration.

5

U.S. Steel, as it has consistently, opposes Allied's motion, arguing that Allied is improperly attempting to reopen expert discovery, with a new expert witness and reports (a motion that was already unequivocally denied by the Court) so as to "create an entirely new damages theory" designed to "plug the gaps in its experts' deficiencies . . . [without] any compelling (or even sensible) reasons why expert discovery should be reopened on what would be the eve of trial." (Doc. No. 456 at 1–2.) This would likely result in a new report from Allied's new expert witness, as well a new and supplemental report from Gleason, Allied's other damage expert who relied upon the testimony of Klein for his damage calculations. In turn, this will also likely require these two experts to be deposed by U.S. Steel, followed up by new reports from U.S. Steel damage experts, and the possibility that Allied may want to depose them. All to say that what Allied is requesting is to reopen expert discovery. U.S. Steel properly argues that Allied is seeking an impermissible "do-over" of the portions of its expert's report and testimony that were excluded by this Court's prior *Daubert* ruling. (*Id*. at 3.)

**B.  Analysis**

Under the procedural and legal posture of this case, Allied's request to designate a new expert and to permit that expert to submit a new report and offer new testimony has no merit for several reasons.

Allied suggests that Klein is "unavailable" because, according to Klein's declaration, he will refuse to testify as Allied's expert at any new trial.

Allied first cites *Ohio Pub. Emp. Retirement Sys. v. Fed. Home Loan Mortg. Corp.*, No. 4:08-cv-160, 2017 WL 2363010 (N.D. Ohio May 31, 2017) ("*Retirement System*") for the proposition that "[c]ourts have consistently permitted the substitution of expert witnesses when unforeseen events render the original expert unavailable to testify at trial." (Doc. No. 451-1 at 2

6

(quoting *Whiteside v. State Farm Fire & Cas. Co.*, No. 11-10091, 2011 WL 5084981, at *1 (E.D. Mich. Oct. 26, 2011)).)

But *Retirement System* is distinguishable on its facts. There, plaintiff retained an expert whose report was to support a motion for class certification. The expert finalized and submitted his report, but the court subsequently denied the class certification motion without prejudice to refiling. A few months later, the court granted defendants' motions to dismiss, but the Sixth Circuit reversed and remanded. When the expert was contacted to re-engage, he declined and broke off all communication. It was also undisputed that, during the pendency of the appeal, the law regarding class certification, including the law as to classwide damages, had changed substantially. Since that would need to be addressed and updated even if the prior expert were able to be retained, the Court determined that there was no prejudice to either party to permit the designation of a new expert (complete with a new report) rather than to force the original expert to serve. The court also permitted appropriate limited expert discovery to address the new developments.

*Retirement Systems* also relied upon *Whiteside*, *supra*, which discussed the "good cause" standard under Fed. R. Civ. P. 16 typically applied when a party asks to substitute an expert after the close of discovery but before trial.[11] The court in *Whiteside* pointed to three cases where substitution had been permitted in circumstances where the original experts withdrew. *Whiteside*, 2011 WL 5084981, at *1 (citing *Doctor's Assocs., Inc. v. QIP Holder LLC*, No. 3:06-cv-1710, 2009 WL 5184404, at *4 (D. Conn. Dec. 23, 2009) (pre-trial substitution after withdrawal of expert due to a "legitimate conflict of interest[]"); *Howard v. Securitas Sec. Servs., USA, Inc.*, Case No. 08-cv-2746, slip op. (N.D. Ill. June 23, 2011) (substitute expert permitted due to original expert's

---

[11] This Court acknowledged that standard in its earlier ruling on Allied's motion to reopen the record. (*See* Doc. No. 439 at 7 n.10.)

7

inability to serve after developing leukemia); *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, Nos. 1:04-cv-396 / 1:06-cv-317, 2010 WL 3892860 (N.D. Ind. Sept. 30, 2010) (substitute damages expert permitted due to original expert's incarceration for embezzlement, but new expert limited to the same subject matter in the original expert's report)[12]). In *Whiteside* itself, the court permitted substitution because the expert had been involved in a serious motorcycle accident and sustained life-threatening injuries. The court found no prejudice because the substitution occurred three months before the scheduled trial and the new expert was expected to make findings substantially similar to those of the original expert.

Neither *Retirement Systems* nor *Whiteside* and the cases it relies upon offer support for Allied's position in this case and on these facts.[13]

None of the other cases relied upon by Allied are controlling in this circuit and each one either is procedurally and factually distinguishable or relies upon an inapplicable exception rather than the rule. *See, e.g.*, *Yong ex rel Yong v. The Nemours Found.*, 432 F. Supp. 2d 439 (D. Del. 2006) (allowing additional experts for a retrial after a mistrial because defendant would not suffer undue prejudice); *Hoffman v. Tonnemacher*, No. 04-cv-5714, 2006 WL 3457201 (E.D. Cal. Nov. 30, 2006) (permitting defendant to designate an expert on retrial following a mistrial because its originally designated expert had been the now-settled co-defendant's expert and the retrial was not

---

[12] The court in *Lincoln Nat'l Life Ins. Co.* presented a thorough and helpful discussion of the overall contours of expert substitution. *See* 2010 WL 3892860, at *2–3.

[13] Allied's citation to *Carter-Wallace, Inc. v. Otte, Trustee*, 474 F.2d 529 (2d Cir. 1972) is hardly worth addressing. There, "[f]aced with a situation in which the attorney for a Chapter XI debtor [defendant Davis-Edwards Pharmacal Corporation] was not proficient in patent law but the patent issue had been explored in depth in a trial of [plaintiff] Carter-Wallace's infringement action against the United States before a Commissioner of the Court of Claims, the court permitted an unusual procedure." *Id*. at 534. Although most of Carter-Wallace's witnesses testified in person, the trial court allowed Davis-Edwards "to offer the Government's cross-examination in the Court of Claims as its cross-examination, and to present its entire case-in-chief through the use of the testimony of the Government's witnesses in the Court of Claims action[.]" *Id*. Any discussion in *Carter-Wallace, Inc.* regarding requirements for the use of prior testimony in a subsequent proceeding is of little assistance here.

until four months later); *Apple Inc. v. Samsung Elec. Co., Ltd.*, No. 11-cv-1846, 2016 WL 524904 (N.D. Cal. Feb. 10, 2016) (noting a new expert was permitted due to the death of the original damages expert); *White v. McDermott*, No. 3:08-cv-634, 2010 WL 4876025 (D. Conn. Nov. 19, 2010) (allowing plaintiff to designate a new expert for retrial following a mistrial, but requiring plaintiff to pay defendant's attorney fees incurred in deposing that expert and the cost of the transcript).

The law in this circuit is expressed in *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244 (6th Cir. 2001). There, plaintiffs alleged they were injured by environmental exposure to a chemical released into the air by defendants' facility. To establish medical causation, plaintiffs relied upon the testimony of two experts. Defendants moved to exclude the experts' testimony and also moved for summary judgment arguing that, without that testimony, plaintiffs could not establish causation. The district court excluded the experts under *Daubert* and, a few days later, granted defendants' summary judgment motion. On appeal, the plaintiffs argued, *inter alia*, that, due to "considerations of equity and fair play[,]" they should have been given "an opportunity to obtain expert testimony to remedy deficiencies in the proffered testimony before granting summary judgment." *Id*. at 249. The Sixth Circuit rejected this position as "without merit." *Id*. It stated:

> Plaintiffs had adequate opportunity to develop their expert testimony, test their theories, and respond to defendants' specific challenges to the testimony. We recently rejected a similar claim that the district court abused its discretion by refusing a request to reopen the *Daubert* inquiry after the plaintiff's proffered expert testimony was found to be inadmissible under Rule 702. *See Pride v. BIC Corp.*, 218 F.3d 566, 578–79 (6th Cir.2000).

*Id*. The court found that "fairness does not require that a plaintiff, whose expert witness testimony has been found inadmissible under *Daubert*, be afforded a second chance to marshal other expert opinions and shore up his case before the court may consider a defendant's motion for summary

9

judgment." *Id*. at 250 (citing *Weisgram v. Marley Co.*, 528 U.S. 440, 120 S. Ct. 1011, 145 L. Ed. 2d 958 (2000) (finding it "implausible to suggest, post-*Daubert*, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail.")).

The same must be true here. During the original trial, Allied proffered the full testimony of Klein (*see* Doc. No. 280 at 14–36) and, on the basis of *Daubert* and Rule 702, the Court excluded a portion of that proffer, not permitting Klein to testify in one respect before the jury. At this juncture, reviewing in some detail what transpired during the original trial is instructive.

Klein testified during his proffer that he relied upon Ex. P-435 (a chart presented by Allied during the trial that incorporated some information from Mike Ramun's original estimates of building weights for many buildings on the U.S. Steel's Fairless campus) "to give [his expert] opinion regarding the weights or quantities for the retained ferrous." (*Id*. at 15–16.) Ex. P-435-B was "a copy of Mike Ramun's field notes when he did the estimate of the sheet and tin." (*Id*. at 24.) Someone at Allied apparently took "the information that was handwritten by Mike Ramun [and] put [it] in a spreadsheet." (*Id*. at 25.) Klein gave the following example:

> If we just look at the first line item, A. On the field notes, what I've circled there and labeled as A, it says tin warehouse, 130 by 145. Above that it says 60 to 70. And then next to the 130 to 145, 10H, 100 tons.
>
> So if you look at the same line on the spreadsheet, A is the number 2 tin warehouse. The width is 130 foot. The length is 145 foot. The weight per square foot is 70. And they have listed the crane at 100 tons.

(*Id*. at 26.) Ultimately, Klein confirmed: "So what I used for my ferrous estimate, this spreadsheet, is based on Mike Ramun's original field notes which would be the original estimate." (*Id*. at 28.) When asked whether he "[went] through a verification process of his numbers based on actual

data[,]" Klein answered in the negative. (*Id*.) He asserted that, based on his experience, the original estimate supplied by Mike Ramun "seem[ed] reasonable." (*Id*. at 29.)

On cross examination by U.S. Steel, Klein testified that he was "comparing two documents that other people [had] told [him] came from Mike Ramun[,]" but without ever actually talking to Ramun about either document. (*Id*. at 30.) Ultimately, Klein testified that he used the building dimensions supplied by Ramun on his original field notes and multiplied the square footage by pounds per square foot to estimate the building weights. (*Id*. at 34–35.)

After the proffer, the Court heard argument (*see id*. at 36–69), during which it had the following exchange with plaintiff's counsel regarding the various numbers in Mike Raman's field notes that were relied upon by Klein:

> THE COURT: Well, what's the methodology used that could be tested.
>
> MR. OPALINSKI: It's in their head.
>
> THE COURT: It's in their head.
>
> MR. OPALINSKI: Mr. [John] Ramun and his brother [Mike Ramun], when they walk through a facility based on decades of experience, they know that that steel tank weighs blank tons. They look at a building and they know in their head from decades of experience. Same thing with Mr. Lindquist. They don't go out there with a textbook. They're not registered professional engineers. They don't do that. This is from decades of experience. You and I couldn't guess the weight of that table. Mr. Ramun could tell you the weight of that table. If there were a tank –
>
> THE COURT: Except by Mr. Ramun's, Mike Ramun's [own] field notes, he's got ranges. He doesn't have one number for some of these buildings. He's got -- he has ranges. And then whoever put this chart together selected the high end of the range, the highest end of the ra[n]ge for each one of the numbers where there were ranges.
>
> MR. OPALINSKI: And that would go to the weight. . . .

(*Id*. at 56–57.) In opposition, U.S. Steel argued:

11

>    MR. POWELL:   Your Honor, I have one sentence. They want to argue that it goes to the weight and we can cross-examine it. That's exactly the point. We can't. We don't have the people who did the analysis, the methodology for the analysis. There is nothing to cross-examine in terms of analyzing the weight.

(*Id*. at 58.) On additional questioning from the Court about the requirements of Fed. R. Evid. 702, plaintiff's counsel argued:

>    THE COURT:   Okay. You would agree that even if someone uses experience as the basis for their opinion, they would still have to explain their methodology. I mean that -- we're talking about for proof in a court of law.
>
>    MR. OPALINSKI:   I don't know whether that's possible, Your Honor, in this sense --
>
>    THE COURT:   Well, because I think that's what the rule [702] says, right? The committee note [for the 2000 Amendments] says while experience alone may provide a sufficient foundation for expert testimony, if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.
>
>    MR. OPALINSKI:   Your Honor, I think what the evidence shows is this: Mr. [John] Ramun testified that he has decades of experience in this area. He testified to the hundreds of projects he performed for U.S. Steel. He testified that he independently walked through and verified the weights that Mike Ramun took the lead on.
>
>    THE COURT:   And that's where I want to stop you. Where does he testify as to how the methodology that was used other than my years of experience and it's in my head.
>
>    MR. OPALINSKI:   I think that's all that [ ] exists. I would suspect -- and we could offer Mr. Ramun. I suspect if you ask Mr. Ramun beyond what he testified on direct in terms of quote methodology, he's not going to say, "I pulled out an engineering textbook and I looked at this [table] or chart." He's going to say, "From doing this for 50 years and estimating thousands of projects and knowing what I shipped versus what I estimated and refining it, from my years of experience, I've come to know the weight of a building by looking at it." So in term[s] of what the methodology is, I don't know that Mr. Ramun's

12

> going to say anything other than "I know from my decades of experience of estimating and shipping that I know the weights of the buildings." So I don't know there is anything that can be done more scientifically or mathematically. He would say, "It's based on my years of experience."

(*Id*. at 67–69.)[14] Ultimately, the Court ruled from the bench as follows:

THE COURT: All right. Based upon the arguments and the review of the testimony, as it pertains to the weight of the building, the witness testified, that is, Mr. Klein testified that he asked for an original estimate. And that original estimate was prepared by Mike Ramun. He was given a document that contained some information from the original estimate.

And as to the building weights -- as to the weights per square foot actually, he indicated that those numbers looked reasonable to him, and he used that as a starting point and the way he said he verified that was to perform some kind of an analysis in the aggregate.

And the Court finds that there was nothing that the witness did to verify the weights per square foot or the methodology used, or even an explanation of the methodology that was used in the original estimate or the methodology Mr. Klein used when verifying the weights per square foot for each of the buildings.

In other words, there was never an explanation that, based upon my experience, in a machine shop, you need this type of a structure; in a manufacturing facility, you need this type of a structure. And when I looked at the buildings that were actually there to be seen, I saw a building that was constructed of a certain nature with certain types of beams, etcetera. Nothing at all whatsoever.

The extent of the testimony as to the verification process for each individual building, as it pertains to the weight per square foot was, it looked reasonable to me. You can't test that. And I think Mr.

---

[14] During the argument at trial relating to Klein's failure to articulate any methodology, plaintiff's counsel cited *Kovacic v. Ponstingle*, No. 1:05-cv-2746, 2014 WL 4715859, at *7 (N.D. Ohio Sept. 22, 2014) in support of Allied's argument that any weakness in an expert's methodology goes to the weight of the opinion, not its admissibility. (Doc. No. 280 at 51–52 (citation corrected).) But in that case and in all the cases it relies upon, the expert actually articulated his or her methodology, but there were challenges or weaknesses in each. Here, there is simply *no* articulated methodology.

> Opalinski candidly admitted that it's in their heads and it's based upon experience. But it's just not something that can be tested.
>
> And this estimate comparison in P-436 is an estimate of an aggregate, some aggregate numbers. And it does not speak to the individual building[s] which are at issue in this case and which still stand.
>
> And because of that -- and I do believe in my original ruling on the *Daubert* motions, I set forth the standards that are in play here. But primarily the Court finds that there is no methodology that has been explained that could be tested, and, therefore, the information relied upon by Mr. Klein is not reliable. It's simply an adoption of some numbers. And frankly, for some of the buildings, there were ranges. And one end of the range was selected with no explanation as to why some -- 35 was selected, for instance, over 30, or 40 was selected over 35, or 70 was selected over 60 -- I'm just going through some of these buildings that are set forth in the handwritten notes.
>
> And so for all those reasons, the Court will not permit the damage expert to rely upon the weight of the ferrous material in the buildings. Just because "I said so and because I think so and because it looked reasonable" does not meet the standard for proof of damages in a court of law.

(*Id*. at 69–71.)

Notably, Allied never appealed this evidentiary ruling. It could have (and, arguably, should have) done so on its first appeal (and, perhaps, even in its second appeal). Allied is not now prejudiced by the Court's denial of its impermissible attempt to end-run that failure by designating a new expert regarding building weights.

As noted in this Court's disposition of Allied's original post-trial and post-remand motion for a new expert, all pretrial proceedings in this matter, including expert discovery, were conducted according to a clear schedule that was modified several times at the parties' requests. Allied and

U.S. Steel both had more than sufficient time to prepare for the original trial.[15] (*See* Doc. No. 439 at 7.) All of the discovery that was conducted remains available to both sides. The Sixth Circuit's order for a new trial is not an order to start over, armed with advisory opinions from this Court and the Circuit as to the weakness(es) in the parties' respective cases. All that is permitted by the order for a new trial is for the parties to try again to marshal their best evidence in the most persuasive manner within the rules of evidence.

Allied asserts that, at the new trial, it will call Mike Ramun, who did not testify at the first trial, to authenticate the field notes that Klein relied upon. But this is of no help to Allied's cause since, even armed with an authenticated document from Mike Ramun, any new expert will have the same problem as Klein—there is no methodology associated with Ramun's notes. The *Daubert* problem that led to the exclusion of part of Klein's testimony would not be cured.

The Court also notes that the "new" expert proposed by Allied is Gordon Lindquist, another employee of Allied (whom counsel believes is currently retired). Lindquist, however, was an expert witness at the first trial. Plaintiff's witness list summarizes Lindquist's testimony as "[l]iability and [d]amages issues relating to Counts I, II, III, IV, V, VII, and IX of the Second Amended Complaint." (Doc. No. 257 at 1.) Similarly, Klein's testimony is summarized as "[l]iability and [d]amages issues relating to Counts I, II, III, IV, and V of the Second Amended Complaint." (*Id*.) As plaintiff's counsel conceded during the motions hearing, the scope of each one's expert testimony was a strategic decision, which apparently Allied is now second-guessing given Allied's counsel's present characterization of Lindquist as one of the nation's foremost experts with respect to estimating scrap weights in connection with demolition work.

---

[15] Complicating matters even further, during the November 2021 hearings, there was an indication that U.S. Steel no longer even owns some or all of the buildings at issue.

15

Finally, the conclusion that Allied is not entitled to a new expert is not changed by plaintiff's current circumstance—the alleged "unavailability" of a former employee to continue to offer expert testimony on Allied's behalf. In the first place, Allied has not actually established Klein's unavailability. Klein is currently employed by a company in Youngstown, Ohio and, presumably, lives in the vicinity. (Doc. No. 451-2 at 2.) Even if he seems unwilling to appear voluntarily, Allied can subpoena him (*see* Doc. No. 456 at 10 (collecting cases recognizing the general principle that federal courts have the power to subpoena experts)), since it is likely he is within the subpoena power of the Court under Fed. R. Civ. P. 45(c)(1)(A). It is not a foregone conclusion that Klein, even if unwilling, would not appear if subpoenaed. Nor can one assume he would necessarily be uncooperative if he testified.

If Klein actually were to become unavailable, his prior trial testimony and deposition testimony may be read into the record. "A declarant is considered unavailable as a witness if the declarant . . . refuses to testify about the subject matter despite a court order to do so[.]" Fed. R. Evid. 804(a)(2).

Allied's *real* problem is not that it will be unable to present expert testimony because Klein is "unavailable," but that it otherwise has no way to cure the deficiencies in Klein's testimony that were identified by the Court's prior, unappealed evidentiary rulings. This is, as U.S. Steel argues, a classic attempt at a "do-over."[16]

---

[16] The Court rejects the argument Allied made during the hearing on November 22, 2021 that its request for a new expert with a new report is identical to the circumstance when, just before the trial in 2015, U.S. Steel submitted a supplemental expert report long after all the deadlines set by the Court for expert discovery had expired. Allied claims it should now be afforded the same courtesy and leeway. Allied's reference is to the supplemental report of the Berkeley Research Group ("BRG") submitted by U.S. Steel on February 2, 2015, which, before trial, Allied timely moved to strike. (*See* Doc. No. 224, Plaintiff's Motion to Strike at 1.) After briefing, this Court issued an order denying the motion to strike, concluding that the supplemental report of BRG "[did] not violate Rule 26, which provides that a party filing a supplemental expert report must do so 'by the time the party's pretrial disclosures [i.e., witnesses, deposition designations, and exhibits] under Rule 26(a)(3) are due.'" (Doc. No. 228, Memorandum Opinion and Order at 4.) This Court declined to strike the report because "[t]hose trial-related disclosures are not yet due." (*Id.* (citing

16

### III. Conclusion

For the reasons stated herein, as well as in its Memorandum Opinion and Order of August 27, 2021, Allied's motion to substitute expert (Doc. No. 451) is denied.

**IT IS SO ORDERED**.

Dated: December 9, 2021

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**

---

Doc. No. 226, Fourth Amended Final Pretrial Conference and Trial Order).) The current situation is factually and procedurally different.